**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| MAX LANDON PAYNE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO.  5:01-cv-0090-LSC |
| | ) | |
| MICHAEL W. HALEY, COMMISSIONER, | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Before the court are the following motions: Petitioner's Motion for Funds for

Investigative Assistance (doc. 23)[1], Petitioner's Motion for Funds for Mental Health Expert

(doc. 24), and Petitioner's Motion for Discovery and Application for Evidentiary Hearing (doc.

26).   These motions relate to the petitioner's Petition for Writ of Habeas Corpus, in which he

seeks relief from his Alabama state court capital murder conviction and death sentence.  For the

reasons set forth below, the motions are due to be denied.

**I.     MOTION FOR DISCOVERY AND APPLICATION FOR AN EVIDENTIARY
       HEARING**

The petitioner has requested that the court grant him limited discovery[2] and that it

---

[1]References to "Doc. __" are to the documents as numbered by the clerk of court in the
court's record of the case.

[2]The petitioner seeks permission to file a motion for production of the following
documents pursuant to Rule 26(a) of the FEDERAL RULES OF CIVIL PROCEDURE:

    a)        A complete copy of the file of the Cullman County District Attorney in the
                case of *State of Alabama v. Max Landon Payne*, Cullman County Circuit

1

conduct an evidentiary hearing on certain claims contained in the Amended and Substituted

Petition for Writ of Habeas Corpus (doc. 8): Claim E (*id*. at 31-55) (ineffectiveness of trial

counsel claims); Claim G (*id*. at 60-61) (failure to provide petitioner with a mental health expert

to develop mitigation evidence); and Claim P (*id*. at 80-81) (unconstitutionality of electrocution

as cruel and unusual punishment).[3]   As is set forth in the court's memorandum of opinion

addressing the petitioner's habeas petition, which memorandum of opinion is issued concurrently

herewith (the "habeas opinion"), each of these claims is procedurally defaulted.  Also, as is set

forth in the habeas opinion, the petitioner failed to overcome said procedural default under the

---

Court, No. CC 92-179.

b)      Any documents, notes, records, or other materials provided by the Cullman County District Attorney to Larry Maier, PhD, pursuant to the Order of Presiding Circuit Judge Jack C. Riley, dated September 3, 1992.

c)      A complete copy of the institutional, disciplinary, and medical records for Max Landon Payne, possessed by the Alabama Department of Corrections since Payne's incarceration in July of 1994.

d)      Any notes, documents, or other records, pertaining to contact between representatives of the Cullman County District Attorney and/or law enforcement agencies and James Beaver.

e)      Any notes, documents, or other records, pertaining to contact between representatives of the Cullman County District Attorney and/or law enforcement agencies and Richard Smith.

(Doc. 26 at ¶ 2).

[3]These are the only specific claims with respect to which the petitioner requests an evidentiary hearing.  He also asks that the court "determine the issues appropriate for an evidentiary hearing after the completion of discovery in this matter and expansion of the record pursuant to Rule 7 of the Rule Governing Section 2254 Cases."  (Doc. 26 at ¶ 3).  The latter request is, however, too general and broad in scope for the court to meaningfully address, and it is further obviated by the fact that no further discovery is otherwise available to the petitioner in this action, as is explained below.

"cause and prejudice" exception or the "fundamental miscarriage of justice" exception.[4]

### A.    The Law on Evidentiary Hearings and Discovery  in Habeas Cases

In *Townsend v. Sain*, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), *overruled on other grounds, Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992), the Court held that an evidentiary hearing must be held on habeas claims where

1.    the merits of the factual dispute were not resolved in the state hearing;

2.    the state factual determination is not fairly supported by the record as a whole;

3.    the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

4.    there is a substantial allegation of newly discovered evidence;

5.    the material facts were not adequately developed at the state court hearing; or

6.    for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend*, 372 U.S. at 313.  The Eleventh Circuit has stated that "[a]n evidentiary hearing is

---

[4]A petitioner may overcome a procedural default in one of two ways.  First, under the "cause and prejudice" exception, he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640, 669 (1991).  Second, under the "fundamental miscarriage of justice" exception, he "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518, 524 (2000).

The latter exception allows a federal habeas court to consider a procedurally defaulted claim in the absence of cause if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent," or where the petitioner shows "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Schlup v. Delo*, 513 U.S. 298, 323-27, n.44, 115 S. Ct. 851, 865-866, n. 44, 130 L. Ed. 2d 808, 833-36, n.44 (1995) (citations omitted).

necessary whenever a habeas petition alleges facts that, if true, establish his or her right to relief."

*Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct.

2846, 101 L. Ed. 2d 884 (1988).  A habeas petitioner

> bears the burden of demonstrating facts sufficient to warrant an evidentiary
> hearing.  *Raulerson v. Wainwright*, 732 F.2d 803, 813 (11th Cir.), *cert. denied,* 469
> U.S. 966, 105 S. Ct. 366, 83 L. Ed. 2d 302 (1984).  A court is not required to
> "blindly accept speculative and inconcrete claims" as a basis upon which a
> hearing will be ordered.  *Dickson v. Wainwright*, 683 F.2d 348, 351 (11th Cir.
> 1982) (citations omitted).

*McLeod v. Dugger*, 735 F. Supp. 1011, 1014 (M.D. Fla. 1990).

With the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996

("AEDPA"), however, there are more restrictions on the ability of federal courts to conduct

evidentiary hearings with respect to habeas claims.  The Eleventh Circuit recently set out those

changes in the law pertaining to discovery and evidentiary hearings in habeas cases:

> The Supreme Court has recognized that "[a] habeas petitioner, unlike the usual
> civil litigant in federal court, is not entitled to discovery as a matter of course."
> *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 1796-97, 138 L. Ed. 2d 97
> (1997).  Rule 6(a) of the Rules Governing § 2254 Cases states:
>
> > A party shall be entitled to invoke processes of discovery available
> > under Federal Rules of Civil Procedure if, and to the extent that,
> > the judge in the exercise of his discretion and for good cause
> > shown grants leave to do so, but not otherwise.
>
> In interpreting the "good cause" portions of this rule, the Supreme Court noted
> that "where specific allegations before the court show reason to believe that the
> petitioner may, if the facts are fully developed, be able to demonstrate that he is ...
> entitled to relief, it is the duty of the court to provide the necessary facilities and
> procedures for an adequate inquiry."  *Id*. at 908-09, 117 S. Ct. at 1799 (citation
> and quotation omitted).  The Court has noted that the rules "afford the district
> court substantial discretion in the conduct of a case," including "a degree of
> discretion in determining whether to hold an evidentiary hearing."  *Lonchar v.
> Thomas*, 517 U.S. 314, 326, 116 S. Ct. 1293, 1300, 134 L. Ed. 2d 440 (1996).

4

In passing AEDPA, [footnote omitted] however, Congress modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing.  Section 2254(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (I)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

*Isaacs v. Head*, 300 F. 3d 1232, 1248-49 (11th Cir. 2002) (no majority opinion), *cert. denied*, 538 U.S. 988, 123 S. Ct. 1805, 155 L. Ed. 2d 683 (2003).

The respondent argues that the petitioner's motion is due to be denied because the petitioner "failed to develop the factual basis of a claim in State court proceedings" under AEDPA, and cannot satisfy the requirements listed in § 2254(e)(2)(A) and (B).  (Doc. 31 at pp. 7-8).  The Eleventh Circuit discussed AEDPA's "failed to develop" language as follows:

> The Supreme Court interpreted § 2254(e)(2) in its opinion in *Michael Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000).  The Court considered whether the "failed to develop" language in the opening clause of the provision indicates that the § 2254(e)(2) bar is only applicable when a habeas petitioner has not been sufficiently diligent in his efforts to develop a record in state courts.  The Court concluded that this language imported a

"threshold standard of diligence," such that the discovery provisions of §
2254(e)(2) only apply if the petitioner was not reasonably diligent in trying to
develop the factual record while in state court. *Id*. at 433-34, 120 S. Ct. at 1489.
The Court held that "[d]iligence for purposes of the opening clause depends upon
whether the prisoner made a reasonable attempt, in light of information available
at the time, to investigate and pursue claims in state court." *Id*. at 435, 120 S. Ct.
at 1490. The applicability of the provision is not dependent on "whether those
efforts could have been successful." *Id. See also Breedlove v. Moore*, 279 F.3d
952, 959-60 (11th Cir. 2002) (discussing Michael Williams and application of §
2254(e)(2)).

*Isaacs*, 300 F.3d at 1249.

### B.     State Court Factual Findings and the Presumption of Correctness

The respondent argues that the findings of the state court indicate that the petitioner

would have received the discovery that his counsel requested and that the petitioner currently

seeks if counsel had exercised due diligence. Respondent argues, in essence, that the petitioner's

counsel did not make a reasonable attempt to investigate the claims in earlier proceedings. In

this regard, the Alabama Court of Criminal Appeals stated as follows:

> Because of the complicated history of the proceedings and rulings regarding this
> Rule 32 petition, we feel compelled to address the numerous complaints by Payne
> at the evidentiary hearing on remand regarding his inability to conduct discovery.
>
> Payne filed his petition on February 24, 1998. On May 13, 1998, Payne filed a
> motion for discovery of "institutional records" and files, and a motion for
> discovery of prosecution files and records. Although these motions essentially list
> the information sought and do not offer any good cause as to why the discovery
> was necessary or exactly what Payne believed the information he sought to
> discover would reveal, the circuit court[5] granted Payne's motions on May 22,
> 1998. When the circuit court denied Payne's petition on August 10, 1998, it
> vacated these discovery orders. There is no indication in the record, and Payne
> has made no representation, that from the time the circuit court ordered discovery
> (May 22) until the time that it vacated the orders (August 10) Payne made any

---

[5]The "circuit court" is the Cullman County Circuit Court, the trial-level court that ruled
upon the petitioner's Rule 32 petition. From that ruling, the petitioner appealed to the Alabama
Court of Criminal Appeals.

effort to obtain the information he had requested.  We do not believe that the time to *begin* discovery is after the date set for the hearing to which the discovery items are directed; therefore, we question Payne's diligence in conducting discovery.

Payne appealed the circuit court's denial of postconviction relief and this Court remanded the cause for an evidentiary hearing on July 9, 1999.  This Court ordered that due return of the cause be filed within 56 days of issuance of its opinion.  *See Payne v. State*, 791 So. 2d at 393.  On July 21, 1999, the circuit court set the hearing for August 20, 1999, but the hearing was continued until August 27, 1999.  Although Payne filed an application for rehearing with this Court on July 23, 1999, filed an application on August 2, 1999, requesting more time for the evidentiary hearing to be held, and filed a supplemental motion for more time on August 10, 1999, Payne did not file a motion for discovery with the circuit court.  We note that although in his application for rehearing and his motions to this Court, Payne represented that as of the dates on the filings, he had been "unable to conduct basic discovery, take depositions, review defense counsel's trial and appellate file, or review of any portion of the State's trial file," Payne made no efforts to obtain the discovery other than the original request he made on May 13, 1998.

On August 16, 1999--four days before the original evidentiary date scheduled for the hearing and after representations about discovery had been made to this Court--Payne filed a motion for discovery, while this case was on remand in the circuit court.  In light of Payne's lack of diligence in conducting discovery, we seriously question the timeliness of Payne's discovery request and his efforts to conduct discovery while his case was on remand.  If Payne had moved the circuit court for discovery when this Court remanded the case, he could have been conducting discovery from July 9.

It does appear from the record that Payne's counsel made efforts to obtain the prosecutor's file a week before the hearing.  However, there was some confusion, and the file was not released until just before the hearing.  The record further indicates that when the state realized the problem it tried to make arrangements for Payne's counsel to review the file, but Payne's counsel, who was from Iowa, had already left town.  Additionally, we note that while hearing argument from Payne's counsel about his not having received a report from Dr. Lawrence Maier, [6] the circuit court elicited an admission from Payne's counsel that he had not requested that a subpoena be issued to Taylor Hardin Medical Unit for Payne's medical records, which would have included a copy of Dr. Maier's report.  Thus,

---

[6]The text of the footnote reads as follows: "Dr. Maier, a licensed clinical psychologist and certified forensic examiner, examined Payne before trial to determine whether he was competent to stand trial."

while it appears from the record that Payne had time, which we acknowledge may have been limited, during which he could have conducted discovery, Payne did not make a good faith effort to do so.

Furthermore, as did the circuit court, we reject the following argument by Payne:

> "We have made diligent efforts to try to obtain discovery in this matter. I would also note that any delay in terms of filing a discovery motion after remand, was based on our understanding that the Alabama Supreme Court was preparing on the case of *Ex parte Land*. It would be thought that case would be determined to determine whether or not Payne had a right to discovery and provide guidance to this Court as to whether or not Mr. Payne was entitled to discovery. As soon as that decision came down, we proceeded to file a motion for discovery."

(R. 24-25.) While we believe that it was serendipitous that the Supreme Court released *Ex parte Land*, [Ms. 1971816, August 6, 1999], [Footnote omitted] in August, Payne's efforts to conduct discovery were at most minimal. Unlike the circumstances in *Land*, where the circuit court had denied discovery, the circuit court here granted Payne broad discovery from an extremely general motion. The court's orders granting discovery were effective for over two months before they were vacated. Payne, however, did not take advantage of the circuit court's order and made little, if any, effort to pursue discovery during the two months before the circuit court's [sic] denied his petition and vacated the discovery orders or while the case was pending on remand in the circuit court. Furthermore, because Payne did have access to the prosecutor's file, and his jail records, as well as some of his institutional records even though his time for review was limited, we conclude that Payne was not denied discovery.

*Payne v. State*, 791 So. 2d 383, 395-96 (Ala. Crim. App. 2000) (emphasis in original).

In habeas proceedings that challenge custody of a petitioner based upon the judgment of a state court, "a determination of a factual issue made by a State court shall be presumed to be correct under 28 U.S.C. § 2254(e)(1). The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The petitioner attacks the accuracy of the state court findings set forth above. He alleges that, contrary to the opinion of the Alabama Court of Criminal Appeals quoted above, his

8

counsel was not responsible for the failure to timely conduct discovery.   The petitioner states that

> counsel did diligently seek discovery under the orders initially entered by the district court prior to the orders being vacated on August 10, 1998. [7] Specifically, counsel for Mr. Payne sent a letter to the Cullman County District Attorney and Larry Maier, Phd., on July 16, 1998, with copies to the Alabama Attorney General, requesting compliance with the Court's discovery orders.  No effort was made by the Cullman County District Attorney to comply with the Court's order or respond to the letter although that office had in its possession Dr. Maier's report, the notes regarding the interview between the DA and Rick Smith, witness statements, and other matters the Court had directed the office to provide to Mr. Payne's attorneys.

(Doc. 27 at 14-15).

The Court of Criminal Appeals found that "[t]here is no indication in the record, and Payne has made no representation, that from the time the circuit court ordered discovery (May 22) until the time that it vacated the orders (August 10) Payne made any effort to obtain the information he had requested."  *Payne*, 791 So. 2d at 395.  The petitioner has not presented evidence to rebut this finding, although he asserts that his counsel did send copies of a single letter to several recipients, requesting the ordered discovery.  He does not state where this letter is

---

[7]The text of the footnote reads as follows:

> Counsel again reiterates that prior to August 10, 1998, the Circuit Court did not grant the Applications for Appointment of Counsel, the Applications to Appear *Pro Hac Vice*, or give any notice that the Court was considering a summary dismissal of the Rule 32 Petition.  Under such circumstances, it was not clear that counsel should vigorously proceed with discovery.

(Doc. 27 at p. 14 n.8).

The petitioner has cited no authority for the proposition that counsel should not have proceeded in a timely manner with discovery or other duties of representation during the pendency of the Applications for Appointment of Counsel or to Appear *Pro Hac Vice*, and the court is not inclined to make such a finding.

9

located in the record, and the court has not otherwise found it, upon review of the record.

The petitioner further asserts as follows:

> The February 25, 2000, decision of Court of Criminal Appeals states: "We do not believe that the time to *begin* discovery is *after* the date set for the hearing to which the discovery times are directed."  In fact, efforts to begin discovery were made before the trial court's August 10, 1998, ruling vacating the discovery orders and the State of Alabama simply ignored the Court's orders.  Further, no notice of the hearing on August 10, 1998, was given as no hearing was held.  The trial judge summarily issued the August 10, 1998, dismissal of the Rule 32 Petition without hearing or any prior scheduling orders.  Therefore, the Court of Criminal Appeals is simply wrong in criticizing Payne's counsel for not beginning discovery until "after the date set for the hearing to which the discovery items are directed."

(Doc. 27 at p. 15) (emphasis in original).

It appears that the circuit court had never set a hearing for August 10, 1998, the date it dismissed the petition.  There is no indication in the record that a hearing was scheduled for that date or that one took place.  The court finds that the petitioner has offered clear and convincing evidence rebutting the presumption of correctness as to the circuit court's factual finding that "[w]e do not believe that the time to *begin* discovery is *after* the date set for the hearing to which the discovery items are directed."

The petitioner further asserts as follows:

> In its decision, the Court of Criminal Appeals states in reference to the amended petition, "the filing, as well as all subsequent filings, were void.  "On pages four and five of the same decision, the Court of Criminal Appeals criticizes Payne's counsel for not filing a Motion for Discovery with the trial court on remand until August 16, 1999.  Payne contends that "[i]f all "subsequent filings were void," [sic] after the filing of the Notice to Appeal in 1998, then the filing of the Motion for Discovery with the trial court was fruitless in any event.

(Doc. 27 at p. 15).

It appears that the petitioner is taking the language used by the Court of Criminal Appeals

10

out of context.  The Court of Criminal Appeals held that certain of the petitioner's filings were void because he filed them in circuit court just after he had deprived that court of jurisdiction by filing his notice of appeal.  It is clear that the Court of Criminal Appeals understands that a motion for discovery filed with the circuit court following the July 9, 1999, remand would *not* have been void.  Indeed, the court specifically criticizes the petitioner for failing to file a motion for discovery from the date of remand until August 16, 1999:  "If Payne had moved the circuit court for discovery when this Court remanded the case, he could have been conducting discovery from July 9."  *Payne*, 791 So. 2d at 395.  The petitioner's assertions, as set forth above, do not constitute clear and convincing evidence rebutting the presumption of correctness attached to the findings of the Court of Criminal Appeals.

The petitioner further states as follows:

> . . . .  The remand order from the Court of Criminal Appeals did not specifically grant the trial court the authority to order discovery, entertain amendments, or issue continuances.  Presumably, it lacked jurisdiction to take any of these actions.  Prior to the August 16, 1999, Renewed Motion for Discovery, Payne had filed numerous pleadings with the Court of Criminal Appeals about the need for discovery and additional time.  Payne's counsel was understandably confused re [sic] the authority of the trial court on remand and thus Payne's counsel did not show lack of diligence in pursuing discovery after the July 9, 1999, remand order from the Court of Criminal Appeals.  Further, Payne had pending the entire time the original Motions for Discovery filed on May 13, 1998.

(Doc. 27 at pp. 15-16).

These assertions by the petitioner are, at best, very tenuous bases upon which to premise more than a month's inaction after remand, particularly when the parties were all well aware that there was a deadline within which the circuit court had to return the action to the Court of Criminal Appeals.  These assertions are not, in the court's opinion, adequate to rebut the presumption of correctness attached to the state court's findings.

11

The petitioner further asserts as follows:

> As stated by the Court of Criminal Appeals, Payne's counsel did not serve a subpoena on Taylor-Hardin to obtain a report authored by a Dr. Maier. However, at the evidentiary hearing, no showing in the record was made by the State of Alabama that Taylor Hardin did have a copy of Dr. Maier's report in 1998. Further, no showing was made by the state that it would be produced by subpoena, despite the assertion by Payne's counsel that a court order to obtain the records from Taylor Hardin was necessary. (Rule 32 Transcript, p. 78). Thus, the Court of Criminal Appeals is wrong in stating on page six of its opinion that record shows Taylor Hardin did have a copy of the report. Further, the Cullman County District Attorney had a copy and refused to produce it in 1998, despite the Court's discovery orders of May 22, 1998, and written request by Payne's counsel on July 16, 1998.

(Doc. 27 at p.16).

The petitioner claims that the State of Alabama did not show that Taylor Hardin had a copy of Dr. Maier's report in 1998. But the state did introduce a copy of the report, dated October 15, 1992, the last page of which reflected that the Taylor Hardin Secure Medical Facility had received a copy. (Supp. Rule 32 Record at pp. 13-17; Rule 32 Hrg. Tr. at p. 74). In attempting to explain the omission to subpoena Taylor Hardin for the report, the petitioner's counsel stated that it was his understanding that a subpoena would not be sufficient and that a court order of discovery would be necessary. (*Id*. at pp. 77-78). He did not aver that Taylor Hardin did not possess the report in 1998. The court is likewise unimpressed by the assertion that the Cullman County District Attorney refused to produce the report in 1998, as the petitioner's efforts to obtain the report and other discovery from the District Attorney was limited to a single letter, which the court has been unable to locate in the record. The petitioner has offered nothing in the passage set forth above that constitutes clear and convincing evidence rebutting the presumption of correctness attached to the findings of the Court of Criminal Appeals with respect to this issue.

12

The petitioner further asserts as follows:

> Due to the trial court's prior summary vacation of discovery orders, counsel was waiting for a decision to be issued in *Ex Parte Land*. Supreme Court of Alabama, No. 1981816 (August 6, 1999). Counsel was also in contact with defense counsel in *Land* regarding the pending decision. Therefore, Payne's counsel did not show a lack of diligence by waiting for *Land* and citing that as authority to the trial court which had previously summarily vacated the discovery orders. In light of the Alabama Supreme Court's holding in *Land*, a continuance then should have been granted after the filing of the August 16, 1999, discovery motion.

(Doc. 27 at p. 16).

The conclusive statements in the passage set forth above do not constitute clear and convincing evidence rebutting the presumption of correctness attached to the findings of the Court of Criminal Appeals.

In accordance with the analysis set forth above, the findings of the Court of Criminal Appeals are entitled to the presumption of correctness, with the exception of the finding in which the court stated that "[w]e do not believe that the time to *begin* discovery is *after* the date set for the hearing to which the discovery items are directed."

### C.    Application of Factual Findings and the Diligence Determination

Given the presumptively correct factual findings of the Court of Criminal Appeals, the court concludes that "the applicant has failed to develop the factual basis of a claim in State court proceedings" within the meaning of § 2254(e)(2). In other words, he was not "sufficiently diligent in his efforts to develop a record in state courts," because he failed to make a "reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court." *Isaacs*, 300 F.3d at 1249.

In this case, the circuit court granted the petitioner's discovery motions on May 22, 1998.

13

From then until August 10, 1998, when the circuit court denied the petition and vacated the discovery orders, the petitioner claims that he wrote a single letter asking for the ordered discovery, and sent copies of the letter out to several recipients.[8]   On July 9, 1999, the case was returned on remand to the circuit court, with a time limit set for further determinations, yet the petitioner waited over a month, until August 16, 1999, to file a new motion for discovery with the circuit court.  He argues that the delay was justified because a decision helpful to his position on discovery was expected in *Ex Parte Land*.  The court finds that this is not a sufficient reason for more than a month's inaction in a case in which the Court of Criminal Appeals had imposed a deadline for determinations to be made by the circuit court and in which the circuit court gave almost a month's notice of the August 20, 1999, hearing, which was then continued until August 27, 1999.

The petitioner argues that he is entitled to an evidentiary hearing because the lack of development of the record in state court proceedings is not due to any failure on his part but rather to the actions of the respondent and the state courts.  (Doc. 27 at pp. 18-19).  Those actions, according to the petitioner, include

> . . . the failure of the state to comply with discovery orders, the refusal of the court to order necessary discovery, the denial of funds by the court for a mental health expert, the failure to timely appoint counsel, the establishment of an accelerated timeline for the evidentiary hearing and denial of necessary continuances, the actions by the original trial court in ordering a mental examination limited to issues of competency to stand trial and the actions and demeanor of the judge in the Rule 32 hearing.

(Doc. 27 at p. 18).  Such actions, as recounted by the petitioner, do not overcome his lack of

---

[8]Although the court has been unable to locate this letter in the record, it will assume for the purposes of this analysis that such a letter was sent by the petitioner's counsel.

diligence in pursuing discovery, which is discussed above.  The circuit court granted the

petitioner's discovery motions on May 26, 1998, and the court's order in that regard was in effect

until August 10, 1998, or for two and a half months, during which the petitioner took little action

to obtain discovery.  After the case was remanded on July 9, 1999, the petitioner waited for over

a month, until August 16, 1999, to file renewed discovery motions, although the parties knew

there was a deadline for returning the case to the Court of Criminal Appeals.  The circuit court's

failure to timely grant counsel's motion for appointment does not justify the delay where counsel

actively represented the petitioner from their appearance onward (*see* Rule 32 Record at pp. 9-10)

and where there was no apparent indication that counsel should not be appointed.[9]  And the court

has reviewed the transcript of the August 27, 1999 hearing and has discerned nothing in the

judge's statements that could be reasonably construed as improperly inhibiting discovery, and

certainly nothing that would overcome the petitioner's lack of diligence so as to render §

2254(e)(2) inapplicable.[10]

---

[9]The circuit court initially denied the petitioner's motion for appointment of counsel and
counsels' applications for admission *pro hac vice*, but provided that it would grant counsels'
applications if they stated an intent to represent the petitioner on a pro bono basis.  (Rule 32
Record at pp. 63-64).  Petitioner's counsel thereupon filed a renewed motion to appear *pro hac
vice*, stating their willingness to represent the petitioner on a pro bono basis. (Rule 32 Record at
pp. 42-44).

[10]The petitioner specifically complains that the trial court questioned the credibility of his
witness, Fae Easterly, and cut her off repeatedly during her direct examination.  He complains
that the consequent necessity that his counsel make a proffer of the evidence Easterly was
expected to provide, in summary form, prevented the court from being able "to fully assess and
credit the testimony based upon the detail involved, the particular nature of the incidents related,
and the emotion displayed by Ms. Easterly."  (Doc. 27 at p. 17, citing Rule 32 Transcript at
pp.188-89).  The court notes that Ms. Easterly testified extensively at the Rule 32 hearing.  (Rule
32 Transcript at pp. 152-89) and that the petitioner's counsel made an extensive proffer of the
substance of additional testimony she could provide.  It does not appear that the trial court was
rude, intimidating or discourteous to Ms. Easterly, but simply disagreed with the petitioner's

In this case, the court thus finds that "the applicant has failed to develop the factual basis of a claim in State court proceedings" within the meaning of § 2254(e)(2). Since there is no indication that the petitioner can satisfy the requirements listed in § 2254(e)(2) (A) and (B), he is not entitled to an evidentiary hearing or discovery in connection with these proceedings.

### D.    Procedurally Defaulted Claims

There is another basis upon which the court should deny the petitioner's request for discovery and an evidentiary hearing: the petitioner is not entitled to an evidentiary hearing on the merits of any habeas claim he has procedurally defaulted unless he can first overcome the procedural bar.[11] *Hill v. Jones*, 81 F.3d 1015, 1023 (11th Cir. 1996), *cert. denied*, 519 U.S.1119, 117 S. Ct. 967, 136 L. Ed. 2d 851 (1997). This means he must show either (1) cause for failing to develop in state court proceedings the facts supporting his claim, and prejudice resulting from that failure, or (2) that the failure to hold a federal evidentiary hearing would result in a fundamental miscarriage of justice.[12] *Id.*, citing *Keeney v. Tamayo-Reyes*, 504 U.S. at 11-12;

---

counsel as to whether she should be allowed to testify as to certain issues. (*Id.* at 189-200). There is no indication that the proffer of evidence in a summarized fashion impeded the court's ability to evaluate the proffer.

[11]The procedural default of the claims upon which the petitioner seeks discovery and an evidentiary hearing also provide a basis for the denial of the petitioner's other motions–his motion for funds for investigative assistance and a mental health expert. (Doc. 23 and 24).

[12]To show that a fundamental miscarriage of justice would result from a failure to hold an evidentiary hearing, the petitioner must make a showing of "actual innocence" as to the crime or as to his eligibility for the death penalty. In the guilt context, such a showing requires him "to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808, 834 (1995). The petitioner has made no such showing, despite his attempts to do so in his amended and substituted petition. (*See* doc. 8 at ¶¶ 235-38). Neither has he made the requisite showing in the sentencing context: that but for a constitutional error at his sentencing hearing, no

16

*Weeks v. Jones*, 26 F.3d 1030, 1043 (11th Cir. 1994), *cert. denied*, 513 U.S. 1193, 115 S. Ct. 1258, 131 L. Ed. 2d 137 (1995).

The petitioner's motion for an evidentiary hearing pertains to Claims E, G and P in his amended and substituted petition for writ of habeas corpus.  (Doc. 26 at ¶ 3).  As is explained in the habeas opinion, all of these claims are procedurally defaulted, and the petitioner has failed to show cause and prejudice excusing the procedural default.  So, in order to obtain an evidentiary hearing, he must show that the failure to hold such a hearing would result in a fundamental miscarriage of justice.  Since, as is discussed above, the petitioner has not made such a showing, the instant motion for discovery and evidentiary hearing cannot be granted as to any such claims.

### E.      Other Bases for Denial of the Request for Discovery and an Evidentiary Hearing

In Claim P of the amended petition, the petitioner argues that his judicially ordered execution constitutes cruel and unusual punishment and denies him his constitutional Equal Protection and Due Process rights.  The court notes that, even if this claim were not procedurally defaulted, it would presumably be moot, at least insofar as the petitioner objects to electrocution as a method of execution.  After the petitioner filed the instant petition, a statute was enacted that establishes lethal injection as the default method of execution in Alabama, to be used unless the person sentenced to death elects to be executed by electrocution.  ALA. CODE § 15-18-82.1.  Insofar as the claim is moot, there is no need to hold an evidentiary hearing in support of it.

The court also notes that, even if the claim were not procedurally defaulted or moot, it would be meritless under Eleventh Circuit authority.  That court stated as follows:

---

reasonable juror would have found him eligible for the death penalty under state law." *Sawyer v. Whitley*, 505 U.S. 333, 346-48, 112 S. Ct. 2514, 2522-23, 120 L. Ed. 2d 269 (1992).

In light of overwhelming precedent, we conclude there is no merit in Plaintiffs'
claim that death by electrocution constitutes cruel and unusual punishment in
violation of the Eighth and Fourteenth Amendments. *See In re Kemmler*, 136
U.S. 436, 443-44, 10 S. Ct. 930, 932, 34 L. Ed. 519 (1890); *Porter v. Wainwright*,
805 F.2d 930, 943 n. 15 (11th Cir. 1986); *Funchess v. Wainwright*, 788 F.2d 1443,
1446 (11th Cir.), *cert. denied*, 475 U.S. 1133, 106 S. Ct. 1668, 90 L. Ed. 2d 209
(1986); *Sullivan v. Dugger*, 721 F.2d 719, 720 (11th Cir.1983); *Spinkellink v.
Wainwright*, 578 F.2d 582, 616 (5th Cir.1978).  Moreover, their contention in the
district court that "there has never been an evidentiary hearing on the effects of
execution by electrocution since the first capital defendant was killed under this
method," Memorandum of Law in Support of Application for Preliminary
Injunction and Complaint for Declaratory and Injunctive Relief Pursuant to 42
U.S.C. § 1983 at 6, is simply untrue. *See e.g. Sawyer v. Whitley*, 772 F. Supp. 297,
307 (E.D. La. 1991) (considering expert evidence before rejecting Eighth
Amendment claim regarding death by electrocution); *Thomas v. Jones*, 742 F.
Supp. 598, 606-608 (S.D. Ala. 1990)(same); *Buenoano v. Dugger*, No.
90-473-CIV-ORL-19, unpublished at 31-35, 1990 WL 119637 (M.D. Fla. June
22, 1990)(same); *Ritter v. Smith*, 568 F. Supp. 1499, 1525 (S.D. Ala. 1983) same),
*aff'd in part and rev'd in part on other grounds*, 726 F.2d 1505, 1519 (11th Cir.),
and *cert. denied*, 469 U.S. 869, 105 S. Ct. 218, 83 L. Ed. 2d 148 (1984).

*Felker v. Turpin*, 101 F.3d 95, 97 (11th Cir. 1996), *cert. denied*, 519 U.S. 989, 117 S. Ct. 450, 136

L. Ed. 2d 345 (1996).  There would be no need to hold an evidentiary hearing on a meritless

claim.

## II.  MOTIONS FOR FUNDS FOR MENTAL HEALTH EXPERT AND INVESTIGATIVE ASSISTANCE

Also before the court is the petitioner's Motion for Funds for Mental Health Expert.

(doc. 24), and the petitioner's Motion for Funds for Investigative Assistance (doc. 23).  He makes

his requests under §§ 848(q)(4) and (9) of the Anti-Drug Abuse Act of 1988[13], which provide as

follows:

(4)(A) Notwithstanding any other provision of law to the contrary, in every
criminal action in which a defendant is charged with a crime which may be
punishable by death, a defendant who is or becomes financially unable to obtain

---

[13]21 U.S.C. §§ 848 (q)-(r).

18

adequate representation or investigative, expert, or other reasonably necessary services at any time either--

> (I) before judgment; or

> (ii) after the entry of a judgment imposing a sentence of death but before the execution of that judgment;

shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

(B) In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

21 U.S.C. § 848(q)(4).

Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10).

21 U.S.C. § 848(q)(9).

Taken together, these provisions allow federal habeas courts to provide indigent habeas petitioners in capital cases with funds for all "reasonably necessary" investigative and expert services requested by such petitioners who challenge the constitutionality of their convictions and death sentences. There is no definition of "reasonably necessary" in the statute, and little case law authority addresses these provisions. It appears, at least, that the petitioner has the burden of showing that the requested investigative and expert services are "reasonably necessary." *See In re Lindsey*, 875 F.2d 1502, 1507 at n.4 (11th Cir. 1989) ("[h]ere, the district court found that Lindsey failed to make a threshold showing of mental deficiency sufficient to support a finding

19

that appointment of a psychiatrist is "reasonably necessary.")  The petitioner has not made such a showing.

## A.        Motion for Funds for Mental Health Expert

The petitioner has requested that this court provide him with funds with which he may retain expert mental health assistance for the development of the claims set forth in his Amended and Substituted Petition.  (Doc. 24).  He argues that such an expert is needed "to assist counsel in discerning, documenting, interpreting, and presenting evidence in support of his claims of ineffective assistance of counsel and any other elements to which mental health evidence is relevant."[14]  (Doc. 24 at p. 1).  Specifically, however, the petitioner states that the expert

---

[14]In particular, the petitioner says that a mental health expert is required

(a)        to review medical, school and institutional records and interview members of Payne's family, particularly with respect to those records and information which was either not provided or not available to Dr. Maier when he performed the court ordered evaluation with respect to competency;

(b)        to conduct a complete physical evaluation and a physical and neurological examination of Payne, as opposed to the limited evaluation performed by Dr. Maier, so that any evidence can be introduced to support the claims in his Amended and Substituted Petition for Writ of Habeas Corpus;

(c)        to prescribe the appropriate psychological testing to determine the existence of any disabilities, and, if they exist, to document them;

(d)        to express an opinion within a reasonable degree of medical certainty as to any causal connection between any impairments, or environmental/genetic predispositions, and the alleged behavior for which Payne was convicted and sentenced to death;

(e)        to assist counsel in understanding and presenting evidence of Payne's troubled childhood and mental or emotional difficulties in support of his Amended and Substituted Petition for Writ of Habeas Corpus; and,

20

testimony would be used to support his ineffective assistance of trial counsel claims set forth in

Claims E(1) and E(4) of the instant petition, his ineffective assistance of appellate counsel claims

set forth in Claims F(16) and F(17)[15] (based on the failure to raise Claims E(1) and E(4) on direct

appeal), and Claim G, as well.  He lists a variety of mitigating factors that should have been more

thoroughly investigated and presented at trial.  (Doc. 24 at pp. 4-5).

　　　　As is set forth in the habeas opinion, Claims G, E(1) and E(4) are all procedurally

defaulted, so the court cannot reach the merits of those claims unless the petitioner shows cause

and prejudice or that there is a sufficient probability that the court's failure to review his federal

claim will result in a fundamental miscarriage of justice.  As is also set forth in the habeas

opinion, the petitioner fails to make such a showing.

　　　　On direct appeal, the Court of Criminal Appeals rejected Claim F(16), the ineffective

assistance of appellate counsel claim based upon the failure to raise Claim F(1) (the claim that

trial counsel failed to present available and critical mitigating evidence), finding as follows:

> Next Payne contends that his appellate counsel was ineffective for failing to raise
> a claim that his trial counsel was ineffective in presenting mitigation evidence
> during the sentencing phase of his trial.
>
> "In reviewing this claim, we are guided by the following principles.  In *Daniels v.
> State*, 650 So. 2d 544, 568-70 (Ala. Cr. App. 1994), *cert. denied*, 514 U.S. 1024,
> 115 S. Ct. 1375, 131 L. Ed. 2d 230 (1995), we stated the following regarding a
> claim that trial counsel had been ineffective during the penalty phase of a capital
> murder trial:

━━━━━━━━━━━━━━

> (f)　　　to testify with regard to his or her findings and conclusions.

(Doc. 24 at p. 6).

　　　　[15]There are actually two claims designated as Claim F(17) by the respondent, one of
which refers to appellate counsel's failure to raise the claim designated as Claim E(4) by the
respondent.  (Doc. 32 at p. 22 n.4).

"'In determining whether Haas was ineffective at original sentencing, . . . we recognize that the

> ""'two-pronged *Strickland* analysis applies whether the ineffectiveness complained of occurred in the defendant's trial or in a subsequent adversarial sentencing proceeding. However, in a challenge to the imposition of a death sentence, the prejudice prong of the *Strickland* inquiry focuses on whether 'the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"'"

*Stevens v. Zant*, 968 F.2d 1076, 1081 (11th Cir. 1992) (citation omitted), *cert. denied*, 507 U.S. 929, 113 S. Ct. 1306, 122 L. Ed. 2d 695 (1993).  We also recognize that

> ""'[w]hile '[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness,' *see Blake v. Kemp*, 758 F.2d 523, 533 (11th Cir. 1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. *Strickland* only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel.'"'"

*White v. Singletary*, 972 F.2d 1218, 1224 (11th Cir. 1992).  The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:

> ""'An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986).  First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence.  If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel.  If so, such a choice must be

22

given a strong presumption of correctness, and the inquiry is generally at an end. *Funchess v. Wainwright*, 772 F.2d 683, 689-90 (11th Cir. 1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.""'"

*Middleton v. Dugger*, 849 F.2d 491, 493 (11th Cir. 1988).

With the foregoing principles in mind, we conclude that the circuit court adequately assessed and rejected the evidence presented to support Payne's contention that his trial court's failure to investigate and to present adequate mitigation evidence during the sentencing phase of his trial and we adopt the following portion of the order:

"3. More than a year before the trial, the attorneys for petitioner requested extra-ordinary expenses for an investigator to assist them in the preparation of the case. The request was made by motion filed by trial counsel which states:

"'Counsel is required to obtain information relative to Mr. Payne's medical history, educational history, employment, training history, family and social history, religious and cultural influences. Counsel must direct an investigator to obtain records from all doctors, hospitals, schools, employers, interview people with knowledge of the aspects of Mr. Payne's background.'

"This motion was granted by Judge Riley. Johnny NeSmith, a retired agent of the Alabama Bureau of Investigation was hired to assist petitioner in his trial. NeSmith contacted witnesses from as far away as Mobile and actually testified at petitioner's trial. Mr. NeSmith spent in excess of 50 hours investigating witnesses and leads in the case.

"....

23

"6. Trial counsel adequately gathered information from petitioner's family prior to trial. This is readily apparent from the amount of background material on the petitioner's life which was presented to the jury. Petitioner's sister and mother actually testified on behalf of the petitioner at trial. A claim of petitioner is that trial counsel failed to establish a 'rapport' with the petitioner's family members, and that this failure led to the family failing to give full assistance to the defense and further resulted in mother and sister testifying in an ineffective manner. The argument appears to assume that the attorneys had some sort of duty to rehearse or 'coach' the witnesses before trial. It can only be speculated that had such rehearsing and coaching occurred and the outcome of the trial remained the same, then the petitioner would allege such inducement by the attorneys as ineffectiveness because (it would be alleged) everyone knows that spontaneous and unrehearsed testimony is far more emotional and effective than rehearsed or coached testimony. As to the lack of 'rapport' affecting the trial defense, petitioner's attorney handling the Rule 32 petition questioned trial counsel about a remark made by the District Attorney in closing arguments referring to the zealous defense of Payne by his family. The District Attorney's characterization of this defense as a 'conspiracy' among the family to protect Payne certainly belies the allegation that there was no cooperation between the family and petitioner's defense.

"It is apparent to this Court that arguments of Rule 32 counsel concerning the relationship between trial counsel and the petitioner's [family] is hindsight based upon the results of the trial. This may be fueled by the family's natural desire to come to the aid of the petitioner. From the testimony at trial and from the Court's own observation of the petitioner's family and trial counsel during trial, the Court finds there was no deficiency on the part of trial counsel.

". . . .

"8. This Rule 32 hearing was far more remarkable for what evidence was not brought out than what evidence was produced. The appellate counsel, whose performance is alleged to have been ineffective, was not called as a witness. The other trial counsel, Robert Sapp, was not called as a witness even though Mr. Nicholas stated it was Sapp who handled the mental/psychological part of the pretrial motions while Nicholas handled the change of venue motion. Nicholas was called by the petitioner to testify as to what

actions were taken by trial counsel, even though Nicholas testified that he has since lost his trial file due to changes of residences and law offices since the trial. No attempt was made to ascertain or demonstrate any deficiencies in counsel performance by Sapp. Payne himself, although present in Court did not testify as to his relationship and preparations with his trial counsel, nor as to any deficiencies in his counsel's performance.

"9. Much of the focus of petitioner's Rule 32 counsel was criticism of trial counsel performance in eliciting mitigating evidence at trial. Rule 32 counsel's complaint deals not so much with the fact that certain evidence was not brought out, but that it was not presented in precisely the same manner, or in the same detail as Rule 32 counsel would have liked. This criticism by Rule 32 counsel extends even to the fact that trial counsel did not ask exactly the same questions which Rule 32 counsel now says should have been asked (R. 168.) Rule 32 counsel further criticizes trial counsel for not asking the same witnesses the same questions in the penalty phases as was asked in the guilt phase. This, Rule 32 counsel asserts 'failed to highlight' (R. 187.) certain information already heard and considered by the jury. Rule 32 counsel at one point in the evidentiary hearing claims ineffective assistance of appellate counsel for failing to reinterview every defense witness at trial in order to determine whether their trial testimony was insufficiently 'vivid' or 'compelling' as a result [of] the defense counsel's failure to establish the proper degree of 'rapport' which Rule 32 counsel feels necessary.

"The decisions as to whether or not to present evidence of mental impairment, alcohol abuse by the defendant, prior history of family disfunction, evidence of the offense being committed by another and non-family testimony as mitigation, were all trial strategy decisions based upon the investigations of the attorneys and the investigator, discussions and conferences with the family members and the evidence which counsel knew that the prosecution possessed."

(C.R. on remand 191-96.)

The evidence presented by Payne at the evidentiary hearing was merely an attempt to establish an ineffective-assistance-of-trial-counsel claim by calling the same defense witnesses presented at trial and arguing that Payne's counsel should have elicited more elaborate testimony from these witnesses. The evidence at the hearing indicated that Payne's trial counsel established a good relationship with

Payne's family members.  Merely because trial counsel did not present the evidence as Payne now believes he should have presented does not establish that trial counsel was ineffective.  To so conclude would require us to engage in hindsight and speculation, which we will not do.

Additionally, Payne argues that trial counsel should have presented evidence of his conformity to confinement while he awaited trial.  We note, however, that the jail records produced at the hearing do not support such a finding.  While incarcerated awaiting his trial, Payne violated jail policies and rules.  Because the evidence did not support a finding that Payne's behavior while he was incarcerated provided mitigation evidence and trial counsel decided not to present the evidence for that very reason, Payne has failed to establish that his trial counsel was ineffective.

Furthermore, we reject Payne's argument that trial counsel presented insufficient mitigation evidence of his history of alcohol abuse and drug abuse and his alleged intoxication at the time of the offense, of physical and sexual abuse within his family, and of his mental and emotional disabilities.  Numerous witnesses testified during the guilt phase about Payne's consumption of alcohol on the day of the offense and about the various forms of physical abuse that Payne suffered and witnessed.  Additionally, evidence was presented from Payne's physicians concerning his mental and emotional faculties and the effects of drug and alcohol consumption of his faculties.  That evidence was also placed before the jury during the penalty phase.  In light of the evidence presented during the guilt phase and the penalty phase of the trial, we conclude that Payne's trial counsel was not ineffective for not presenting additional evidence.  Thus, appellate counsel was not ineffective for not raising such a claim.

*Payne*, 791 So. 2d at 401-08 (Ala. Crim. App. 1999).  The findings of fact contained above are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

In the habeas opinion, this court found that, based upon the facts and authority presented to the court, no habeas relief is due because the petitioner failed to show that the finding by the Court of Criminal Appeals (that there was no ineffective assistance of appellate counsel in this regard) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).

On direct appeal, the Court of Criminal Appeals also rejected Claim E(17), the ineffective assistance of appellate counsel claim based upon the failure to raise Claim E(4) (the claim that trial counsel failed to put forth a viable theory of defense), stating as follows:

> With regard to Payne's claim that his appellate counsel failed to argue on appeal that trial counsel was ineffective for failing to "obtain and utilize competent psychiatric and psychological assistance" during his trial, the circuit court made the following findings of fact:
>
> > "4. Prior to trial, based upon motion of trial counsel, a psychiatric exam was ordered by the Court to determine the defendant's competency to stand trial and his mental state at the time of the offense.  An extensive evaluation was performed by Dr. Maier, an independent expert hired by the Court.  The report indicated that petitioner was drinking heavily at the time of the offense, noted the mental anxiety of the defendant prior to trial, considered the medications that the defendant was taking to deal with depression, and further considered the defendant's history of alcohol abuse.  The expert evaluation offered no evidence of mental disease or defect or diminished capacity of the defendant.
> >
> > "5. Pretrial investigation was made of a Dr. Larimore concerning a claim by petitioner that he had suffered head trauma in an automobile accident.  Dr. Larimore's deposition was taken.  In addition, investigation was made of a Dr. Coleman at Woodland Community Hospital.  All of this information was made available to the jury in this cause.  Depositions of Dr. Larimore and Dr. Coleman were played to the jury."
>
> (C.R. on remand 192.)  The circuit court's findings of fact are supported by the record.  Additionally, we note that Payne's trial counsel, Gregory A. Nichols, testified that at the time he requested a mental evaluation for Payne he believed that Payne was competent to stand trial.  Recognizing, however, that Payne had had an unusual childhood and that there were perhaps underlying mental problems, he made the request to determine their influence on his adult behavior.  Payne was evaluated by a licensed mental health expert.  None of the expert's opinions included a finding that Payne, as he argued in his Rule 32 hearing, suffered extreme mental and emotional duress at the time of the offense or that he was incapable of appreciating the criminality of his conduct.  Thus, Payne has not shown that his trial counsel's failure to present expert testimony on his mental

27

health was outside "the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 669, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Additionally, Payne had not shown that additional testimony about his mental health would have changed the outcome of his trial.

As we noted in *Samra v. State*, 771 So. 2d 1108, 1120 (Ala. Cr. App. 1999):

> "'A distinction must be made between a failure to investigate the mental history of an accused and the rejection of insanity as a defense after proper investigation. "An attorney with considerable experience in criminal matters and, therefore, in dealing with a wide range of people . . . may be presumed to have some ability to evaluate the mental capacity of his client." *United States ex rel. Rivera v. Franzen*, 594 F. Supp. 198, 202 (N.D. Ill. 1984). "As a practical matter, when deciding whether to present an insanity defense, the criminal defendant's lawyer is truly the final psychiatrist. It is not the role of a court to doubt his judgment.... Trial counsel may not reject the insanity defense "'without pursuing the basic inquiries necessary to evaluate its merits intelligently.'" *Rivera*, 594 F. Supp. at 203. *See also Martin v. Maggio*, 711 F.2d 1273, 1280 (5th Cir. 1983), *rehearing denied*, 739 F.2d 184 (5th Cir.), *cert. denied*, 469 U.S. 1028, 105 S. Ct. 447, 83 L. Ed. 2d 373 (1984); *Pickens v. Lockhart*, 714 F.2d 1455, 1467 (8th Cir. 1983) ("It is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case").'

> "*Dill v. State*, 484 So. 2d 491, 498 (Ala. Cr. App. 1985) (emphasis original). *See also Roy v. State*, 680 So. 2d 936 (Ala. Cr. App. 1996)."

Because Payne has failed to establish that his ineffective-assistance-of-trial-counsel claim is meritorious, he has failed to prove by a preponderance of the evidence that his appellate counsel was ineffective for failing to present this claim.

*Payne*, 791 So. 2d at 400-01.

In the habeas opinion, this court found that, based upon the facts and authority presented to the court, and given that the petitioner had not shown that he was entitled to expert assistance under *Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S. Ct. 1087, 1096, 84 L. Ed. 2d 53 (1985), no

habeas relief is due because the petitioner failed to show that the finding by the Court of Criminal Appeals (that there was no ineffective assistance of appellate counsel in this regard) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). This court found that trial counsel had presented ample evidence to the jury regarding the petitioner's mental or emotional state and that the petitioner failed to demonstrate the need for expert testimony in order to explain such information to the jury. This tends to show that the provision of funds for the petitioner to hire a mental health expert is not "reasonably necessary" to his representation, particularly with respect to Claims F(16) and F(17).

The petitioner offers two affidavits by psychologist Frank S. Gersh in support of his motion. Gersh opines as to the factors that could have affected the petitioner's mental state and culpability at the time of the offense, and states that "it is [his] professional opinion that there is a substantial basis to justify an expert psychological/neuropsychological evaluation of [the petitioner]." (Doc. 24, Ex. 1 at p. 3). He also opines that Dr. Maier's evaluation of the petitioner was insufficient for him to form a reliable opinion with respect to the petitioner's insanity, "given [the petitioner's] possibly extensive history of head injury." (Doc. 24 at Ex. 2). The court notes, as stated in the habeas opinion, that Gersh has never seen or evaluated the petitioner personally, and that he relies on factual information that was before the state courts. Also, Gersh's affidavits

29

appear to be speculative and thus of limited use in the court's analysis.[16]   Given the findings set

forth above and the information before the court, the affidavits do not indicate that a mental

health expert is "reasonably necessary" to the representation of the defendant within the meaning

of 21 U.S.C. § 848(q).

In accordance with the analysis set forth above, the court finds that the petitioner's

motion for funds to retain a mental health expert is  due to be denied.

### B.        Motion for Funds for Investigative Assistance

The petitioner has requested that this court provide him with funds to hire investigative

assistance "to perform necessary investigative work on his behalf in support of his facially

meritorious claims."  (Doc. 23 at ¶ 1).  He complains that he has never had "court appointed

investigative services in connection with the gathering and presentation of mitigation evidence

---

[16]Dr. Gersh states as follows:

 "the history of repeated head injuries together with the history of physical abuse
*suggest* the presence of significant cognitive and emotional problems.  These
*could have* affected ability to form intent and/or caused Max Payne to either not
appreciate what he was doing or not know right from wrong.  Work by Dorothy
Otnow Lewis, MD [citations omitted] reveals, in a series of juveniles convicted of
murder and a series of death row inmates in New York State, the universal
presence of both exposure to both childhood physical abuse and the presence of
either severe mental illness or head injury in all cases.  *All three of these factors* -
exposure to severe physical abuse, closed head injury, and serious mental illness -
*can produce diminished capacity or insanity.*  In addition, in the case of Max
Payne, there is a history of alcohol abuse, evidence of intoxication prior to the
time of the killing, and severe psychological stress in the days prior to the killing.
*All of these factors can*, when superimposed upon a background of exposure to
severe abuse, possible head injury and serious mental illness, *produce diminished
capacity or lead to insanity.*

(Doc. 24, Ex. 1 at pp. 2-3) (emphasis supplied).  These statements are in the nature of speculation
and do not support the petitioner's argument that the provision of a mental health expert is
reasonably necessary to his representation.

with respect to the appropriateness of the death penalty being imposed." (Doc. 23 at ¶ 2). Specifically, the petitioner wants investigative services in connection with Claim E(1) of his Amended and Substituted Petition (the claim that trial counsel failed to present available and critical mitigating evidence). (Doc. 23 at ¶ 2). As is set forth hereinabove, Claim E(1) is procedurally defaulted, so the court cannot reach the merits of that claim unless the petitioner shows cause and prejudice or that there is a sufficient probability that the court's failure to review his federal claim will result in a fundamental miscarriage of justice. As is also set forth in the habeas opinion, the petitioner fails to make such a showing. Nor do the information and materials offered in connection with the instant motions enable him to do so.

Even if Claim E(1) were not procedurally defaulted, it is doubtful that the plaintiff could show that such investigative services are "reasonably necessary" to his representation. He argues that, at trial, proper investigation was not conducted with respect to the petitioner's "medical history, educational history, employment, training history, family and social history, religious and cultural influences...[and] records from all doctors, hospitals, schools, employers [and]...people with knowledge of Mr. Payne's background." (Doc. 23 at ¶¶ 1-2). He also argues that "[a]dditional investigation is required with respect to interviewing non-family members who could corroborate testimony regarding the physical abuse of Payne by his step-father and the domestic abuse of Payne's mother by his step-father." (*Id*. at ¶ 3).

There is no indication that investigation into the various records and history of the plaintiff would be "reasonably necessary" to his representation here. The petitioner has offered no insight as to what sort of additional, vital information such an investigation would reveal. There is likewise no indication that corroboration by non-family members of the petitioner's

domestic abuse would be "reasonably necessary" to the petitioner's ineffective assistance of trial counsel claim.  Trial counsel gathered information from family members, who testified at trial as to the domestic abuse suffered and witnessed by the petitioner.  *See Payne*,  791 So. 2d at 401-08 (Ala. Crim. App. 1999).  It is not clear how further corroboration from outside the family would benefit the petitioner's representation.  For the reasons set forth above, the court finds that the petitioner's motion for funds for investigative assistance (doc. 23) is due to be denied.

## IV.    Conclusion

As is set forth above, the petitioner's motion for funds for investigative assistance (doc. 23), motion for funds for mental health expert (doc. 24) and motion for discovery and application for evidentiary hearing (doc. 26). are all due to be denied.  An order consistent with the court's findings set forth above will be issued contemporaneously herewith.

Done this 16th day of September 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE