**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| MAX LANDON PAYNE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 5:01-cv-0090-LSC |
| | ) | |
| MICHAEL W. HALEY, COMMISSIONER, | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS | ) | |
| | ) | |
| Respondent. | ) | |

**Table of Contents**

I.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    Factual and Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       A.   The Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.   Procedural Default. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            1.   Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            2.   *Jackson* as an "adequate" state ground upon which the state court
                 could deny relief on Ineffective Assistance of Trial Counsel Claims . . . 21

            3.   Fundamental Miscarriage of Justice  . . . . . . . . . . . . . . . . . . . . . . . 27

       C.   Standard of Review of the Merits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       D.   Analysis of Individual Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IV.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

**MEMORANDUM OPINION**

## I.    Introduction

This is an action for habeas corpus relief under 28 U.S.C. § 2254 by an Alabama state prisoner under a sentence of death.  On January 8, 2001, with the assistance of counsel, the petitioner filed his petition for writ of habeas corpus in this court, challenging his state court murder conviction and his sentence of death.  (Doc. 1).[1]  Since then, the petitioner has amended his petition which is currently before the court.  (Doc. 8).  It is captioned as the petitioner's "Amended and Substituted Petition for Writ of Habeas Corpus by Prisoner in State Custody Under Sentence of Death."  (*Id*. (hereinafter "Petition")).  The respondent has filed an answer (doc. 13 (hereinafter "Answer")) and a brief (doc. 32 (hereinafter "Brief")).  The petitioner has also filed a reply (doc. 25 (hereinafter "Reply")).

## II.    Factual and Procedural Background

The petitioner was indicted in the Cullman County Circuit Court[2] on April 20, 1992, for three counts of capital murder arising from a single death.  (C.R. 1).[3]  The court appointed Hayden R. Battles as the petitioner's trial counsel, but Battles withdrew because he had previously represented the murder victim, Braxton Brown, and because another attorney in

---

[1]References to "Doc. __" are to the documents as numbered by the Clerk of the Court in this court's record of the case.

[2]The Cullman County Circuit Court will be referred to as the "circuit court" or the "trial court" herein.

[3]References to "C.R. __" are to the numbered pages of the Circuit Court Clerk's Record on direct appeal in this case.

Battles's law firm was close friends with Brown's family.  (C.R. 5; Tab #R-1).[4]  The court then appointed another attorney as the petitioner's trial counsel.  (C.R. 210; Tab #R-19).  The case was tried and the petitioner was convicted on three counts of capital murder on May 27, 1994.  (Tabs #R-6 to R-15).  At the sentencing hearing, the petitioner was sentenced to death by electrocution by Circuit Court Judge Robert E. Austin on June 13, 1994.  (Tabs #R-25, R-26; Tr. T. at p. 950).[5]

After the sentencing hearing, the petitioner's trial counsel filed a motion to withdraw, asking that the court appoint new counsel for the petitioner on the basis that it would be in the petitioner's best interests.  (C.R. 200).  The court granted the motion, appointing new appellate counsel for the petitioner.  (Transcript of Rule 32 hearing ("Rule 32 Tr.") at pp. 57-58).[6]  Neither trial counsel nor appellate counsel filed a motion for new trial on the petitioner's behalf.

The petitioner's appellate counsel appealed the case to the Alabama Court of Criminal Appeals.  On May 26, 1995, that court affirmed the petitioner's conviction and death sentence. *Payne v. State*, 683 So. 2d 440 (Ala. Crim. App. 1995).  On August 2, 1996, the Alabama Supreme Court affirmed the petitioner's conviction and death sentence.  *Payne v. State*, 683 So. 2d 458 (Ala. 1996).  A timely petition for writ of certiorari was filed with the United States Supreme Court and was denied on March 24, 1997.  *Payne v. Alabama*, 520 U.S. 1146, 117 S. Ct. 1319, 137 L. Ed. 2d 481 (1997).

---

[4]References to "Tab #R-__" are to the tabbed references in the record before this court, as listed in the respondent's Habeas Corpus Checklist.  (Doc. 14).

[5]References to "Tr. T. __" are to the trial transcript which is attached as an exhibit to the Clerk's Record on Appeal in this case.

[6]This transcript is attached to the Supplemental Rule 32 Record.

On February 24, 1998, the petitioner's counsel filed in state court a collateral challenge to his conviction and death sentence pursuant to Rule 32 of the ALABAMA RULES OF CRIMINAL PROCEDURE. (Tab #R-37). The Rule 32 petition was denied on August 10, 1998.[7] (Tab #R-40). In the order denying that petition, the trial court vacated prior discovery orders entered in the case and denied the petitioner's request for the appointment of counsel. (Tab #R-34 at p. 8).

The petitioner appealed the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals, which remanded the case to the circuit court on July 9, 1999, directing that an evidentiary hearing be held regarding two matters and a return on remand be made no later than September 4, 1999.[8] (Tab #R-41; *Payne v. State*, 791 So. 2d 383, 393-94 (Ala. Crim. App. 2000)).

The circuit court held an evidentiary hearing on August 27, 1999. The court denied the petitioner's various discovery motions, as well as two pre-hearing motions filed by the petitioner, including a motion for an extension of time and a motion for funds for a mental health expert. (Tab #R-39). The petitioner's Rule 32 petition was denied on September 27, 1999. (Tab #R-40). The Court of Criminal Appeals upheld the denial of relief on February 25, 2000, and denied the petitioner's application for rehearing on April 21, 2000.[9] *Payne*, 791 So. 2d at 383, 408. The

---

[7]The petitioner points out that the circuit court did not hold a hearing or give the parties notice that it was preparing to rule on the Rule 32 petition before it issued its ruling. (Petition at ¶ 11). However, as stated below, the matter was remanded on certain issues by the Alabama Court of Criminal Appeals.

[8]The issues were whether appellate counsel was ineffective and whether *Brady* violation occurred during the trial. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[9]The petitioner notes that the Court of Criminal Appeals upheld the denial of his Rule 32 petition without giving him an opportunity to brief or argue the issues based upon the evidence

petitioner's application for a writ of certiorari was denied by the Alabama Supreme Court on

December 15, 2000. *Ex parte Payne*, 791 So. 2d 408 (Ala. 2000).

The factual background of this case was documented in the petitioner's first appeal.

*Payne*, 683 So. 2d at 442-48. The court in that case stated as follows:

> Max Landon Payne was convicted of three counts of capital murder. *Ala. Code* 1975, § 13A-5-40. Count one charged intentional murder committed during an abduction with the intent to accomplish or aid the commission of robbery or flight therefrom (§ 13A-5-40(a)(1)); count two charged intentional murder during an abduction with the intent to inflict serious physical injury (§ 13A-5-40(a)(1)); and count three charged intentional murder during a robbery in the first degree (§ 13A-5-40(a)(2)). A sentencing hearing was held before the jury, in accordance with §§ 13A-5-45 and -46, and the jury recommended a sentence of death by a vote of 11-1. Thereafter, the trial court held another sentencing hearing in accordance with §§ 13A-5-47 through -52, and, after weighing the aggravating and mitigating circumstances and considering the jury's recommendation, sentenced Payne to death. Payne appeals his conviction, raising five issues. He does not question the sufficiency of the evidence to support his convictions. Nevertheless, after reviewing the record, we find that the evidence was sufficient for the jury to exclude every reasonable hypothesis except that of guilt and to find him guilty of the offenses charged in the indictments [sic] beyond a reasonable doubt. In fact, the evidence of guilt was strong and convincing.

> On March 23, 1992, Braxton Brown, the owner of West Point Grocery in Cullman, Alabama, was robbed, abducted, and subsequently shot two times in the face with a shotgun. He died as a result of the shotgun wounds and his body was found the following day in Crooked Creek.

> The state's evidence tended to show that Payne was at his sister's house, where he was living at the time, in the company of his girlfriend and two other people in the early evening hours of March 23, 1992. Sandra Walker, Payne's girlfriend, testified that she did not know the two individuals with Payne. The three left at around 6:00 p.m. Payne returned to the house about 10 minutes later and went to the closet and removed his double-barreled shotgun. Wilma Faye Easterling, Payne's sister, asked Payne why he needed his shotgun. Payne replied "In case somebody fucks with me." Walker identified Payne's double-barreled shotgun in court.

adduced at the evidentiary hearing. (Petition at ¶ 14).

At approximately 8:33 p.m. on March 23, 1992, Judy Gail Byrum received an alarm from West Point Grocery.  At 8:36 p.m. sheriff's deputy Jason Allen received a call that there had been a holdup at West Point Grocery.  Allen notified Toby Welch, a dispatcher, who subsequently asked Gordon Nichols to respond to the scene.  Nichols, a deputy sheriff with the Cullman County Sheriff's Department, responded to the call and arrived at West Point Grocery at 8:48 p.m.  Nichols discovered the door of the store open and that some of the lights were off in the store.  The lights outside the store were also off.  Nichols also observed several packs of Marlboro cigarettes lying on the floor in front of the counter.  Nichols did not find anyone in the store.  He notified the dispatcher and secured the area.  Bobby Watson, a sergeant with the Cullman County Sheriff's Department, arrived on the scene at approximately 9:08 p.m.  He subsequently requested that an investigator be sent to the scene.  Payne had been seen at West Point Grocery by two customers, Christy Sue Godsey and Becky Noone, around 8:25 or 8:30 p.m.  Sometime after this and before 9:00 p.m. that evening, Payne arrived at his sister Faye Easterling's house.  The victim, Braxton Brown, was with him.  Sandra Walker, Payne's girlfriend, was present.  At trial, Walker identified a photograph of Brown as the man with Payne that evening.  Walker testified that when the two men entered the house, Easterling asked Payne what was going on.  Walker testified that Brown had three bank deposit bags and two cartons of Marlboro cigarettes with him.  Walker identified the three bank deposit bags at trial.  Brown told Easterling that he heard that she was pregnant and also that he heard that she needed "that," referring to money.  Easterling told Brown that she did not want the money.  Brown asked her again to take the money and Easterling said that she did not want the money.

Walker testified that Brown appeared very nervous and scared.  Payne instructed Brown to give Easterling the money he owed her.  Brown took out four $5.00 bills and laid them on the kitchen table.  Walker testified that Easterling and Payne then went to the bathroom, which is located next to the kitchen.  Walker testified that the door to the bathroom was open and that she overheard Easterling saying "don't do this" several times.

Walker further testified that she, Payne, and Payne's two sisters had been involved in an automobile accident the week before and that Payne was wearing a sling on his left shoulder as a result of an injury he received.  Walker testified that Payne had a gun in his right hand, inside the sling, on the night he arrived at the house with Brown.  Walker identified a handgun at trial as the one that Payne carried that night.  Walker testified that Easterling asked Payne to give the gun back to Brown.  Payne refused.  Then Payne gave Brown the clip out of the gun.  Easterling asked Payne to leave Brown with her or to take him back to his store and said that "maybe he would forget about this."  Walker testified that at this

6

point, Brown nodded in the affirmative.  Payne responded "No, I am going to do this."  Then Payne left with Brown.

When they were leaving the house, Payne and Brown met Ricky Smith and his wife Evelyn.  Ricky Smith testified that he arrived at Easterling's house around 8:55 or 9:00 p.m. that evening.  This was the last time that Brown was seen alive.  Smith testified that when he walked into Easterling's house, she was crying.  Easterling was speaking to Smith's wife and he overheard her say that Payne had robbed and kidnapped Brown.

At approximately 9:15 p.m., Payne arrived at George Cleghorn's house.  Payne asked Cleghorn if he could use his telephone.  Payne called someone on the telephone and asked them if they had any bullets for a .22 rifle.  Payne also asked Cleghorn if he had any bullets.  Cleghorn identified Payne's clothing at trial as the clothing that he was wearing the night of this incident.

Shortly after 9:08 p.m., Payne's sister Alma arrived at the West Point Grocery and informed Sergeant Watson that Payne was traveling in a blue Ford Maverick automobile with one missing headlight.  Based on the information that Watson received from Payne's sister, Watson ordered the dispatcher to issue an all-points bulletin to be on the lookout for the automobile and to advise all officers that Payne was in the company of Braxton Brown.

At 10:00 p.m. that evening, Investigator Ted Manus was at the West Point Grocery taking pictures of the scene when he received a call that gunshots had been heard.  He went to see if he could locate the origin of the shots but could not.  Manus returned to the store and secured several packages of cigarettes from the store that were found on the floor.  He then received a call that Brown had been seen with Payne.  Manus also received information that Brown and Payne were seen together at a residence near Bethel.  Manus left the store and proceeded to the residence.

Mitchell Love, an investigator with the Cullman County Sheriff's Department, arrived at Easterling's residence at approximately 10:15 p.m.  Love testified that he located a blue Ford Maverick automobile outside this residence.  Love had previously received word to be on the lookout for an automobile matching this description.  Love notified the dispatcher that he had located the vehicle and asked for assistance on the scene.  Several other officers arrived shortly thereafter.  The officers looked inside the vehicle and observed several beer cans, some live and expended shotgun shells and an arm sling.

Phillip Lambert, the chief investigator for the sheriff's department, arrived

7

at Easterling's residence.  He also looked inside the Ford Maverick and observed two spent shotgun shells, several unspent shotgun shells, and an arm sling.  He later called for a tow truck to have the automobile towed to the sheriff's department.

At 12:05 a.m., on March 24, 1992, Rebecca Herbstreth, a ticket agent for Greyhound Bus Lines in Birmingham, Alabama, sold someone identifying himself as James Beavers a bus ticket to Key West, Florida.  At trial, Herbstreth identified Payne as the individual who claimed to be James Beavers.  Herbstreth testified that she noticed that Payne was wearing a white T-shirt and torn blue jeans that had blood stains on them.  Herbstreth further testified that Payne had cuts on his face.  Payne gave Herbstreth a gold chain when he bought his ticket.  Herbstreth identified this gold chain at trial.  The chain was subsequently identified by the victim's son as one offered for sale from West Point Grocery.  Payne handed out cigarettes to passengers while waiting for his bus and also helped one individual pay for a bus ticket.  Herbstreth testified that Payne had tied a blue money bag to his waist that contained a lot of money.  Herbstreth stated that Payne told her he received this money from the sale of his automobile.

At approximately 7:50 a.m. on the morning of March 24, 1992, a man walked into the Greyhound Bus Station in Birmingham with a wallet that he had found about a block away.  Herbstreth was still working.  She called the Birmingham police.  Herbstreth looked in the wallet and found Braxton Brown's Social Security card inside.  Herbstreth identified the wallet at trial.  Inside were nine different credit cards, all of which had Braxton Brown's name on them.

On March 24, 1992, Officer Mitchell Love went to Payne's mother's residence.  Payne's sister, Alma Lee, was present at the residence.  Lee gave Love a double-barreled shotgun that she had in the trunk of her automobile.  Love identified the shotgun that he received from Lee at trial.  It is the same shotgun that Walker identified as Payne's shotgun.

Also on March 24, 1992, Deputy Sheriff Sidney Yarbrough searched the blue Ford Maverick automobile that had been towed from Easterling's house the night before.  Inside he found two spent shotgun shells and four shotgun shells that had not been fired.  He identified these shells at trial.  Yarbrough also found a blue arm sling in the automobile, which he identified at trial.

Volunteer fireman John Hardin, a resident of West Point, searched for Braxton Brown on the morning of March 24.  He went to a bridge on Crooked Creek near West Point.  He noticed a dark colored substance on the bridge and on the railing of the bridge.  He discovered a partial dental plate on the bridge.  He

contacted the sheriff's department.

Phillip Lambert, Ted Manus, and Anthony Dotson arrived at the bridge. Lambert observed red stains on the bridge and the partial plate. Lambert also observed a broken set of eyeglasses and a lens on the bridge. These glasses were subsequently identified by the victim's son as belonging to his father. Manus discovered a body in the creek. When the body was brought up from the creek, Manus observed that most of the face was missing. Dotson, who was serving as the coroner on this date, was present when the body was removed from the water. Dotson testified that the victim had suffered two gunshot wounds to the face. There were two large holes in the face--one in the victim's forehead and one in his mouth. Dotson knew Brown and identified the victim as Braxton Brown.

Lambert testified that he believed that the holes in the victim's face were the result of a shotgun blast. The victim's body was taken to Moss Funeral Home and later released to Peggy Lindsey of the Alabama Department of Forensic Sciences for an autopsy.

On March 25, 1992, a detective from the Metro Dade Police Department in Miami, Florida, received a telephone call that Payne was due to arrive at the Greyhound bus station in Miami. The Cullman authorities provided Detective John Robert Butchko with Payne's description and informed him that Payne was involved in a robbery-murder in Cullman, Alabama. Butchko also received information that Payne would be carrying a green duffel bag and was probably armed. Butchko was further informed that Payne was likely traveling under the name of James Beavers.

Based on this information, Butchko arrived at the Greyhound bus station and awaited the arrival of Payne's bus. A security guard held everyone on the bus so that Butchko could identify the people exiting. Butchko approached Payne, who was carrying a green duffel bag, after he exited the bus. Payne identified himself as James Beavers. Butchko was about to pat Payne down for weapons when Payne informed him that he had a .25 caliber gun in his right rear pocket. Butchko identified a Sterling .25 caliber automatic pistol at trial as the gun that he removed from Payne's pocket. This is the same gun that Sandra Walker previously identified as the gun she saw Payne with at Easterling's house when he was with the victim. This gun was also identified at trial by the victim's son as having belonged to his father. Butchko also removed Payne's wallet from his pocket. The identification in the wallet was that of Max Landon Payne. Butchko identified the wallet and its contents at trial.

Payne was subsequently transported to the homicide division of the Metro

9

Dade County Police.  Butchko saw Payne again in an investigation room at the station.  Butchko asked Payne if he could search his green duffel bag.  Payne subsequently signed a consent form allowing Butchko to search the duffel bag.  The consent form was admitted into evidence and identified at trial.  Upon searching the duffel bag Butchko found many items, including the following that he identified at trial: a jeweler's invoice made out to West Point Grocery; a Greyhound bus ticket in the name of James Beavers; a State of Alabama vehicle registration in the name of Braxton Brown; three cartons of Marlboro cigarettes; three First Alabama Bank deposit bags containing numerous checks written to West Point Grocery, credit card receipts, rings, and food stamps; bank receipts in Braxton Brown's name; $196.54 found in Payne's wallet; and, $889.30 found in the bank bags.  Many of these items were subsequently identified by the victim's son as coming from West Point Grocery.

Further testimony was heard from Peggie Lindsey, an investigator with the Alabama Department of Forensic Sciences.  Lindsey transported Brown's body to Birmingham for an autopsy.  Dr. Joseph Embry performed the autopsy and Lindsey assisted.  Lindsey testified that Embry removed around 466 shotgun pellets from the victim's skull.  Lindsey also testified that Dr. Embry removed a blood sample from the victim, which she later delivered to a serologist in Huntsville.  Lindsey testified that the victim died from the gunshot wounds to his head.

Brent Wheeler, with the Alabama Department of Forensic Sciences in Huntsville, examined the shotgun pellets, the shotgun, and the two spent shotgun shells found in Payne's automobile.  He also examined the pellets that were taken from the victim's skull.  Wheeler concluded that the pellets removed from the victim's head represented the pellets of two shotgun shells, maybe three.  He also testified that the two spent shotgun shells that were found in Payne's automobile were the same type of shells that had been used to shoot the victim.  Wheeler further testified that the two expended shells found in the automobile had been fired from Payne's shotgun that had been taken from the trunk of his sister's automobile.  Wheeler stated that the pellets taken from the victim's skull could have come from the two empty shotgun shells found in the automobile.  Wheeler testified that it was his opinion that the victim was shot from a distance of one to one and one-half feet.

Morris Glen Brown, a serologist for the Alabama Department of Forensic Sciences, tested a blood sample taken from the victim.  Brown testified that the victim's blood was "type--ABO, type was type O, Erythrocytic D-type 2-1 PGM, type 1, DAP, type B."  Brown also tested a human tissue sample taken from Payne's arm sling.  He testified that the tissue on the arm sling could have been

the victim's because of "blow-back" from the shooting of the shotgun.

Roger D. Morrison, from the Department of Forensic Sciences, tested a blood sample from the victim and a blood sample from Payne. He also tested the tissue sample taken from the arm sling. He conducted an HLA DQ Alpha test for the purpose of a DNA comparison. He concluded that the tissue from the sling and the bloodstain from the victim were both of the same HLA DQ Alpha type. According to him, this type appears in approximately six percent of the population. The test he performed was an exclusionary test, and he concluded that there was a 94% chance that the tissue taken from Payne's sling was the victim's tissue. He further concluded that the tissue taken from the sling could not have come from Payne himself. Payne presented testimony from 10 witnesses in an effort to show that it was possible that another man, by the name of James Beavers, could have committed this murder. Evelyn Smith, who passed the victim and Payne as they left Easterling's house on the night of the murder, testified that she heard her husband say "Hi, James, how are you?" Smith further testified that the only James she knows is James Beavers. Kelley Mosley, who was across the street from the West Point Grocery on the night of March 23, 1992, testified that she saw a blue Ford Maverick automobile at the store at around 9:00 p.m. and that there were three people in the automobile. The one in the backseat, she testified, had shoulder-length hair. James Beavers, who has shoulder-length blond hair, testified that he lived across the street from Easterling in March 1992. Beavers testified that he did see Payne on March 23, when he helped him fix his automobile. He denied having any knowledge of the crime. Christine Hyde testified that she had a conversation with James Beavers in December 1992 in which Beavers admitted to shooting the victim in the face. Becky Graves testified that she was in the West Point Grocery store at about 8:10 p.m. on March 23, 1992. She said that while she was in the store she saw a man with shoulder-length blonde hair. An affidavit from Tracey Shields was read into evidence. Shields stated that she saw Payne pull up to his mother's house at around 9:15 p.m. on March 23, 1992, and stated that she saw another person in the automobile with long hair. Payne did not testify.

The state subsequently presented several rebuttal witnesses. Most of these witnesses were people who testified that James Beavers was home on the night of this incident and that he did not leave his house on that night.

*Payne*, 683 So. 2d at 442-47.

## III.   Discussion

### A.   The Claims

11

The petitioner makes the following claims:

A.     The State's suppression of an agreement with a key defense witness (Rick Smith) violated the petitioner's due process rights by denying the defense evidence relevant to the credibility of the witness.  (Petition at ¶¶ 43-52).[10]

B.     The State violated the petitioner's due process rights by knowingly presenting untruthful testimony and offering an inducement to witnesses to provide untruthful testimony.  (*Id*. at ¶¶ 53-60).

C.     The trial court's lengthy oral instruction on reasonable doubt was inconsistent and confusing and violated the petitioner's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  (*Id*. at ¶¶ 61-66).

D.     The prosecutor's misconduct and improper arguments throughout the guilt and penalty phases of trial rendered the petitioner's trial fundamentally unfair and violated due process.  (*Id*. at ¶¶ 67-99).[11]

    1.     Improper comments in opening statements.  (*Id*. at ¶¶ 67-70).
    2.     Improper closing argument.  (*Id*. at ¶¶ 71-78).
    3.     Comments on the petitioner's failure to testify.  (*Id*. at ¶¶ 79-83).
    4.     Penalty phase improper argument.  (*Id*. at ¶¶ 84-99).

        a.     Reference to use of all three offenses as aggravating factors.  (*Id*. at ¶¶ 84-85).
        b.     Diminishment of jury role in determining penalty.  (*Id*. at ¶¶ 86-88).
        c.     Comments on future dangerousness without notice that future dangerousness would be argued as factor of aggravation.  (*Id*. at ¶¶ 89-94).
        d.     Improper comments on victim impact.  (*Id*. at ¶¶ 95-99).

D1.[12]     The trial court erred in holding that the petitioner's two youthful offender violations constituted a "significant" criminal history and such error violated the

---

[10]The petitioner's claims are listed herein with letters to correspond to his petition and the respondent's answer unless noted otherwise.

[11]These claims are also referred to as claims D.1-7 by the parties.

[12]The petition is incorrectly lettered using the letter "D" twice.  Accordingly, the court has listed the second "D" as "D.1".

petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id*. at ¶¶ 100-04).

E.     The petitioner was denied effective assistance of counsel at trial in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id*. at ¶¶ 105-73).

1.     Trial counsel failed to present available and critical mitigating evidence.  (*Id*. at ¶¶ 107-23).[13]

2.     Trial counsel should have requested a mitigation factor because Beavers admitted that he killed Braxton Brown, and that the petitioner's role was limited.  (*Id*. at ¶¶ 124-39).

3.     Trial counsel failed to research and argue critical case law regarding whether youthful offender violations constitute "significant" criminal history.  (*Id*. at ¶¶ 140-42).

4.     Trial counsel failed to obtain expert mental health assistance in both the guilt and penalty phase of trial.  (*Id*. at ¶¶ 143-52).

5.     Trial counsel failed to properly and timely object on double jeopardy grounds after the jury returned its verdict.  (*Id*. at ¶¶ 153-57).

6.     Trial counsel failed to put forth a viable theory of defense.  (*Id*. at ¶¶ 158-60).

7.     Trial counsel failed to take proper action to correct the effects of the jury's exposure to extrajudicial comments that tainted the jury pool.  (*Id*. at ¶¶ 161-62).

8.     Trial counsel failed to submit proper jury instructions to the court.  (*Id*. at ¶ 164).[14]

9.     Trial counsel failed to object to or submit written instructions on reasonable doubt to the court.  (*Id*. at ¶¶ 165).

10.    Trial counsel failed to object to or submit proposed instructions on accomplice liability to the court.(*Id*. at ¶ 166).

11.    Trial counsel failed to submit proposed instructions on intent.  (*Id*. at ¶ 167).

12.    Trial counsel failed to submit proposed instructions on aggravating factors.  (*Id*. at ¶ 168).

13.    Trial counsel failed to argue the correct standard for the jury to determine

---

[13]The enumerated claims are numbered to correspond to the respondent's answer (Answer) unless otherwise noted.

[14]This claim and the remaining ineffective assistance of trial counsel claims fall within the petitioner's heading that "Trial counsel failed to effectively represent the petitioner before, during, and after trial."  (*Id*. at "D.8" (¶¶ 163-73)).

the sentence to be imposed.  (*Id.* at ¶ 169).

14.    Trial counsel failed to object to the court's failure to instruct the jury that mitigating factors could be found absent a unanimous finding regarding that factor.  (*Id.* at ¶ 170).

15.    Trial counsel failed to argue that death by electrocution is cruel and unusual punishment.  (*Id.* at ¶ 171).

16.    Trial counsel failed to object to improper comments by the prosecution in opening statement, in closing argument, regarding the petitioner's failure to testify, and during the penalty phase of the trial.  (*Id.* at ¶ 172).[15]

F.    The petitioner was denied the effective assistance of counsel on direct appeal in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  (*Id.* at ¶¶ 174-84).[16]

1.    Failing to assert ineffective assistance of trial counsel claims with respect to trial counsel's failure to avoid procedural defaults, to object to inadmissible evidence or improper and illegal comments of the prosecutor, and to object to violation of Payne's constitutional rights.  (Petition at ¶ 176).

2.    Failing to identify critical issues which were evident from the face of the transcript or to conduct a basic investigation into trial counsel's ineffectiveness, including an investigation of and interview with trial

---

[15]The claims regarding the sentencing phase include that counsel failed to object to (1) the use of all three of his prior convictions as aggravating factors, (2) the jury's diminished role in determining the penalty, and, (3) the prosecution's comments on future dangerousness.  (*Id.*).

[16]The court has enumerated the petitioner's various claims of ineffective assistance of appellate counsel that were not distinctly identified by sub-headings in this section of his petition. That task was made more difficult due to the manner in which counsel chose to present these claims in the petition.  He stated:

> Appellate counsel was ineffective for failing to raise on direct appeal each and every substantive violation of Payne's constitutional, statutory, or trial rights set forth in this Petition (Sections A, B, C, D, G, H, I, J, K, L, M, N, O and P), or in the ineffectiveness of trial counsel in failing to raise and preserve objections at trial to each and every substantive violation of Payne's constitutional, statutory, or trial rights set forth in this Petition and each and every allegation of ineffective assistance of trial counsel (Section E) set forth in this Petition.  If such claims had been raised, Mr. Payne would have been entitled to the relief authorized by law.

(Petition at ¶ 182).

counsel regarding their performance at trial. (*Id*. at ¶¶ 177-78).

3.  Failing to investigate, raise, prepare, research, and assert legal issues which arose during the petitioner's trial and in failing to assert legal claims or prior pleas of laws, which constituted adequate grounds for relief and which demonstrated prejudice. (*Id*. at ¶ 179).

4.  Failing to file a timely post-trial motion or to move to extend the time for filing of post-judgment motions. (*Id*. at ¶ 180).

5.  Failing to obtain a complete set of the pleadings and trial transcripts, including pretrial hearings so as to have the opportunity to review the entire case and preserve constitutional claims or ineffectiveness of trial counsel claims. (*Id*. at ¶ 180).

6.  Failing to secure and place in the appellate record (a) the information transmitted by the State to a court-appointed psychologist or (b) a copy of the psychological report on which the trial court determined competency in a pretrial order. (*Id*. at ¶ 181).

7.  Failing to raise on direct appeal each alleged substantive violation of the petitioner's constitutional, statutory, or trial rights set forth in the instant petition. (*Id*. at ¶ 182).

8.  Appellate counsel failed to investigate or interview trial counsel. (*Id*. at ¶¶ 178, 182).

9.  Appellate counsel failed to assert that the State's suppression of an agreement with a key defense witness violated the petitioner's due process rights. (*Id*. at ¶¶ 43-52, 182).

10. Appellate counsel failed to assert that the State violated the petitioner's due process rights by knowingly presenting untruthful testimony and offering an inducement to witnesses to provide untruthful testimony. (*Id*. at ¶¶ 53-60, 182).

11. Appellate counsel failed to assert that the trial court's reasonable doubt instruction was inconsistent and confusing. (*Id*. at ¶¶ 61-66, 182).

12. Appellate counsel failed to assert that the prosecutor's misconduct and improper arguments throughout the guilt and penalty phases of trial rendered the petitioner's trial fundamentally unfair. (*Id*. at ¶¶ 67-99, 182).

13. Appellate counsel failed to assert that the trial court erred when it held that the petitioner's youthful offender convictions constituted a "significant" criminal history. (*Id*. at ¶¶ 100-04, 182).

14. Appellate counsel failed to assert that the trial court's denial of the petitioner's request for expert mental health assistance with respect to the intent required for capital murder and for mitigation denied his due process rights. (*Id*. at ¶¶ 182, 185-94).

15. Appellate counsel failed to assert that the trial court's failure to instruct the jury that a mitigating factor could be found absent unanimous finding. (*Id*. at ¶¶ 182, 195-202).

15

16.  Appellate counsel failed to assert that the trial court's jury instruction on accomplice liability was fundamentally flawed.  (*Id*. at ¶¶ 182, 203-12).

17.  Appellate counsel failed to assert that the trial court's jury instructions regarding intent were substantially prejudicial and erroneous.  (*Id*. at ¶¶ 182, 212-22).

18.  Appellate counsel failed to assert that the trial court erroneously and prejudicially duplicated the finding of conviction as the sole factor of aggravation.  (*Id*. at ¶¶ 182, 223-25).

19.  Appellate counsel failed to assert that the petitioner was denied his right to a fair, impartial, and representative jury.  (*Id*. at ¶¶ 182, 226-28).

20.  Appellate counsel failed to assert that the petitioner was denied his right to an impartial jury when two jurors overheard extrajudicial comments.  (*Id*. at ¶¶ 182, 229-34).

21.  Appellate counsel failed to assert that it would be a gross miscarriage of justice to allow the petitioner's conviction and sentence to stand where he is actually innocent of the capital offenses.  (*Id*. at ¶¶ 182, 235-38).

22.  Appellate counsel failed to assert that by providing a judicial officer with the ultimate decision of life and death, the State deprived the petitioner of his due process and jury trial rights.  (*Id*. at ¶¶ 182, 239-43).

22a.  Appellate counsel failed to assert that Alabama's judicially ordered electrocution of the petitioner at a specific date and time constitutes cruel and unusual punishment.  (*Id*. at ¶¶ 182, 244-48).[17]

23.  Appellate counsel failed to assert that the petitioner's trial attorneys were ineffective because they failed to present available and critical mitigation evidence.  (*Id*. at ¶¶ 107-23, 182).

24.  Appellate counsel failed to assert that his trial attorneys were ineffective because they failed to request a mitigating factor premised on the fact that Beavers admitted to killing Brown and that the petitioner's role was minor.  (*Id*. at ¶¶ 124-39, 182).

25.  Appellate counsel failed to assert that trial counsel were ineffective because they failed to research and argue critical case law regarding the Youthful Offender convictions and the fact that his Youthful Offender violations did not constitute "significant" criminal history.  (*Id*. at ¶¶ 140-42, 182).

26.  Appellate counsel failed to assert that the petitioner's trial counsel were ineffective because they failed to obtain expert mental assistance during the guilt and penalty phases of trial.  (*Id*. at ¶¶ 143-52, 182).[18]

---

[17]The respondent failed to enumerate this claim in his answer.  The related ineffectiveness of trial counsel claim as it concerns appellate counsel is found at F(28) in the Answer.

[18]The respondent incorrectly numbers this as a second claim "17" in their answer.

27.     Appellate counsel failed to assert that the petitioner's trial counsel were ineffective because they did not properly and timely object on double jeopardy grounds after the jury returned its verdict. (*Id*. at ¶¶ 153-57, 182).[19]

28.     Appellate counsel failed to assert that trial counsel were ineffective because they failed to put forth a viable theory of defense. (*Id*. at ¶¶ 158-60, 182).[20]

29.     Appellate counsel failed to assert that trial counsel were ineffective because they failed to take proper action to correct the effects of the jury's exposure to extrajudicial comments. (*Id*. at ¶¶ 161-62, 182).[21]

30.     Appellate counsel failed to assert that trial counsel were ineffective in that they failed to submit proper jury instructions to the court. (*Id*. at ¶¶ 164, 182).[22]

31.     Appellate counsel failed to assert that trial counsel were ineffective in that they did not object or submit written instructions on reasonable doubt. (*Id*. at ¶¶ 165, 182).[23]

32.     Appellate counsel failed to assert that trial counsel were ineffective because they failed to object or submit written instructions on accomplice liability. (*Id*. at ¶¶ 166, 182).[24]

33.     Appellate counsel failed to assert that trial counsel were ineffective because they failed to submit requested jury charges on intent. (*Id*. at ¶¶ 167, 182).[25]

34.     Appellate counsel failed to assert that trial counsel were ineffective because they did not submit jury instructions on aggravating factors. (*Id*. at ¶¶ 168, 182).[26]

35.     Appellate counsel failed to assert that trial counsel were ineffective because they failed to argue the proper standard for the jury to use in

_____

[19]The respondent incorrectly numbers this as a second claim "18". (Answer at p. 69).

[20]The respondent incorrectly numbers this as claim "19". (Answer at p. 71).

[21]The respondent incorrectly numbers this as claim "20". (Answer at p. 73).

[22]The respondent incorrectly numbers this as claim "21". (Answer at p. 74).

[23]The respondent incorrectly numbers this as claim "22". (Answer at p. 76).

[24]The respondent incorrectly numbers this as claim "23". (Answer at p. 77).

[25]The respondent incorrectly numbers this as claim "24". (Answer at p. 79).

[26]The respondent incorrectly numbers this as claim "25". (Answer at p. 80).

determining the proper sentence.  (*Id*. at ¶¶ 169, 182).[27]

36.   Appellate counsel failed to assert that rial counsel were ineffective because they did not object to the trial court's failure to instruct the jury that mitigating factors could be found absent a unanimous finding.  (*Id*. at ¶¶ 170, 182).[28]

37.   Appellate counsel failed to assert that trial counsel were ineffective in failing to argue that death by electrocution is cruel and unusual punishment.  (*Id*. at ¶¶ 171, 182).[29]

38.   Appellate counsel failed to assert that trial counsel were ineffective because they did not object to the prosecutor's improper statements during argument in the guilt and penalty phases.  (*Id*. at ¶¶ 172, 182).[30]

G.   The trial court's denial of the petitioner's request for expert mental health assistance with respect to the intent required to commit capital murder as well as factors of mitigation denied the petitioner his due process rights.  (*Id*. at ¶¶ 185-94).

H.   The trial court's failure to instruct the jury that a mitigating factor could be found absent a unanimous finding violated the petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id*. at ¶¶ 195-202).

I.   The trial court's instruction on the theory of accomplice liability was fundamentally flawed and violated the petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id*. at ¶¶ 203-12).

J.   The trial court's instructions regarding "intent" were substantially prejudicial and erroneous, thereby violating the petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (*Id*. at ¶¶ 213-22).[31]

---

[27]The respondent incorrectly numbers this as claim "26".  (Answer at p. 82).

[28]The respondent incorrectly numbers this as claim "27".  (Answer at p. 83).

[29]The respondent incorrectly numbers this as claim "28".  (Answer at pp. 84-85).

[30]The respondent incorrectly numbers this as claim "29".  (Answer at p. 86).

[31]This claim includes sub-claims that the (1) trial court failed to distinguish between the intent required for capital murder, non-capital murder, and reckless manslaughter; (2) the trial

K.      The trial court erroneously and prejudicially duplicated the finding of conviction as the sole factor of aggravation.  (*Id*. at ¶¶ 223-25).

L.      The petitioner was denied his right to a fair, impartial, and representative jury in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  (*Id*. at ¶¶ 226-28).

M.      The petitioner was denied his right to trial by an impartial jury when two jurors overheard extrajudicial comments made by the victim's family in a courthouse bathroom.  (*Id*. at ¶¶ 229-34).

N.      Allowing the petitioner's conviction to stand would result in a gross miscarriage of justice because he is actually innocent of the capital offense for which he was convicted.  (*Id*. at ¶¶ 235-38).

O.      By providing a judicial officer with the ultimate decision of life and death, the State of Alabama deprived the petitioner of due process and his right to trial by jury.  (*Id*. at ¶¶ 239-43).

P.      Alabama's judicially ordered electrocution of the petitioner, at given specific date and time, constitutes cruel and unusual punishment, and a denial of equal protection and due process of law under the Constitutions and laws of the State of Alabama and the United States.  (*Id*. at ¶¶ 244-48).

The respondent asserts that all of these claims are either procedurally barred or are meritless.

The court will analyze each in turn.

**B.    Procedural Default**

     **1.   Generally**

The respondent argues that this court may not review the merits of most of the claims raised by the petitioner because they are procedurally defaulted.  In discussing procedural default, the Eleventh Circuit has stated as follows:

---

court's instruction created a mandatory or burden-shifting presumption that any intentional act that causes death is committed with the intent to kill; and, (3) the trial court's instruction on felony murder denied the petitioner due process of law.  (*Id*. at ¶¶ 213-222).

19

The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted. Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief. *See id.* at 262, 109 S. Ct. at 1042-43; *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988). The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, *see Presnell v. Kemp*, 835 F.2d 1567, 1578-79 (11th Cir. 1988), *cert. denied*, 488 U.S. 1050, 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." *McCleskey v. Zant*, 499 U.S. 467, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991).

*Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991), *cert. denied,* 506 U.S. 930, 113 S. Ct. 361, 121 L. Ed. 2d 274 (1992). Thus, a federal habeas court generally may not review a claim if the claim has been presented in some form to a state court, and the last state court rendering a judgment in the case "'clearly and expressly' states that its judgment rests on a state procedural bar," which bar provides an independent and adequate state ground to deny relief. *Harris*, 489 U.S. at 262-63.

A petitioner may overcome a procedural default in one of two ways. First, under the "cause and prejudice" exception, he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640, 669 (1991). Second, under the "fundamental miscarriage of justice" exception, he "can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518, 524 (2000). The latter

exception allows a federal habeas court to consider a procedurally defaulted claim in the absence

of cause if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one

who is actually innocent," or where the petitioner shows "by clear and convincing evidence that

but for a constitutional error, no reasonable juror would have found the petitioner eligible for the

death penalty." *Schlup v. Delo*, 513 U.S. 298, 323-27, n.44, 115 S. Ct. 851, 865-66, n.44, 130 L.

Ed. 2d 808, 833-36 n.44 (1995) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S. Ct. 2514,

2517, 120 L. Ed. 2d 269 (1992)); *Smith v. Murray*, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 2668,

91 L. Ed. 2d 434 (1986) (quoting, respectively, *Isaac v. Engle*, 456 U.S. 107, 135, 102 S. Ct.

1558, 71 L. Ed. 2d 783 (1982) and *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L.

Ed. 2d 397 (1986)).

**2.      *Jackson* as an "adequate" state ground upon
which the state court could deny relief on
Ineffective Assistance of Trial Counsel Claims**

The petitioner asserts that his trial counsel rendered ineffective assistance and that this

serves as "cause" for his procedural default of other claims in his petition.  He further argues that

the state Rule 32 court erred in finding his ineffective assistance of trial counsel claims to be

procedurally barred under the authority of *Ex parte Jackson,* 598 So. 2d 895 (Ala. 1992), because

that case is too confusing and problematic to serve as an "adequate" state ground upon which the

state court could deny relief.   (Petition at ¶ 177 n.14; Reply at p. 6 n.2 & pp. 10-15).

The defendant in *Jackson* argued that where new counsel appointed on appeal is required

to assert an ineffective assistance of counsel claim in a motion for new trial before the trial

transcript is ready, the court violates due process by treating the failure to raise such a claim at

trial as a procedural bar to the presentation of that claim on appeal.  *Jackson*, 598 So. 2d 896-97.

In addressing this argument, the *Jackson* court initially reaffirmed the principle that "claims of

ineffective assistance of counsel may not be considered for the first time on direct appeal."

*Jackson*, 598 So. 2d at 897 (citations omitted).  After considering the rationale for this rule, the

court stated as follows:

> . . . [W]e will not make exception to the rule that a claim of ineffective
> assistance of counsel may not be considered on appeal if it was not first presented
> to the trial court.  We encourage counsel, whenever possible, to ascertain any
> possible defect in the trial process and to make an issue of that defect in an
> appropriate motion for a new trial.  Failure to include a reasonably ascertainable
> issue in a motion for a new trial will result in a bar to further argument of the issue
> on appeal and in post-conviction proceedings.
>
> We recognize that when an attorney is appointed to represent a defendant
> on appeal, it is unlikely that the reporter's transcript will be made available to him
> before the 30-day period within which to file a motion for a new trial has expired.
> Although some grounds for a new trial may be discovered in the absence of a
> transcript, the absence of a transcript may prevent appointed appellate counsel
> from ascertaining all of the grounds to support a motion for a new trial.
> Therefore, we hold that if the trial court appoints new counsel to represent the
> defendant on appeal, the trial court shall note that fact on the case action summary
> sheet, and shall also note that the time within which to file a motion for a new trial
> is extended in such case, provided the following occurs:  If newly appointed
> counsel files a motion with the court within 14 days after his appointment,
> requesting that the running of the time within which to file a motion for a new
> trial be suspended until such time as the reporter's transcript is prepared and filed,
> then in that event, the 30-day period within which to file a motion for a new trial
> shall be computed from the date the reporter's transcript is filed, which date shall
> be entered on the case action summary sheet, rather than from the date of the
> pronouncement of sentence, as provided for in Rule 24, A. R. Crim. P.  Appellate
> counsel will then have the means to raise all appropriate issues before the trial
> court.  We believe that this exception to the rule that "[a] motion for a new trial
> must be filed no later than thirty (30) days after sentence is pronounced," Rule
> 24.1(b), A. R. Crim. P., is an appropriate accommodation of the interest of the
> judiciary in having the benefit of the trial court's development of the issues and
> the interest of the defendant in fully presenting any meritorious argument
> regarding those issues.

> Although Rule 31(a), A. R. App. P., requires an appellant to "serve and file his brief within 28 days (4 weeks) after the date shown on the copy of the certificate of completion of the record on appeal," where the procedure described herein is applicable, an appellant shall serve and file his brief within 28 days (4 weeks) after the trial court's ruling on a motion for a new trial. This exception to Rule 31(a) will avoid the possibility that an appellant's brief will be due before the trial court's ruling on a motion for a new trial.

*Jackson*, 598 So. 2d at 897-98.

The petitioner points out that even the Alabama Supreme Court has recognized the problems inherent in *Jackson*. (Reply at p. 11). In *Ex parte Ingram*, 675 So. 2d 863, 864-66 (Ala. 1996), the court overruled *Jackson*, stating as follows:

> In *Jackson*, *supra*, this Court held that a trial judge was required to extend a defendant's time for filing a new trial motion if the defendant's newly appointed appellate counsel timely moved for such an extension before the 30-day period allowed by Rule 24.1, Ala. R. Crim. P., had expired. The purpose of the *Jackson* holding was to facilitate the review of ineffective-assistance-of-counsel claims on direct appeal and thereby cut down on the number of collateral appeals attacking convictions on that basis. The holding was also intended to better protect the rights of convicted persons who have legitimate claims that they have been deprived of the constitutional right to effective assistance of counsel.

> *Jackson* extended the Rule 24.1(b) time limit for making new trial motions in order to give new appellate counsel enough time to review the trial transcript and identify any deficient trial counsel performance and move the trial judge for a new trial before the defendant's case is heard upon appeal. In order to encourage the presentation of ineffective-assistance -of-counsel claims in direct appeals rather than in collateral appeals, it was necessary to grant this additional time to present the issue to the trial judge on a new trial motion, because it has been universally held that "claims of ineffective assistance of counsel may not be considered for the first time on direct appeal." *Jackson*, 598 So. 2d at 897 (quoting *United States v. Stitzer*, 785 F.2d 1506, 1520 (11th Cir.), *cert. denied*, *Perna v. United States*, 479 U.S. 823, 107 S. Ct. 93, 93 L. Ed. 2d 44 (1986)).

> The purposes of the *Jackson* holding were very noble, and when the *Jackson* procedure was adopted, it seemed to be very well reasoned and relatively simple to apply. Since that time though, the application of the *Jackson* procedure

23

has caused innumerable problems[32] and has become a trap for the unwary, potentially frustrating the presentation of some defendants' ineffective-assistance-of-counsel claims,[33] rather than facilitating the presentation of those claims.

In *Musgrove v. State*, 659 So. 2d 229, 230 (Ala. Cr. App. 1995), Judge Taylor, writing for the majority, stated: "The application of *Jackson* has presented numerous situations that have spawned problems, not only for the trial courts and attorneys, but for this court as well." The confusion and intractable problems that have ensued following our holding in *Jackson* leave the members of this Court no alternative to overruling *Jackson*.

*Ingram*, 675 So. 2d at 864-66.

The petitioner argues that the court should find that the *Jackson* rule is too confusing and

ambiguous to constitute an "adequate state ground" upon which the state court could deny relief.

---

[32]The text of the footnote reads as follows:

*See, e.g., Pardue v. State*, 661 So. 2d 263 (Ala. Cr. App. 1993) (to what extent does the *Ex parte Jackson* procedure apply to pre-*Jackson* cases?), *rev'd on other grounds*, 661 So. 2d 268 (Ala. 1994); *Eldridge v. State*, 655 So. 2d 1095 (Ala. Cr. App. 1994) (confusion over when new trial motion is due); *Alderman v. State*, 647 So. 2d 28 (Ala. Cr. App. 1994) (whether failure to properly follow the *Jackson* procedure is ineffective assistance of appellate counsel); *Ex parte Webb*, 656 So. 2d 351 (Ala. 1995) (whether a *Jackson* motion to suspend the running of the time for a new trial motion also suspends the running of the time to file a notice of appeal); *Musgrove v. State,* 659 So. 2d 229 (Ala. Cr. App. 1995) (the implications of a court reporter's failure to give appellate counsel notice of the completion of the record).

[33]The text of the footnote reads as follows:

*See, e.g., Wilson v. State*, 659 So. 2d 152 (Ala. Cr. App. 1994) [*cert. denied*, 516 U.S. 852, 116 S. Ct. 151, 133 L. Ed 2d 96 (1995)]; *Davenport v. State*, 653 So. 2d 1006 (Ala. Cr. App. 1994) [*cert. denied*, 516 U.S. 852, 116 S. Ct. 151, 133 L. Ed. 2d 96 (1995); *see also* H. Maddox, *Alabama Rules of Criminal Procedure* (2d ed. 1994), Vol. 1, § 6.0, p. 239 ("If new counsel is appointed to represent an indigent defendant on appeal, an ineffective assistance of counsel claim must be made on motion for new trial or it is waived.").

(Reply at pp. 11-14).  With respect to the adequacy of state grounds, the Eleventh Circuit has

stated as follows:

> In *Card v. Dugger*, 911 F.2d 1494 (11ᵗʰ Cir. 1990), we established a
> three-part test to enable us to determine when a state court's procedural ruling
> constitutes an independent and adequate state rule of decision.  First, the last state
> court rendering a judgment in the case must clearly and expressly state that it is
> relying on state procedural rules to resolve the federal claim without reaching the
> merits of that claim.  *See id.* at 1516.   Secondly, the state court's decision must
> rest solidly on state law grounds, and may not be "intertwined with an
> interpretation of federal law."  *Id.*  Finally, the state procedural rule must be
> adequate; i.e., it must not be applied in an arbitrary or unprecedented fashion. The
> state court's procedural rule cannot be "manifestly unfair" in its treatment of the
> petitioner's federal constitutional claim to be considered adequate for the purposes
> of the procedural default doctrine.  *Id.* at 1517.

*Judd v. Haley*, 250 F.3d 1308, 1313 (11ᵗʰ Cir.  2001).  *See also Ford v. Georgia*, 498 U.S. 411,

423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935, 948-49 (1991) (citations omitted) (a state

procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established

and regularly followed").

The petitioner argues that, under a narrow construction of *Jackson*, new appellate counsel

would have had only 20 days from his appointment, and 13 days from the date the transcript was

prepared, to file a motion for new trial.  (Reply at p. 14).  The petitioner also argues that the

completion of the transcript triggered deadlines for the filing of the record on appeal and the

filing of appellant's brief which would have meant that new appellate counsel would have had to

file a motion for new trial and an appellant's brief within 42 days of his appointment.  (*Id.*).  No

*Jackson* motion could have been filed as of June 30, 1994, he argues, because the record had

been prepared.  (*Id.*).

The petitioner further argues that his appellate counsel, "reading the precise language of

*Jackson*, could understandably have been confused as to how to proceed with any ineffectiveness of trial counsel claims, whether he could file a *Jackson* motion to extend the time for filing a new trial motion when the transcript had already been prepared and whether the time for filing of appellant's brief would be tolled to allow for a ruling on a motion for new trial when procedures outlined in *Jackson* were not applicable." (Reply at p. 15). The petitioner argues that he has shown "good cause," consistent with the holding in *Ingram*, to raise his ineffective assistance of trial counsel claims in his Rule 32 petition.

Although the Alabama Supreme Court acknowledged that there were problems in applying *Jackson*, and although a strict construction of the case could possibly confuse a newly retained appellate counsel about his client's rights under that case, the court is reluctant to find, on so speculative a basis as is offered by the petitioner, that the rule is not an "adequate state ground." There is no mandatory authority for so treating the *Jackson*-related state court rulings, and the court will not take so significant a step based upon the authority cited by the petitioner.[34]

The petitioner also argues that *Ingram* did not "explicitly resolve how trial and appellate courts should treat cases where the date of conviction was post-*Jackson* but pre-*Ingram*." (Reply at p. 12). But the *Ingram* court addressed this issue, holding as follows:

---

[34]In this regard, the petitioner cites *Wheat v. Thigpen*, 793 F.2d 621, 624-25 (5th Cir. 1986) (court found that Mississippi courts did not uniformly refuse, in post-conviction proceedings, to consider issues not raised on direct appeal, so a rule to that effect was not an independent and adequate state ground for procedural bar purposes), *cert. denied*, 480 U.S. 930, 107 S. Ct. 1566, 94 L. Ed. 2d 759 (1987); *see also Walker v. Engle*, 703 F.2d 959, 966-67 (6th Cir.), *cert. denied*, 464 U.S. 951, 104 S. Ct. 367, 78 L. Ed. 2d 327 (1983); and *Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir.), *cert. denied*, 498 U.S. 834, 111 S. Ct. 102, 112 L. Ed. 2d 73 (1990), cited by the petitioner. Nothing in these cases persuades the court that it must find that the *Jackson* rule is not an "adequate" state ground for the purposes of this analysis.

> We therefore overrule *Jackson* to the extent that it allows a defendant's newly appointed appellate counsel to move to suspend the Rule 24.1(b), Ala. R. Crim. P., 30-day jurisdictional time limit for new trial motions. We continue to encourage trial judges to attempt to facilitate newly appointed appellate counsel's efforts to make new trial motions based upon an alleged lack of effective counsel before the Rule 24.1(b) time limit expires. However, in any cases in which the defendant is convicted after the date this opinion is released, an ineffective-assistance-of- counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala. R. Crim. P., expires, in order for that claim to be properly preserved for review upon direct appeal.

*Ingram*, 675 So. 2d at 865. The petitioner has not demonstrated that the Alabama courts failed to follow *Jackson* on a consistent basis in cases where the conviction was after *Jackson* but before *Ingram*.

The petitioner finally argues that the ineffective assistance of trial counsel claims were not "reasonably ascertainable" under *Jackson*, because of the time limitations faced by the petitioner's attorney in raising such claims.[35] Since *Jackson* applies to adjust time limits for newly appointed appellate counsel, it makes little sense to construe "reasonably ascertainable" in terms of time limits. Rather, in looking at the case at a whole, this phrase apparently refers to ascertainability in aspects other than those of time limitations imposed on counsel.

### 3.    Fundamental Miscarriage of Justice

To the extent that the petitioner argues that he is actually innocent, the court finds otherwise. Nothing in the petitioner's filings or submissions demonstrates that he has met the foregoing standard. He has not made a showing of "actual innocence" necessary to circumvent

---

[35]The petitioner used the term "readily ascertainable" in his brief, but this appears to be a typographical error, as the term used by the *Jackson* court is "reasonably ascertainable." (Reply at pp. 12, 15; *Jackson*, 598 So. 2d at 897).

his procedural default of any claim in his habeas corpus petition.[36]

### C.   Standard of Review of the Merits

The Eleventh Circuit Court of Appeals recently articulated the applicable standard of

review of a final state habeas corpus judgment in *Stephens v. Hall*, 407 F.3d 1195 (11th Cir.

2005), petition for certiorari filed (August 2, 2005) (No. 05-5660).  In pertinent part, the court

stated:

---

[36]The petitioner must show "actual innocence" either as to the crime or his eligibility for the death penalty.  Showing "actual innocence" of the crime requires the petitioner "to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence--that was not presented at trial."  *Schlup*, 513 U.S. at 323.  As to "actual innocence" regarding his eligibility for the death penalty, a petitioner must show by clear and convincing evidence that, but for a constitutional error at trial, no reasonable juror would have found him eligible for the death penalty under state law.  *Schlup, supra; Sawyer, supra*.  The petitioner's actual innocence claims are procedurally defaulted, as is set forth below, but even if they were not, he has not offered sufficient evidence to make a showing of actual innocence under *Schlup*.

In support of his actual innocence claim, the petitioner argues that he was denied discovery, materials, and resources that would have allowed him to investigate and obtain additional evidence which would establish his actual innocence.  (Petition at ¶ 235).  He also argues that his actual innocence would have been established had his counsel obtained discovery from the prosecution "in time to follow-up on that discovery and investigate the leads it uncovered."  (Petition at ¶ 236).  He further complains that the evidence presented at trial is more consistent with the theory that James Beavers did the murder than it is with the petitioner's guilt.  (Petition at ¶ 237).  This is not the sort of "new reliable evidence . . . not presented at trial" that would allow the petitioner to make his showing of actual innocence of the crime.  *Schlup*, 513 U.S. at 323.  Nor is it the sort of clear and convincing evidence that would permit the petitioner to show his actual innocence as to his eligibility for the death penalty.  *Schlup, supra; Sawyer, supra*.  With respect to the petitioner's arguments that the evidence demonstrates that Beavers is guilty of the murder, the court notes that this theory was presented at trial and was rejected, as is set forth above.

To the extent that the petitioner is requesting additional discovery or an evidentiary hearing in order to obtain evidence to show his actual innocence, the court will address these matters in connection with the petitioner's motion for discovery and application for an evidentiary hearing.  (Doc. 26).

Because we are reviewing a final state habeas judgment, "our review is greatly circumscribed and is highly deferential to the state courts" under section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002). . . . A federal court may not grant habeas relief unless the decision of the state court either was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e).

Our review of legal conclusions by the state courts is also especially deferential. A state court decision is contrary to the clearly established precedent of the Supreme Court "(1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent." *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 406, 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389 (2000)). An unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Under the unreasonable application clause of section 2254(d), a federal habeas court may not issue the writ on the ground that, in its independent judgment, the state court applied federal law incorrectly. *See Bell v. Cone*, 535 U.S. 685, 698-99, 122 S. Ct. 1843, 1852, 152 L. Ed. 2d 914 (2002). This clause imposes a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 2066 n.7, 138 L. Ed. 2d 481 (1997)). The habeas applicant must show that the state court applied federal law to the facts of his case in an objectively unreasonable manner. *See id.* at 25, 123 S. Ct. at 360. An "unreasonable application of federal law is

different from an incorrect application of federal law." *Williams*, 529 U.S. at 410, 120 S. Ct. at 1522.  Even clear error, standing alone, is not a ground for awarding habeas relief.  *See Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).

*Stephens*, 407 F.3d 1201-02.

### D.   Analysis of Individual Claims

1.   **The State's suppression of an agreement with a key defense witness (Rick Smith) violated the petitioner's due process rights by denying the defense evidence relevant to the credibility of the witness.  (Ground A).[37]**

**The State violated the petitioner's due process rights by knowingly presenting untruthful testimony and offering an inducement to witnesses to provide untruthful testimony. (Ground B).**

Because of the commonality of facts and circumstances concerning the petitioner's first two claims, they will be considered together.  The petitioner's counsel assert in support of these claims that the original trial counsel "intended to call Rick Smith as a crucial defense witness. Mr. Smith was expected to testify, consistent with his pretrial statements to a defense investigator, that he had seen James Beavers with Payne and Braxton Brown on March 23, 1992, outside the residence of Payne's sister."  (Petition at ¶ 45 (footnote omitted)).  The petitioner's counsel argues that Beavers "was waiting in Payne's car, presumably with the shotgun, while Payne and Brown were inside the house."[38]  Counsel further argue that this testimony was

---

[37]As enumerated in the Petition.

[38]In the petition, counsel erroneously states that it was "Braxton Brown" and not James Beavers that was waiting in the car.  (Petition at ¶ 45).  Because that would make no sense, the court has corrected the reference.

significant in that it "would have supported a finding that although present during the events leading to Brown's death, Payne did not harbor malice towards Brown and was seeking to assist Brown and prevent his coming to harm at the hands of James Beavers." (*Id*. at ¶ 46). Counsel further argue that this "finding would be consistent with other trial testimony, such as the fact that Payne returned to Brown the clip to Brown's gun, thus demonstrating to Brown that Payne did not have an intention to remain armed, nor pose a threat to Brown."[39] (*Id*.). However, according to petitioner's counsel, this favorable testimony was co-opted by the prosecutor by an offer of assistance to Smith concerning a visitation dispute Smith was having with his former wife, Evelyn Smith, the petitioner's sister.

The respondent asserts that these claims are precluded from review for three reasons: First, they were not raised at trial. Second, they were not raised on direct appeal. Third, they were not raised in the Rule 32 petition. (Answer at pp. 4-10). The petitioner does not dispute that the claims were not raised at trial or on appeal, but retorts that the claims are not barred from review because they

> were plead in his original Rule 32 petition filed in state court and considered by both the trial court and the Alabama Court of Criminal Appeals. Further, the rulings of the state courts do not clearly and unambiguously rely upon failure to comply with a state procedural rule as the basis for the state court decisions, and actions of the state have impeded Payne's ability to timely raise the claim[s] in state court.

(Reply at p. 2).

---

[39]As a part of this claim, the petitioner asserts that "the State specifically withheld from the defense that Rick Smith had provided an oral statement to the State that his truthful testimony would be that he had seen Mr. Beavers with Payne and Brown the night of Mr. Brown's death." (Petition at ¶ 47).

31

The Rule 32 court held that the petitioner's allegations (R-37 at ¶¶ 168-72) lacked the requisite factual specificity upon which relief could be granted.  (R-40 at pp. 5-6).  The court further concluded without explanation that the issue was "precluded."  (*Id*. at p. 6).  On appeal of the denial of relief, the Alabama Court of Appeals ordered the case remanded to the trial court for an evidentiary hearing to address, among other things, the claim of "newly discovered evidence–the alleged *Brady* violation."  *Payne*, 791 So. 2d at 393.

On remand, the trial court stated:

"The 'newly discovered evidence' and *Brady* material [are] actually an old story wrapped in a new cover.[40]  Petitioner claims that Mr. Ricky Smith,

_____

[40]As stated by the Court of Appeals, "newly discovered evidence" is specifically defined by Alabama law:

. . . .  Newly discovered evidence is defined under Rule 32.1, Ala. R. Crim. P., as follows:

"Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:

". . . .

"(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

"(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

"(2) The facts are not merely cumulative to other facts that were known;

"(3) The facts do not merely amount to impeachment evidence;

ex-brother-in-law, who testified at trial, was promised help in a divorce case by the District Attorney if he would testify falsely at trial.  However, Mr. Smith's actual testimony was that while being interviewed by the District Attorney prior to Payne's trial, when Smith attempted to discuss the divorce case the response by the D.A. was that 'he couldn't get involved in that.'  The D.A. further volunteered 'but that after the trial was over, if I would come see him, he would help me get counsel.'

"Mr. Smith's sole purpose at this hearing is to convince the Court that he is a person who gives perjured testimony for small, even insignificant favors, such as helping to locate suitable counsel in a divorce action.  Even should the court choose to believe such a confessed liar, Smith's account of the exchange appears to be little more than a public official attempting to fend off the attempts by an unsavory individual to solicit special treatment.  Even Smith admits that he was told that the District Attorney 'could not get involved with that.'  But when such testimony is considered in contrast with that of the District Attorney who flatly denies making any promises in exchange for testimony, the Court does not find the testimony of Ricky Smith to be credible or worthy of belief.

"It is important to note that at trial the State rested without the District Attorney calling Ricky Smith as a witness.  In fact, at trial, Smith was initially called by the defense as a witness and at that time Smith claimed it was not the District Attorney, but rather the defendant's family that was threatening him concerning his testimony.  The nature of Smith's contradictory testimony and tendency to disregard the truth was given full airing in front of the jury when investigator NeSmith testified for the defendant that Smith had given a contradictory version of what happened than the version he testified to in Court. The Court finds all of the above constitutes neither newly discovered evidence or any violation of *Brady v. Maryland*."  (C.R. on remand 194-95.).

---

"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

"(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."

Rule 32.1(e), Ala.R.Crim.P.  We note that because of the conjunctive "and" between (4) and (5), Payne must meet all five prerequisites of Rule 32.1(e), Ala.R.Crim.P., in order to prevail. . . .

*Payne*, 791 So. 2d at 397-98.

*Payne*, 791 So. 2d at 398.

When the case was returned to the Court of Criminal Appeals, that court stated:

> The circuit court's findings in its order are supported by the record and are sufficient to support its denial of relief on this allegation. Payne failed to establish that the evidence was newly discovered. Specifically, Payne failed to establish that the facts relied upon were not cumulative to other facts known, that the facts did not amount to impeachment evidence, that if the facts had been known at trial the result would probably have been different, and that the facts establish Payne's innocence. Rule 32.1(e), Ala. R. Crim. P. Therefore, we conclude that Payne's alleged *Brady* claim has failed to meet the requirements of newly discovered evidence and that Payne was not entitled to relief with regard to this claim.

*Id*.

Because it is unclear whether the Court of Criminal Appeals deemed these claims to be procedurally defaulted, as opposed to being without merit, this court concludes that even if they are not precluded from review,[41] the petitioner is entitled to no relief. The court has examined the relevant trial testimony and the testimony at the Rule 32 hearing given by Mr. Smith and the District Attorney. This court agrees with the determinations of the trial court and the Alabama Court of Criminal Appeals that the testimony of Mr. Smith is not credible. Additionally, the court finds that the trial jury was aware that Mr. Smith had changed his testimony. Specifically, the record demonstrates that the defense investigator, former ABI Agent Johnny NeSmith, testified that Smith told him that he had seen Beavers in the back seat of the Maverick outside of Easterly's residence. (Tr. T. at p. 723). NeSmith also reiterated that Smith told him that Brown

---

[41]Under the circumstances, the claims do not appear to be procedurally defaulted. Under Rule 32.1, claims of newly discovered evidence are distinct substantive claims. ALA. R. CRIM. P. 32.1(e). The respondent's conclusory statement that the "failure to prove that this claim [(under *Brady* )] was based on newly discovered evidence was a procedural default under state law, which bars consideration of this claim on federal habeas corpus review," is insufficient to alter this court's determination. (Answer at p. 8).

34

and the petitioner were on the porch when Smith arrived at the scene.  (*Id.*).  Thus, the court

cannot attach the significance to Smith's change in his statement that the petitioner's counsel

attempts.  These claims, therefore, do not warrant any relief under the applicable standard of

review.[42]

> ## 2. The trial court's lengthy oral instruction on reasonable doubt was inconsistent and confusing and violated the petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  (Ground C).

The petitioner's counsel assert that the reasonable doubt instruction at trial was defective

because "moral certainty and reasonable doubt were made synonymous."  (Petition at ¶ 61).

Counsel also assert that the court erred when it "informed the jury that the doubt must be 'actual

. . . ;'" when it instructed "each juror to employ his or her own standard of reasonable doubt, yet

also to employ an objective standard of a 'fair person . . . ;'" and when it "subtly switched the

burden to Mr. Payne to show what was necessary for an acquittal. . . ."  (*Id.* (transcript citations

omitted)).  The respondent retorts that these claims are precluded from review because they were

not raised at trial, on appeal, and were found to be procedurally barred in the Rule 32

proceedings.  (Response at p. 11).

---

[42]The petitioner's counsel also assert that this is "not the only defense witness whose testimony at trial, after a meeting with the State, differed from pre-trial statements and whose trial testimony was detrimental to the Defendant."  (Petition at ¶ 56).  By way of example, petitioner's counsel assert that Christy Godsey had identified an individual she had seen in Brown's store that night as having "'blondish brown' hair."  (*Id.* at ¶ 57).  This description, according to the defense, "was consistent with a description of James Beavers on May 23, 1992, and not of Max Payne. . . ."  (*Id.*).  Because this assertion was not presented to the state courts, it is precluded from review.  To the extent that the assertion is offered in support of the claim concerning Smith, the court is not impressed.  Such a conclusory assertion possess no evidentiary weight.

The petitioner counters that these claims are not precluded because "Alabama has a plain error standard of review in capital cases on direct appeal allowing the Alabama Supreme Court to notice any 'plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and [to] take any appropriate appellate action by reason thereof, whether such error has or probably has adversely affected the substantial rights of the petitioner.'" (Reply at p. 6 (citing ALA. R. APP. P. 39(k)). The petitioner further cites to *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), for the proposition that "a state court's finding of waiver does not constitute an 'independent' state ground because the state rule does not apply to federal constitutional errors which may be reviewed under a plain error rule." He also notes that other courts have applied this principle to habeas corpus cases. (Reply at p. 6 (citing *McKenna v. McDaniel*, 65 F.3d 1483, 1488-89 (9th Cir. 1995), *cert. denied*, 517 U.S. 1150 (1996); *Brecheen v. Reynolds*, 41 F.3d 1343, 1354 (10th Cir. 1994), *cert. denied*, 515 U.S. 1135 (1995); *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994)).

The court does not find the petitioner's arguments persuasive for a number of reasons. First, *Ake* involved a direct appeal while the present case involves a procedural default in collateral review as well. Second, the other authorities cited by counsel are distinguishable. Third, without controlling authority to impose such a burden, this court is disinclined to do so.[43] To find otherwise would obviate the well-settled requirement that the "petitioner must have 'fairly presented' the substance of his federal claims to the state courts by raising both the factual

---

[43]To the extent that the petitioner asserts that this and other claims are not procedurally defaulted because "*Ex parte Jackson* has not been uniformly applied and is not an adequate ground on which to deny relief," the court has already addressed that issue. (Reply at p. 6 n.2).

36

and legal premises of the claims for relief that are now being asserted in the federal proceeding."

*See Henderson v. Haley*, 353 F.3d 880, 898 n.25 (11th Cir. 2003).

      To the extent that the petitioner argues that ineffectiveness of trial and appellate counsel constitute cause to excuse the procedural default, the court finds that the petitioner's allegations of ineffective assistance cannot excuse the procedural default because they were not properly preserved in state court.  *Edward v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518 (2000) (unless the petitioner establishes cause and prejudice to excuse the procedural default for failing to raise ineffective assistance of counsel claim, he is barred from using that as a basis for cause to excuse the default of the initial claim); *Hill v. Jones*, 81 F.3d 1015, 1029, 1030 (11th Cir. 1996) (procedurally defaulted claims of ineffective assistance cannot serve as cause to excuse a default of a second claim).

      With regard to the prejudice prong of this exception, the petitioner argues that "the improper reasonable doubt instruction in this matter constitutes structural error in the trial process, from which prejudice must be presumed."  (Reply at p. 7).  In support of this contention, the petitioner cites to *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990). In *Cage*, the Supreme Court reversed the conviction of a defendant where the jury instruction "equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty."  *Cage*, 498 U.S. at 41.  The Court further stated that

> It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard.  When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes

clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Id*.

In examining the complained about instruction, the court must "consider how reasonable jurors could have understood the charge as a whole." *Cage*, 498 U.S. at 41. Contrary to the petitioner's arguments, the instruction[44] did not substitute a moral certainty standard for that of

---

[44]The relevant portion of the court's instruction provided:

To the three counts charged in the indictment, the defendant in this case has entered a plea of not guilty. The defendant's plea of not guilty says he is not guilty of any of the offenses charged in the indictment, or any lesser included offenses of the indictment. When a defendant comes into court and comes before you ladies and gentlemen, a jury of his peers, on a plea of not guilty, the defendant is and must be presumed by you to be innocent of the charges. That presumption of innocence follows the defendant throughout all stages of the proceedings. It is a fact that must be considered by you ladies and gentlemen of the jury along with all the other facts that you find in this case. The presumption of innocence that the defendant has is not overcome unless and until the State of Alabama produces sufficient evidence to convince each and every juror of the defendant's guilt beyond a reasonable doubt. That is the burden on the State of Alabama--to prove the defendant guilty beyond a reasonable doubt.

Now you have heard reasonable doubt--I'll dare say several times over the last couple of days. And reasonable doubt is one of those terms that you hear all the time and not just on t.v. Sometimes I use it around my household with my kids. That is the standard they want to use. The actual definition of reasonable doubt--the Law [sic] has a definition of what reasonable doubt is. Sometimes it is difficult to explain what reasonable doubt is. It is one of those terms that the more you try to explain it, sometimes the more confused you get. The Law says I must attempt to define what reasonable doubt is. I will define it for you in the terms that the Law has laid out. It may help you to say that the reasonable doubt that would justify the acquittal of a defendant must be an actual doubt. A reasonable doubt is not a mere guess or a surmise. A reasonable doubt is a doubt that is based on reason and logic, but not speculation. If, after considering all the evidence in this case, you have an abiding conviction of the truth of the charge, then the Law says you are convinced beyond a reasonable doubt. And if you are

beyond a reasonable doubt, did not substitute each "juror's individual reasoning for what a 'fair person' would view as reasonable," and did not improperly fail to instruct the jury to consider the lack of evidence when assessing reasonable doubt.  (Petition at ¶¶ 61-66).  First, with regard to

---

convinced beyond a reasonable doubt, it would be your duty to convict the defendant.  The reasonable doubt that would entitle the accused to an acquittal is not a mere fanciful, vague, conjectural, speculative doubt--it is a reasonable doubt arising from the evidence or from part of the evidence of from a lack of the evidence.  A reasonable doubt exists if after careful and partial consideration of all the evidence in the case, you do not feel convinced beyond a reasonable doubt the defendant is guilty of the charge against him.  The defendant is entitled to every inference in his favor that can be reasonably drawn from the evidence.  Where two inferences may be drawn from the same fact--one consistent with innocent, it is your duty to take the one consistent with innocence.  If the evidence merely creates a suspicion of the defendant's guilt or the thought he is possibly or probably guilty, then there is a state of reasonable doubt and the defendant is entitled to the benefit of such reasonable doubt, and it would be your duty to find the defendant not guilty.  Reasonable doubt of the defendant's guilt may arise from the bad character or motives of witnesses who testified against him, from the evidence, lack of evidence, failure of proof or from the presumption of innocence alone that the Law gives him.  Each of you is entitled for yourself to determine whether a doubt you entertain is reasonable or not.

A reasonable doubt is one which remains after a careful consideration of the testimony in the case.  It is such as a reasonable and fair minded person would entertain under all the circumstances.  Note that the State is not required to convince you of the defendant's guilt beyond all doubt or to a mathematical certainty or beyond a shadow of doubt; but simply beyond a reasonable doubt.  If after considering and comparing all the evidence in the case, if your minds are left in a condition that you cannot say that you have an abiding conviction to a moral certainty of the defendant's guilt, then you would not be convinced beyond a reasonable doubt, and it would be your duty to find the defendant not guilty.

The burden of proof that is on the State of Alabama remains on the State of Alabama until you are convinced beyond a reasonable doubt.  How do you get to the point of knowing whether or not you are convinced beyond a reasonable doubt?  It is simple.  You look at the evidence in the case. . . .

(Tr. T. at pp. 805-09).

the use of the term "moral certainty," the court immediately equated it to the requirement of proof beyond a reasonable doubt. Additionally, the instruction made it clear that the decision of the jury was to be premised upon the evidence adduced at trial. *See Victor v. Nebraska*, 511 U.S. 1, 16-17, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994) (finding no error in the use of the words "moral certainty" in the context of the entire instruction). Second, with regard to the reference to individual reasoning, the court also made it clear that the jurors had to be unanimous in their determination. Third, there is no constitutional requirement that the jury be told that reasonable doubt may be based on the absence of certain evidence. That principle is implicit in the overall instruction given by the court in this case. It was not error for the court not to specifically state the same.

> ### 3. The Prosecutor's Misconduct and Improper Arguments Throughout the Guilt and Penalty Phases of Trial Rendered Payne's Trial Fundamentally Unfair and Violated Due Process. (Ground D).

The petitioner next argues that the prosecutor's arguments during the guilt and penalty phases of the trial violated his right to due process. (Petition at ¶¶ 67-99). The respondent argues that these claims, except the claim that the prosecutor improperly commented on the petitioner's failure to testify,[45] are precluded from further review because they were procedurally defaulted in state court. (Answer at pp. 12-20). The petitioner counters "that ineffectiveness of trial and appellate counsel constitute 'cause and prejudice' to excuse any procedural default." (Reply at p. 8).

---

[45]This claim was raised on direct appeal. The Court of Criminal Appeals held the petitioner was not entitled to relief. *Payne*, 683 So. 2d at 447-51.

This court finds that these claims, except the claim concerning purported comments on the petitioner's failure to testify, are precluded from review because the Rule 32 court and the Alabama Court of Criminal Appeals determined that they were not raised at trial or on direct appeal and therefore they were procedurally barred from review under Alabama law. *Payne*, 791 So. 2d at 391.  Additionally, the Court of Criminal Appeals found that his ineffective assistance of trial counsel claims related to improper arguments during the trial were also procedurally barred from Rule 32 review. *Id.*, 791 F.3d at 392-93.  Finally, the Court of Criminal Appeals found after the remand, *inter alia*, that the ineffective assistance of appellate counsel claim concerning the improper statements made during the guilt and penalty phases of the trial were abandoned when the petitioner did not present any evidence concerning them at the evidentiary hearing. *Id.*, 791 F.3d at 399.

This court further finds after reviewing the record that the petitioner has not demonstrated any exception to warrant further substantive analysis.  Regarding the claim that the prosecutor improperly commented during the opening statement that the evidence would show that the motive for the crime was that Mr. Brown denied the petitioner credit and that the petitioner "had talked about being able to pull 'both triggers,'" the court finds that the comments were not such that they meet the applicable standards.  Although the district attorney mistakenly did state, "I submit the evidence will show you that he (Payne) became upset about that (the denial of credit)" and Payne went into a closet "and pulls out a double barrel shotgun, and makes some comments there at that time about pulling both barrels (sic) of the shotgun at the same time and how it could be done," the trial judge properly instructed the jury that the opening statements of counsel were

41

merely arguments intended to assist the jury and not evidence.  (Tr. T. at pp. 168-69, 180-81).

He further told them that their decision should be based on the sworn testimony from the

witnesses.  (*Id*. at p. 169).  There is no reason to conclude that the jury could not and did not

follow the court's instructions.  Thus, the absence of prejudice precludes any relief.

Next, the petitioner asserts that the prosecutor improperly (1) commented that the

petitioner and his sister, Alma, participated in a conspiracy to manufacture evidence against

James Beavers, (2) vouched for the credibility of the investigation and the investigators,

(3) expressed his personal opinion that the petitioner killed the victim, (4) encouraged the jury as

representatives of the community to send a message to others, and (5) incited the jury "to

disregard objective and credible evidence."  (Petition at ¶¶ 71-78).  These claims are similarly

procedurally defaulted.  Additionally, they do not rise to the level of prejudicing a constitutional

right of the petitioner.  To the extent any of these comments could be deemed beyond the scope

of proper argument, the trial court specifically instructed the jury that the statements of the

attorneys were only arguments and told them that they were not to "let any sympathy, emotion or

prejudice influence [their] decision in this case."  (Tr. T. at p. 801).  He further stated, "You took

an oath that you would well and truly try the issues in this case, and render a verdict based on the

evidence in this case.  There is no where in that for sympathy, emotion or prejudice. . . ."  (*Id*.).

The arguments and comments of the prosecution in this case were not such that the jury would be

inclined not to follow the explicit instructions of the court.

In support of this aspect of the claim, counsel for the petitioner cites to *United States v.

Johnson*, 968 F.2d 768 (8th Cir. 1992), for the proposition that "[t]he pressing nature of the drug

problem or of crimes other than murder does not give the prosecutor license to encumber

defendants with the responsibility for larger societal problems in addition to their own

misdeeds." (Petition at ¶ 77). This reference is to the prosecutor's closing argument in this case,

which provided as follows:

> . . . . A lot of times, I hear people say -- especially when something this heinous
> happens, they say, "They have to do something about that." About drugs- -"Why
> don't they do something about that." Capital murder- -"Why don't they do
> something about that?" I often wonder that when police officers have done their
> job, who are they talking about when they say that. Who is "they"? In just a few
> minutes, you are "they". You have the opportunity to send a message to all the
> citizens in Cullman County that if somebody does something like this man did to
> Braxton Brown- -this will not be allowed. We will not put up with this. We will
> do our jobs and we will do it proud as jurors. I hope you think we have done ours.
> We will send a message- - this will not be tolerated. If you even think about
> doing something like this man did to Braxton Brown, you better not. When you
> do, you will be arrested, prosecuted and you will be convicted. I ask you to send
> that message--not just to people like Payne and not just people in Cullman
> County, but to anybody in the world that might think they will come in our county
> and do something like that. Please send that message.

(Tr. T. at pp. 796-97).

Johnson is factually distinguishable from the present situation. However, it does

articulate determinative factors to be considered in addressing the issue of prejudice: (1) the

cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the

defendant's guilt; and (3) the curative actions taken by the trial judge. Id., 968 F.2d at 771.

Applying those factors, the court again finds the petitioner is not entitled to relief. The effect of

the comments was not significant in view of the evidence and the court's admonitions to the jury

to follow the law and the evidence.

The petitioner next asserts that the prosecutor improperly commented on the defendant's

failure to testify.  In support of this allegation, he cites the following portion of the closing

argument of the prosecution:

> . . . .  They put on a witness and we put on a witness and we put on a
> witness, then they put on another witness. . . .  They are trying to put the focus on
> James Beavers.  Let's be fair to everyone and consider both of them suspects.
> Let's make a list of evidence and the facts you have under one and the same under
> the other. . . .  [T]here was no evidence to tie Mr. Beavers to this situation.  <u>He
> was available in court to testify</u>.  <u>Let's go over to the other side</u> and say what
> evidence and what circumstances do you have against the <u>defendant</u>.  As I say, I
> have always felt that what a person does is more reliable than what is said by a
> third party or whoever.  When we go through these, ask yourself "Is that
> consistent with a person who is not the defendant or the one that is guilty of the
> crime?

(Petition at ¶ 79 (citing Tr. T. at pp. 745-47) (emphasis in original)).  The petitioner also argues

that this statement, combined with the posing of several hypothetical questions answerable only

by the petitioner ("The conjecture arises, 'What happened during that time frame?'  I don't know.

I don't know whether Max asked for the magazine back and Braxton Brown said 'No way.'  I

don't know. . . ."  (Tr. T. 755)), drew attention to his failure to testify and highlighted his failure

to testify with Beavers' presence in court.  (Petition at ¶¶ 79-83).

The respondent argues that this claim was addressed on direct appeal and the petitioner

has not demonstrated that that determination is erroneous under the applicable standard.  *See* 28

U.S.C. § 2254(d).  (Response at p. 15).  The Court of Criminal Appeals rejected this claim,

finding as follows:

> Payne contends that the prosecutor, in his initial closing argument,
> impermissibly commented on Payne's failure to testify.
>
> "Article I, § 6, of the Alabama Constitution of 1901 states, in part,
> that the accused in a criminal prosecution 'shall not be compelled
> to give evidence against himself.'  This constitutional right is the

44

basis for the requirement that a criminal defendant's failure to testify shall not be commented upon by the prosecution. *Ex parte Wilson*, 571 So. 2d 1251, 1261 (Ala. 1990); *Whitt v. State*, 370 So. 2d 736, 738 (Ala. 1979). In Alabama, this right is also protected by statute:

> "'On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment.'

"Ala. Code 1975, § 12-21-220."

*Ex parte Musgrove*, 638 So. 2d 1360, 1367 (Ala. 1993), *cert. denied*, *Musgrove v. Alabama*, 513 U.S. 845, 115 S. Ct. 136, 130 L. Ed. 2d 78 (1994).

The questioned comments must be reviewed under the plain error standard, Ala. R. App. P. 45A, because defense counsel made no objection to them.

> "In considering what constitutes 'plain error' in a capital case, the Alabama Supreme Court has looked to the federal court's interpretation of what is 'plain error.' *See Ex parte Harrell*, 470 So. 2d 1309 (Ala. 1985); *Ex parte Womack*, 435 So. 2d 766 (Ala. 1983). "In *United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985), the Supreme Court stated that the plain error doctrine should be used to correct only 'particularly egregious errors' (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S. Ct. 1584, 1592, 71 L. Ed. 2d 816 (1982)) which are those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings' (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555 (1936)). *Young, supra*, 105 S. Ct. at 1046-47. The plain error rule should be applied 'solely in those circumstances in which a miscarriage of justice would otherwise result.' *Young, supra*, 105 S. Ct. at 1047 (quoting *Frady, supra*, 456 U.S. at 163, n.14, 102 S. Ct. at 1592, n.14).

"Furthermore, the court noted that the plain error doctrine requires that the 'claimed error not only seriously affects "substantial rights" [of the defendant], but that it had an unfair prejudicial impact on the jury's deliberations. Only then would [a] court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.' *Young, supra*, 105 S. Ct. at 1047, n.14."

*Hooks v. State*, 534 So. 2d 329, 351-52 (Ala. Cr. App. 1987), *aff'd*, 534 So. 2d 371 (Ala. 1988), *cert. denied*, 488 U.S. 1050, 102 L. Ed. 2d 1005, 109 S. Ct. 883 (1989), *quoted in Land v. State,* [Ms. CR-93-0483, January 13, 1995] 678 So. 2d 201, (Ala. Cr. App. 1995); *Kuenzel v. State*, 577 So. 2d 474, 481-82 (Ala. Cr. App. 1990), *aff'd*, 577 So. 2d 531 (Ala.), *cert. denied*, 502 U.S. 886, 116 L. Ed. 2d 197, 112 S. Ct. 242 (1991). *See also DeBruce v. State*, 651 So. 2d 599 (Ala. Cr. App. 1993), *aff'd Ex Parte DeBruce*, 651 So. 2d 624 (Ala. 1994).

In *Windsor v. State*, [Ms. 1930048, February 18, 1994] 683 So. 2d 1021, 1023 (Ala. 1994), the Alabama Supreme Court addressed the standard for reviewing whether a comment is a comment on an accused's failure to testify, as follows:

"As this Court recently held in *Ex parte Musgrove*, 638 So. 2d 1360 (Ala. 1993), 'When an accused contends that a prosecutor has made improper comments during a closing argument, the statements at issue must be viewed in the context of the evidence presented in the case and the entire closing arguments made to the jury . . . .' 638 So. 2d at 1368 . . . .

" . . . .

"Alabama, by statute, specifically protects the privilege against self-incrimination from comment by the prosecution. § 12-21-200, Ala. Code 1975. A prosecutor must be extremely careful not to overstep the mark or to break with the established protocol regarding statements about that privilege. *Musgrove*, *supra*. To improperly comment on that privilege would be a clear violation of the defendant's rights under Article I, § 6, Ala. Const. 1901, as well as the rights protected by the Fifth Amendment as that Amendment is incorporated into the Fourteenth Amendment to the United States Constitution.

"In *Ex parte Wilson*, 571 So. 2d 1251, 1261 (Ala. 1990), this Court cited the standard endorsed by the United States Court of Appeals for the Eleventh Circuit:

"'"[A] statement by a prosecutor is improper if it was manifestly intended to be, or was of such a character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify." *Marsden v. Moore*, 847 F.2d 1536, 1547 (11th Cir.), *cert. denied*, 488 U.S. 983, 109 S. Ct. 534, 102 L. Ed. 2d 566 (1988); *United States v. Betancourt*, 734 F.2d 750, 758 (11th Cir.), *cert. denied*, 469 U.S. 1021, 105 S. Ct. 440, 83 L. Ed. 2d 365 (1984).'"

It is with these principles in mind that we review the prosecutorial comments asserted by Payne to constitute comments on his failure to testify.

The prosecutor made the first comments during his argument concerning the jury's consideration of the defense's theory that James Beavers, rather than Payne, committed the offenses charged. In listing the evidence arguably indicating Beavers's guilt and the evidence arguably indicating Payne's guilt and in asking the jury to weigh one list of evidence against the other, the prosecutor stated:

"[Beavers's] mother, Mrs. Reynolds, said he was there all that time. [His ex-girlfriend's] son, Terry, said he was there that night. The police, by their own testimony, continued to investigate. Every time they would receive an additional report, they would go out and see if they could find James Beavers. . . . The investigation continued. On each occasion, there was no evidence to tie Mr. Beavers to this situation. *He was available in court to testify. Let's go over to the other side* and say what evidence and what circumstances do you have against the defendant. As I say, I have always felt what a person does is more reliable than what [is] said by a third party or whoever. When we go through these, ask yourself, 'Is that consistent with a person who is not the defendant or the one that is guilty of the crime?'"

(Emphasis added.)

We find the following to be particularly applicable in this instance:

"Because this is a case in which the death penalty has been imposed, the fact that no objection was made stating the particular ground asserted on appeal does not prevent our review of this issue. *Ex parte Hart*, 612 So. 2d 536, 537 (Ala. 1992), *cert.*

47

*denied*, 508 U.S. 953, 113 S. Ct. 2450, 124 L. Ed. 2d 666 (1993).
However, the failure to object

> """does weigh against any claim of prejudice." *Ex
> parte Kennedy*, 472 So. 2d 1106, 1111 (Ala.), *cert.
> denied*, 474 U.S. 975, 106 S. Ct. 340, 88 L. Ed. 2d
> 325 (1985).  "This court has concluded that the
> failure to object to [allegedly] improper
> prosecutorial arguments . . . should be weighed as
> part of our evaluation of the claim on the merits
> because of its suggestion that the defense did not
> consider the comments in question to be particularly
> harmful." *Johnson v. Wainwright*, 778 F.2d 623,
> 629 n.6 (11th Cir. 1985), *cert. denied*, 484 U.S. 872,
> 108 S. Ct. 201, 98 L. Ed. 2d 152 (1987).'

> "*Kuenzel v. State*, 577 So. 2d at 489 (emphasis original *in Ex parte
> Kennedy*)."

*Land v. State*, 678 So. 2d 201, 223  (Ala. Cr. App. 1995).

Not only did defense counsel evidently not consider these comments to be
particularly harmful, he also pointed out that Beavers had testified.  In reiterating
each witness's testimony arguably pointing to Beavers's guilt, defense counsel
stated:

> "What about James Beavers?  You got to see him and hear
> him and what all he had to say. He had some criminal convictions.
> If I remember the evidence, he is older than [Payne].  I think they
> are even related in some way. Which one of them had some
> experience in crime?  Which one of them knew the things to do?"

(Emphasis added.)

The only arguable difference between defense counsel's comment and the
prosecutor's argument was that the prosecutor, after recognizing that Beavers's
testimony, [sic] shifted the focus to the evidence arguably supporting Payne's
guilt.  We consider this second remark to be akin to the comments under scrutiny
in *Ex parte Musgrove*.  There, the prosecutor asked the questions "What did you
hear from the defense?" and "What did you hear from the Defendant?"  The
Supreme Court explicitly agreed with the following interpretation of the latter
question:

"'[This comment,] when viewed in the context of the entire
argument, did not refer to the appellant's failure to testify, but was
rather the prosecutor's opening into a summary of the case
presented by the defense.  The comment was clearly not a direct
reference to the appellant's failure to testify because it was not
'manifestly intended to be, or was of such a character that the jury
would naturally and necessarily take it to be, a comment on the
failure of the accused to testify.'  [Citations omitted.]  Nor was this
comment an indirect reference to the appellant's failure to testify
and there was no "close identification" of the appellants as the
exact people who did not become witnesses.  [Citations omitted.]
This statement by the prosecutor was merely a general opening
statement to a recapitulation of the defense's case.'"

*Ex Parte Musgrove*, 638 So. 2d at 1369 (quoting *Musgrove v. State*, 638 So. 2d
1347, 1359 (Ala. Cr. App. 1992), *aff'd*, *Musgrove v. Alabama*, 513 U.S. 845, 115
S. Ct. 136, 130 L. Ed. 2d 78 (1994).

We also find persuasive *United States v. Chandler*, 996 F.2d 1073,
1094-95 (11th Cir. 1993), *cert. denied*, *Chandler v. U.S.*, 512 U.S. 1227, 114 S. Ct.
2724, 129 L. Ed. 2d 848 (1994), in which the court reviewed the prosecutor's
comment that the defendant, Chandler, was more culpable than one of his cohorts
Charles Ray Jarrell, who testified for the prosecution.  In that argument, the
prosecutor made the following comments:

"You've heard several times that in return for his
cooperation in this case . . . the United States government and the
State of Alabama have agreed to recommend a 25-year sentence
without parole for Charles Ray Jarrell . . . .

"Now, the defendant will no doubt argue this simply is not
somehow not [sic] fair.  *Charles Ray Jarrell came here before you
and testified before you.  You were able to hear his testimony.  He
came in here, admitted what he did, came in here and told you
what he did, what kind of person he is* and [it] isn't anything to
write home about, there is no question about that.  But I submit to
you that a man that was willing to solicit two different prospective
killers on at least three different occasions, a man who was willing
to provide money to people to perform the act, a man who was
willing to provide weapons to complete the act and a man who is
cunning and manipulative is a far more dangerous individual than a

49

> self-confessed town drunk living hand to mouth who allows
> himself to be manipulated into actually doing this terrible act."

*Id*. at 1094 (emphasis added).

In reviewing these remarks, the court stated:

> "Viewed in the context in which the statement was made,
> we find that the prosecutor's statement was not improper.  A
> common sense reading of the statement suggests that the
> prosecutor was arguing that Jarrell was not as culpable as
> Chandler.  The argument was based, not on Chandler's failure to
> testify, but on the facts elicited from Jarrell's testimony.  A jury
> would not naturally take the argument to be a comment on
> Chandler's failure to testify, nor is it obvious that the remark was
> so intended."

*Id*. at 1095.

Accordingly, we find that the first comments under scrutiny do not
constitute plain error.  *See also Dill v. State*, 600 So. 2d 343, 355 (Ala. Cr. App.
1991), *aff'd*, 600 So. 2d 372 (Ala. 1992), *cert. denied*, *Dill v. Alabama*, 507 U.S.
924, 113 S. Ct. 1293, 122 L. Ed. 2d 684 (1993) (the court held that the comment -
- that Terry Dill was the "only one" from whom the jurors had heard -- made
immediately before the prosecutor's lengthy summation of the evidence
corroborating the testimony of Terry Dill (who was in a vehicle with the victim
and the defendant when the defendant shot the victim) was not a comment on the
defendant's failure to testify and even if it was, it did not amount to plain error).

The second comment by the prosecutor is as follows:

> "It is pretty clear up to the point they leave the house here at nine
> o'clock that evening -- not much conjecture can be involved as far as that.
> After that, that is the last time Braxton Brown was seen alive.  He was
> with the defendant.  We assume from the time frame that [Payne] left here,
> came back up here, and went down this road here, going back to the West
> Point Grocery.  *The conjecture arises 'What happened during that time*
> *frame?'  I don't know.  I don't know whether [Payne] asked for the*
> *magazine back and Braxton Brown said 'No way.'*  I don't know if he saw
> a patrol car.  You see, unbeknown to [Payne], he doesn't know any alarm
> has gone off.  He doesn't know that the police know anything.  He may
> have passed a patrol car going from the West Point Grocery over here to

where [Payne] lives, and he may have panicked.  He may have thought that Wilma turned him in.  He may have thought, 'Now I have no choice.'  Or he may have got down here and said, 'Braxton, I'm going to let you out here and I'm going to cut a trail here.  By the time you get back up here to get help, I'll be long gone.  Let's make a deal.  If I let you out and you don't contact the authorities, we will forget this happened.'  Maybe at that point, Braxton said, 'No way.  I'm going to call the police when I get a chance.'  And [Payne] ended it right there on that bridge.  Then he goes to the airport or bus station and buys the bus ticket. . . . Whatever scenario you think fits, something between here and there happened.  That is for you to decide.  The end result is that [Payne] undoubtedly was here on this bridge and did the murder on that occasion."

(Emphasis added.)

Early in his initial closing argument, the prosecutor explained to the jury that the purpose of an investigation is to preserve the evidence and the scene for the jury to consider in the subsequent prosecution, in this case 26 months after the offense.  He further stated, "It is our responsibility at this point and our duty to re-create by evidence what the circumstances were on that day."  Some of his argument was couched in the terms what "we" know, e.g., "What is the next thing we know?"  We conclude that, by the comments under scrutiny, the prosecutor was merely following this line of thought; the prosecutor was merely arguing to the jury that even though the prosecution had not been able to reconstruct the events of the entire evening, the evidence still pointed to Payne's guilt.  *See State v. Windsor*, 683 So. 2d at 1023 (the Court in finding objected-to comment -- "If we could get into that mind over there [the defendant's] and put out here what is in there, we would have no reason for a jury." -- without error stated that "it is apparent that the prosecutor was referring not to Windsor's failure to testify, but rather to the State's own failure to produce direct evidence of Windsor's intent").

Moreover, we find that both defense counsel did not consider the comments in question to be particularly harmful.  In fact, they used this line of argument to Payne's benefit.  Early in his argument, one defense counsel said: "[The prosecutor] did say that whatever happened at that bridge, he doesn't know.  The State doesn't know and they have not proven to you what happened or who did what to Braxton Brown.  There are a lot of different theories that can come up."  Counsel also stated that he did not know, e.g., "Whatever took place on that night, James Beavers was calculating and making plans that he didn't want to be seen with Mr. Brown that night"; and "If Mr. Beavers did in fact do the killing, he could have wiped off the gun with the sling.  I don't know."  The other defense counsel, in arguing that in order for the jury to convict Payne the evidence had to

51

point to Payne's guilt beyond a reasonable doubt, stated the following: "[The prosecutor] told us a few minutes ago -- maybe this happened or maybe that happened.  This decision y'all are about to make is too important to be based on speculation."

Accordingly, we find that this second comment did not constitute plain error.  *Compare Windsor v. State*, 593 So. 2d 87, 90-92 (Ala. Cr. App. 1991) (the court, in reviewing the prosecutor's comment -- "*they can't explain* why [the victim's] weapon [which had been missing since immediately after his death] was in the defendant's pocket when he was arrested" -- made by the prosecutor while pointing at the defendant, held that the comment was an indirect comment on the defendant's failure to testify and, further, that the comment could have been construed as alerting the jury to the defendant's opportunity to refute the prosecution's case because only the defendant could have explained why the victim's gun was in his possession) (emphasis added); *Burson v. State*, 373 So. 2d 1239, 1241 (Ala. Cr. App. 1979) (the court found the following comment to be a direct comment on the defendant's failure to testify and thus the trial court's overruling of the defendant's objections was error: "[the defendant] was hiding, in the closet.  Or maybe he was just sitting in the closet.  I don't know, *he's not going to tell us*.").

*Payne*, 683 So. 2d at 447-51.  On appeal, this holding was affirmed by the Alabama Supreme Court.  *Ex parte Payne*, 683 So. 2d at 464-67.

The petitioner criticizes this analysis, arguing that the prosecutorial comments in this case were not "akin" to those in *Musgrove*, and that *Musgrove* is therefore inapplicable here.  (Reply at pp. 24-25).  In *Musgrove*, the petitioner argues, the court declined to find that the prosecutorial comment, "[w]hat did you hear from the defense?" was reversible error because the comment was made during rebuttal argument and was immediately followed by a reference to defense counsel's statements about "Adolph Hitler and 6,000,000 Jews" and "the electric chair."  The petitioner asserts that these facts led the court to conclude that the comment alluded to the defense counsel's statements, rather than to any failure to testify.  He thus argues that this case is

dissimilar to *Musgrove* because, in this case, (1) the challenged comments were made during the prosecutor's closing argument rather than in rebuttal and because (2) "the context of [the prosecutor's comments] were not couched in references to anything so vivid as 'Hitler,' '6,000,000 Jews,' or 'the electric chair.'"  (Reply at p. 25).

The *Musgrove* court focused on the nature of the defense counsel's arguments and the location of the challenged comments in the rebuttal argument because the law required that it view the challenged comments "in the context of the evidence presented in the case and the entire closing argument made to the jury–both defense counsel's and the prosecutor's." *Musgrove*, 638 So. 2d at 1368 (citations omitted).  It addressed the challenged comments merely in the context of the circumstances before it.  The *Musgrove* court did not hold or imply that such comments are erroneous unless offered during rebuttal or in response to adequately "vivid" references by opposing counsel.  The distinctions the petitioner attempts to draw between this case and *Musgrove* are not material ones.

The petitioner also criticizes the treatment of *Chandler* in the analysis set forth above, arguing that there are important differences between that case and this one.  One such difference, the petitioner argues, is that the prosecutor in *Chandler* made his comments in a context that could "explain away" any potential prejudice, and that the court there found that the comments amounted to arguing that the co-defendant was not "as culpable" as the defendant.  (Reply at p. 26).  The court is not persuaded that vital differences between this case and *Chandler* exist such that the state court erred in applying that authority.  The petitioner has not demonstrated that the state court findings on this issue are "contrary to" or "an unreasonable application" of federal

law, or that they are based on an unreasonable determination of the facts that were presented during the state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  The petitioner therefore cannot prevail on this claim.

Lastly, the petitioner asserts that the prosecutor made a number of improper arguments during the penalty phase of his trial.  Specifically, he asserts that the following comments by the prosecutor were error: (1) he impliedly referenced that the jury could consider three statutory aggravating factors, even though the prosecution elected to proceed only on the factor dealing with the kidnaping, because they had found him guilty of three different capitol offenses; (2) he improperly "suggested" that the responsibility for determining the appropriateness of the death sentence did not rest with the jury and it's decision would be corrected if a mistake were made; (3) he commented on future dangerousness without providing notice to the defense that it would be a factor of aggravation; and (4) he improperly commented on victim related issues, "nullifying the legislative policy of weighing factors of mitigation and aggravation" and adduced testimony at trial concerning the victim's 16 year old daughter.  (Petition at ¶¶ 84-99).

The respondent is correct that these claims are procedurally defaulted.  Claims of purported ineffective assistance of trial and appellate counsel do not preserve the same because those claims are likewise defaulted as to these issues.  Finally, the petitioner has not demonstrated sufficient prejudice to allow further review of these matters.  His conclusory argument that, "[b]ut for the improper argument about future dangerousness, improper victim impact . . ., and improper references to factors of aggravation, there is a reasonable probability that a sentence of death would not have been imposed," is not sufficient.  (Reply at p. 9).

4.    **The Trial Court's Error in Holding That Payne's Two Youthful Offender Violations Constituted a "Significant" Criminal History Violated Payne's Rights Under the Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution.  (Ground D1)**.

The petitioner asserts that the trial court improperly ruled that his two youthful offender violations for driving under the influence and second degree theft precluded a finding that the petitioner had no "significant" history of criminal activity, which would have been an additional mitigating factor.  (Petition at ¶¶ 100-04).  The respondent asserts that this claim is precluded from review because it was not raised at trial or on direct appeal and, although it was raised in the Rule 32 petition, it was procedurally barred from review under Rule 32.2(a)(3) and (5). (Response at pp. 21-22).  Additionally, the respondent asserts that the allegations fail to state a claim for relief because they only present a question of state law.  (*Id*. at pp. 22-23).  The petitioner retorts that the procedural default is excused because of the ineffectiveness of appellate counsel.  (Reply at p. 9).

The Alabama Court of Criminal Appeals specifically found that this claim was procedurally barred from review under Rule 32 because it could have been, but was not, raised and addressed at trial or on appeal.  *Payne*, 791 So. 2d at 391.  The court, however, ordered the trial court to address the petitioner's newly discovered evidence and ineffective assistance of appellate counsel claims.  *Id.*

On remand, the trial court conducted an evidentiary hearing wherein the ineffectiveness of appellate counsel claim concerning the use of the youthful offender adjudications was discussed.  Specifically, the evidence was that trial counsel did not have any recollection of

raising that issue at sentencing or discussing the same with appellate counsel.  (Rule 32 Tr. at pp.

53-54).  Following the hearing, the judge found as follows:

> As to petitioner's Claim E that "appellate counsel was ineffective for failing to raise on direct appeal the claim that trial counsel were ineffective for not objecting and citing existing case law that two youthful offender adjudications were neither criminal nor significant, and that the lack of a significant criminal history entitled petitioner to a factor of mitigation" the Court does not find by a preponderance of the evidence that appellate counsel's performance was deficient. The Court further finds that the petitioner has not shown that the deficient performance prejudiced the defendant by demonstrating from the evidence that counsel's errors were so serious as to deprive the petitioner of a fair trial or a trial whose results are reliable.

(Tab #R-52 at p. 10).  The Court of Appeals did not specifically address the matter after the

remand.  The Court did state that review of his ineffective assistance of counsel claims was

limited to those pled in his original petition, which did not include the failure of appellate

counsel to challenge trial counsel's failure to attack the use of the prior youthful offender

adjudications at the penalty phase of the trial.[46]  Because the related claim of ineffective

assistance of appellate counsel was procedurally defaulted in state court, it cannot serve as cause

for the failure to raise the substantive claim regarding the merits of the use of the prior youthful

---

[46]The court noted that in his Rule 32 petition, the petitioner raised a general allegation that his appellate counsel was ineffective.  *Payne*, 791 So. 2d at 398 (citing C.R. 359-60).  The court further stated that the claim was "completely unsupported by a statement of specific facts." *Id*.  The court concluded, *inter alia*, that the claim "therefore failed to meet the specificity requirements of Rule 32.6(b), Ala. R. Crim. P."  *Id*.  In so finding, the court did further state that the petitioner did specifically plead (within other claims) certain claims.  The enumerated claims, however, did not include an ineffective assistance of appellate counsel claim regarding the use of the youthful offender adjudications.  *Id*.

To the extent that the petitioner filed an amended petition in the Rule 32 court, the Court of Criminal Appeals held that the filing was "void."  *Payne*, 791 So. 2d at 394.  Accordingly, the court concluded that "the matters addressed with regard to the amended Rule 32 petition cannot be considered by this Court because they were never properly before the circuit court."  *Id*.

offender adjudications either at trial or on appeal.

Additionally, this court agrees with the Alabama Court of Criminal Appeals in its determination that the petitioner has not demonstrated adequate prejudice to warrant relief. This court is not left with the conviction that under the circumstances the jury or the trial court would have altered its sentence. Still further, under the "fundamental miscarriage of justice" exception, the petitioner has not demonstrated "a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards*, 529 U.S. at 451. He has not shown "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty."[47] *Schlup*, 513 U.S. at 323-27 n.44.

> **5.     Max Payne Was Denied The Effective Assistance of Counsel at Trial in Violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (Ground E)**.
>
> **6.     Ineffective Assistance of Appellate Counsel Claims. (Ground F).**

The petitioner asserts sixteen claims of ineffective assistance of counsel at trial. The respondent counters that the claims are barred from review because they were procedurally defaulted in the State courts. The petitioner retorts that the claims are not procedurally barred because the procedural default, the holding in *Ex parte Jackson*, "is not an 'adequate' ground to

---

[47]The court further notes that it is not satisfied that the claim is of a constitutional nature. It sounds more in the nature of a matter of state evidentiary law. *See Ex parte Carroll*, 852 So. 2d 821 (Ala. 2001) (the court may consider youthful offender convictions, but it may not use them to "'discount to inconsequentiality the . . . mitigating circumstances' and 'as the basis for giving little or no weight to such mitigating circumstances'").

deny relief." (Reply at p. 10). Additionally, the petitioner asserts that ineffectiveness of appellate counsel constitutes cause and prejudice for the failure to raise issues concerning trial counsel's ineffectiveness. (*Id.* at p. 15). Because the claims of ineffectiveness of trial and appellate counsel are interrelated, they will be addressed together.

In view of the earlier discussion regarding *Jackson*, the court simply reiterates its previous conclusion that this assertion is without merit. Concerning the contention that ineffective assistance of appellate counsel is cause for the default, the court disagrees.

The petitioner argues that, even if *Jackson* is considered to be an "adequate state ground" for denial of relief on his ineffective assistance of trial counsel claims, the ineffective assistance of his appellate counsel in failing to raise and preserve such claims for review serves as "cause" to excuse the default. The petitioner states as follows:

> Appellate counsel only raised five issues on direct appeal. (Paragraph 175, Amended and Substituted Petition for Writ of Habeas Corpus). None of those five issues addressed the ineffectiveness of trial counsel. He did not, as the State contends is required by *Jackson*, file a Motion for New Trial to raise before the trial court issues of trial counsel ineffectiveness. Trial counsel was never questioned by Payne's appellate attorney regarding trial counsel's contact with mental health experts or requests for court funds for experts (Rule 32 Hearing Transcript, p. 47, p. 51). Trial counsel does not recall discussing with appellate counsel any issues related to a Motion for New Trial (Rule 32 Transcript, p. 58), and only had limited contact with appellate counsel after the trial. Appellate counsel made no attempt to contact Payne's family members, to determine the extent of any mitigation evidence not presented at trial or the nature of their contact and relationship with trial counsel. (Rule 32 Transcript, p. 154, Affidavit of Gredell Coley, filed in Rule 32 Hearing).

(Reply at p. 16).

With respect to the ineffective assistance of appellate counsel claims brought before it by the petitioner, the Alabama Court of Criminal Appeals found, in pertinent part, as follows:

In his Rule 32 petition, Payne raised a general allegation that his appellate counsel was ineffective.  (C.R. 359-60.)  This claim was completely unsupported by a statement of specific facts.  It therefore failed to meet the specificity requirements of Rule 32.6(b), Ala. R. Crim. P.  Furthermore, because of the conclusory nature of Payne's general allegation in his petition, Payne failed to meet his burden under Rule 32.3, Ala. R. Crim. P., of pleading and proving by a preponderance of the evidence facts necessary to entitle him to relief.

In his petition, Payne did, however, specifically plead (within other claims) the following allegations of ineffective assistance of appellate counsel:

1. That appellate counsel failed to argue on appeal that trial counsel was ineffective for failing to "obtain and utilize competent psychiatric and psychological assistance" when presenting his defense (C.R. 313-15);

2. That appellate counsel was ineffective because he did not argue on appeal that the trial court had erred in refusing to instruct the jury on the lesser-included offense of felony murder (C.R. 339-40);

3. That appellate counsel was ineffective for not challenging the accuracy of the presentence investigation report (C.R. 354); and

4. That appellate counsel was ineffective for failing to raise the following ineffective-assistance-of-trial-counsel claims on direct appeal:

a. Trial counsel's failure to object to improper statements allegedly made by the prosecutor during argument in the guilt phase and sentencing phase of his trial (C.R. 366);

b. Trial counsel's failure to establish an adequate defense that he was not guilty of capital murder (C.R. 369);

c. Trial counsel's failure to "contest or cross-examine the state's expert witnesses or present expert testimony on [his] behalf (C.R. 370);

d. Trial counsel's failure to "renew the motion for a court-ordered mental exam after the return of the guilty verdict but prior to the sentencing phase (C.R. 370);

e. Trial counsel's failure to provide adequate representation due to inadequate funding (C.R.371); and

f. Trial counsel's failure to investigate and to present adequate mitigation evidence during the sentencing phase of his trial (C.R. 372).

Because it appears that Payne did not present evidence at the evidentiary hearing with regard to claims 2, 3, 4.a, 4.b, 4.c, and 4.d, we conclude that he has abandoned these claims and we will not review them. *Cf. Brownlee v. State*, 666 So. 2d 91, 93 (Ala. Cr. App. 1995). Moreover, even if we were to attempt to review these claims, we would conclude that Payne has failed to prove by a preponderance of the evidence that appellate counsel's performance was deficient. Rule 32.3, Ala. R. Crim. P.

Payne's claims of ineffective assistance of appellate counsel depend on whether Payne proves that appellate counsel failed to present on direct appeal a claim that would have entitled him to relief. Thus, in order to obtain relief, Payne must establish that his claims of ineffective assistance of trial counsel are meritorious and that, if they had been raised on direct appeal, the outcome of his appeal would have been different. *Bryant v. State*, 739 So. 2d 1138 (Ala. Cr. App. 1998).

*Payne*, 791 So. 2d at 398-99.

This court again also notes that to the extent the petitioner filed with the circuit court an amended Rule 32 petition, which raised ineffective assistance of appellate counsel claims not raised in the original Rule 32 petition (*Payne*, 791 So. 2d at 394 (*see* Supp. R. 2-A),[48] the Court

---

[48]References to "Supp. R. __" are to the Supplemental Rule 32 Record of the proceedings that occurred in this case after it was remanded to the circuit court by the Court of Criminal Appeals on July 9, 1999. *Payne*, 791 So. 2d 383. Attached to the Supplemental Rule 32 Record is the transcript of the Rule 32 evidentiary hearing.

of Criminal Appeals found, however, that it could not consider the claims raised in the amended

petition because the amended petition was filed in the circuit court when the case was on appeal.

Because the circuit court had no jurisdiction once the case was appealed, the new claims

presented in the amended petition were therefore never properly before the circuit court. *Payne*,

791 So. 2d at 394. For this reason, any claims appearing in the amended Rule 32 petition that the

petitioner did not include in the original Rule 32 petition cannot be considered as having been

raised in the Rule 32 proceedings.[49]

_____

[49]The petitioner argues that paragraph 208 of the original Rule 32 petition, read in conjunction with other claims of trial error in that petition, "clearly puts the State of Alabama and the court on notice of the factual and legal basis for [the petitioner's] claims of ineffective assistance of trial counsel." (Reply at p. 18). In Alabama, at the pleading stage, a petitioner must provide "a clear and specific statement of the grounds upon which relief is sought." ALA. R. CRIM. P. 32.6(b). Implicit in the Court of Criminal Appeals' opinion affirming denial of the Rule 32 petition is the finding that the petitioner did not meet this requirement as to the ineffective assistance claims first raised in the amended Rule 32 petition. The court has reviewed the original petition, including paragraph 208 mentioned by the petitioner, and finds that it does not support the petitioner's challenge of the finding by the Court of Criminal Appeals. (Tab # R-37, Rule 32 R. at p. 363).

The petitioner also complains that, on September 3, 1998, he filed a motion to reconsider the denial of his Rule 32 petition, stating an intent to file an amended Rule 32 petition and explaining that the original petition, read as a whole, raised all claims of trial error as substantive violations and as claims of ineffective assistance of trial and appellate counsel. (Reply at p. 19). He further complains that he had to file his notice of appeal by September 21, 1998, thereby losing his right to file an amended Rule 32 petition, else lose his right to an appeal. (*Id.*). He argues that a state rule that would yield such a result is not an "adequate" basis for denying relief. (*Id.*). He cites no authority for this assertion, and the court does not find it persuasive. He does not show that rule is applied in an arbitrary or unprecedented fashion or that it is manifestly unfair in its treatment of the petitioner's federal constitutional claims. *Card*, 911 F.2d at 1517. The petitioner has thus failed to show that the challenged rule is not "adequate."

The petitioner notes that the circuit court held a hearing in which the amended Rule 32 petition was addressed and that the state acquiesced in the court's decision to do so. He argues that the state should thus be unable to assert the procedural bar now. (Reply at p. 20). He cites no authority for this assertion, and the court does not find it persuasive. The court notes that

61

In the present proceedings, the petitioner claims that appellate counsel rendered ineffective assistance on direct appeal in numerous ways.  Each will be addressed individually below.

The guidepost for evaluating the substance of any ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), wherein the court formulated the two-prong test for assessing whether the representation provided by an attorney during criminal trial proceedings constitutes "ineffective" representation under the Sixth Amendment.  The court wrote that

> [a] convicted defendant's claim that counsel's assistance was so defective as to require a reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed that defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted in a breakdown of the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  Generally, an ineffective assistance of appellate counsel claim is analyzed under this two-pronged *Strickland* test.  *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077, 112 S. Ct. 981, 117 L. Ed. 2d 144 (1992).  To prove his

_____

counsel for the state assumed that the amended Rule 32 petition should be addressed at the Rule 32 hearing because of the unclear directions from the Court of Criminal Appeals, and in order to avoid another potential remand of the case to circuit court.  (Transcript of Rule 32 Hearing (attached to Supp. R.) at p. 109).  The court also notes that the respondent has asserted the procedural bar from the outset of these proceedings.  The court is similarly unpersuaded by the petitioner's argument that the Court of Criminal Appeals failed to provide adequate guidance as to the jurisdiction of the trial court on remand, so that his failure to comply with state rules was not an "adequate" ground for denying relief.  (Reply at p. 20).

62

ineffective assistance claims, the petitioner is thus required to meet both the performance and

prejudice prongs of the *Strickland* test, which is difficult.  As the Eleventh Circuit has noted, "the

cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of

counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513

U.S. 899, 115 S. Ct. 255, 130 L. Ed. 2d 175 (1994).

Meeting the first prong is difficult because "[j]udicial scrutiny of counsel's performance

must be highly deferential," and courts must "indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged action "might be

considered sound trial strategy."  *Strickland*, 466 U.S. at 689.  In discussing the first prong of

*Strickland*, the Eleventh Circuit has stated as follows:

> The Supreme Court has mandated a highly deferential review of counsel's
> conduct, especially where strategy is involved.  *Strickland v. Washington*, 466
> U.S. 668, 689-90, 104 S. Ct. 2052, 2065-66, 80 L. Ed. 2d 674 (1984).  Intensive
> scrutiny and second-guessing of attorney performance are not permitted.  *Id.*;
> *accord, e.g.*, *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992) ("Most
> important, we must avoid second-guessing counsel's performance."); *White v.
> Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts also should at the start
> presume effectiveness and should always avoid second-guessing with the benefit
> of hindsight.").  Because it is a "wide range" of performance that is
> constitutionally acceptable, "the cases in which habeas petitioners can properly
> prevail on the ground of ineffective assistance of counsel are few and far
> between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Cases in which
> deliberate strategic decisions have been found to constitute ineffective assistance
> are even fewer and farther between.

*Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994), *cert. denied*, 513 U.S. 1115, 115 S.

Ct. 911, 130 L. Ed. 2d 793 (1995).

To meet the second prong, the petitioner "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[50]  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

    a.    **Failing to assert ineffective assistance of trial counsel claims with respect to trial counsel's failure to avoid procedural defaults, to object to inadmissible evidence or improper and illegal comments of the prosecutor, and to object to violation of Payne's constitutional rights. (Petition at ¶ 176).**

These allegations are either too general in nature to serve as the basis for granting relief or are addressed within the context of other allegations that are analyzed herein.

    b.    **Failing to identify critical issues which were evident from the face of the transcript or to conduct a basic investigation into trial counsel's ineffectiveness, including an investigation of and interview with trial counsel regarding their performance at trial.  (*Id.* at ¶¶ 177-78; Answer at F(1))**.

The claim regarding appellate counsel's failure to investigate and interview trial counsel was not raised properly in the petitioner's Rule 32 petition.  *See Payne*, 791 So. 2d. at 399.  By failing to raise that claim until now, the petitioner deprived the state courts of "the first opportunity to hear the claim[s] sought to be vindicated in a federal habeas proceeding."  *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438, 444 (1971).

As is noted above, federal courts may treat such unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that

---

[50]In certain limited circumstances, prejudice is presumed.  *Strickland*, 466 U.S. at 692.

any future attempts at exhaustion would be futile. *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.), *cert. denied*, 525 U.S. 963, 119 S. Ct. 405, 142 L. Ed. 2d 329 (1998). In this case, future attempts to raise this claim in state court would be futile under the prohibition against successive petitions found in Rule 32.2(b) of the ALABAMA RULES OF CRIMINAL PROCEDURE. *See Kennedy v. Herring*, 54 F.3d 678, 684 (11th Cir. 1995) (petitioner defaulted under Alabama rules by omitting claim from state coram nobis petition and could not raise it later due to state prohibition against successive petitions so that federal court could not hear claim absent a showing of cause and prejudice). *See also Richardson v. Johnson*, 864 F.2d 1536, 1539 (11th Cir.) ("Claims that are procedurally barred from state coram nobis review are procedurally barred from federal habeas review"), *cert. denied*, 490 U.S. 1114, 109 S. Ct. 3175, 104 L. Ed. 2d 1037 (1989). The court therefore must treat this claim as procedurally defaulted. Any other claims mentioned in this section are either too general in nature to serve as the basis for granting relief or are addressed within the context of other allegations that are analyzed herein.

> **c.      Failing to investigate, raise, prepare, research, and assert legal issues which arose during the petitioner's trial and in failing to assert legal claims or prior pleas of laws, which constituted adequate grounds for relief and which demonstrated prejudice. (*Id.* at ¶ 179).**

> **d.      Failing to file a timely post-trial motion or to move to extend the time for filing of post-judgment motions. (*Id.* at ¶ 180).**

> **e.      Failing to obtain a complete set of the pleadings and trial transcripts, including pretrial hearings so as to have the opportunity to review the entire case and preserve constitutional claims or ineffectiveness of trial counsel claims. (*Id.* at ¶**

180).

  **f.**  **Failing to secure and place in the appellate record (a) the information transmitted by the State to a court-appointed psychologist or (b) a copy of the psychological report on which the trial court determined competency in a pretrial order.  (*Id.* at ¶ 181).**

  **g.**  **Failing to raise on direct appeal each alleged substantive violation of the petitioner's constitutional, statutory, or trial rights set forth in the instant petition.  (*Id.* at ¶ 182).**

These allegations are either too general in nature to serve as the basis for granting relief or are addressed within the context of other allegations that are analyzed herein.

  **h.**  **Failing to raise the ineffectiveness of trial counsel in failing to raise and preserve objections at trial to each substantive violation of the petitioner's constitutional, statutory, or trial rights set forth in the instant petition; failing to raise each ineffective assistance of trial counsel allegation asserted in the instant petition.  (*Id.* at ¶ 182).** [51]

    **i.**  **Failing to assert that trial counsel were ineffective because they failed to allege that the state's suppression of an agreement with a key defense witness violated the petitioner's due process rights. (Petition at ¶¶ 42-52, 182; Answer at F(2)).**

    **ii.**  **Failing to assert that trial counsel were ineffective because they failed to allege that the state violated the**

---

[51]Set forth below as items i-xxxi are claims that the respondent lists in its answer as being encompassed by ¶ 182 of document 8.  These items reference the petitioner's allegations of ineffective assistance of trial counsel set forth in the petition at ¶¶ 42-173, 185-243.

> **petitioner's due process rights by knowingly presenting untruthful testimony and offering an inducement to witnesses to provide untruthful testimony.  (Petition at ¶¶ 54-60, 182; Answer at F(3))**.

The petitioner did not raise these related claims in his Rule 32 petition, which constitutes a procedural default under state law.  *Payne*, 791 So. 2d at 398-99.  To the extent that he attempted to raise these claims in the amended Rule 32 petition, that action was precluded under the circumstances.  *Id*., 791 So. 2d at 394.  Additionally, as discussed previously, he has not demonstrated the requisite prejudice or fundamental miscarriage of justice on these claims or the underlying substantive claims.  Accordingly, these claims are procedurally barred in this action.

> **iii.   Failing to assert that trial counsel were ineffective because they failed to allege that the trial court's reasonable doubt instruction was inconsistent and confusing and violated the petitioner's constitutional rights.  (Petition at ¶¶ 61-66, 182; Answer at F(4))**.

The petitioner did not raise this claim in his Rule 32 petition, which constitutes a procedural default under state law.  *Payne*, 791 So. 2d at 398-99.  To the extent that he attempted to raise this claim in the amended Rule 32 petition, that action was precluded under the circumstances.  *Id*., 791 So. 2d at 394.  Additionally, as discussed previously, he has not demonstrated the requisite prejudice or fundamental miscarriage of justice concerning the underlying substantive claim.  Accordingly, this claim is procedurally barred in this action..  Accordingly, this claim is procedurally barred in this action.

> **iv.    Failing to assert that trial counsel were ineffective because they failed to allege that the prosecutor's misconduct and improper arguments throughout the guilt and penalty phases of trial rendered the petitioner's trial fundamentally unfair.  (Petition at ¶¶ 67-99, 182; Answer at F(5)).**

Although this claim was raised in the Rule 32 petition, the Court of Criminal Appeals found it was abandoned by counsel at the evidentiary hearing.  *Payne*, 791 So. 2d at 399 (citing *Brownlee v. State*, 666 So. 2d 91, 93 (Ala. Crim. App. 1995) ("'[A]llegations not expressly argued . . . on appeal . . . are deemed by us to be abandoned.'" [citation omitted]).  The petitioner argues that he did not abandon this, or any other, claim.  (Reply at p. 20).  He argues that this, and the other purportedly abandoned claims, were meritorious on their face and would have entitled him to relief, so that appellate counsel was ineffective for failing to raise them.  (*Id*. at p. 21).  It is not apparent to the court that this claim is of such obvious merit that the petitioner could gain relief without evidence and argument to support it.  There is not a sufficient basis for the court to question the state court finding that this claim was abandoned.  Because this claim is procedurally defaulted under state law, under the authority cited above, including *Picard*, 404 U.S. at 276, *Snowden*, 135 F.3d at 737, *Kennedy*, 54 F.3d at 684 and *Richardson*, 864 F.2d at 1539, it is procedurally barred in this action, as well.

As discussed previously, the court also finds that the petitioner has not shown any prejudice or a fundamental miscarriage of justice on the underlying substantive allegations to warrant relief.  This claim is therefore procedurally barred from further review in this action.

     **v.**    **Failing to assert that trial counsel were ineffective because they failed to allege that the trial court erred when it held that the petitioner's youthful offender convictions constituted a "significant" criminal history.  (Petition at ¶¶ 100-04, 182; Answer at F(6));**

     **vi.**    **Failing to assert that trial counsel were ineffective because they failed to allege that the trial court's denial of the petitioner's request for expert mental health assistance with respect to the intent required for capital murder and for mitigation denied the petitioner's due process rights.  (Petition at ¶¶ 182, 185-94; Answer at F(7))**.

     **vii.**    **Failing to assert that trial counsel were ineffective because they failed to allege that the trial court's failure to instruct the jury that a mitigating factor could be found absent a unanimous finding violated the petitioner's constitutional rights.  (Petition at ¶¶ 182, 195-202; Answer at F(8))**.

     **viii.**    **Failing to assert that trial counsel were ineffective because they failed to allege that the trial court's jury instruction on accomplice liability was fundamentally flawed. (Petition at ¶¶ 182, 203-12; Answer at F(9))**.

     **ix.**    **Failing to assert that trial counsel were ineffective because they failed to allege that the trial court's jury instructions regarding intent were**

**substantially prejudicial and erroneous.  (Petition at ¶¶ 182, 213-22; Answer at F(10))**.

x.    **Failing to assert that trial counsel were ineffective because they failed to allege that the trial court erroneously and prejudicially duplicated the finding of conviction as the sole factor of aggravation.  (Petition at ¶¶ 182, 223-25; Answer at F(11))**.

xi.   **Failing to assert that trial counsel were ineffective because they failed to allege that the petitioner was denied his right to a fair, impartial, and representative jury. (Petition at ¶¶ 182, 226-28; Answer at F(12)).**

xii.  **Failing to assert that trial counsel were ineffective because they failed to allege that the petitioner was denied his right to an impartial jury when two jurors overheard extrajudicial comments made by the victim's family in a courthouse bathroom.  (Petition at ¶¶ 182, 229-34; Answer at F(13))**;

xiii. **Failing to assert that trial counsel were ineffective because they failed to allege that it would be a gross miscarriage of justice to allow the petitioner's conviction and sentence to stand where he is actually innocent of the capital offenses.  (Petition at ¶¶ 182, 235-38; Answer at F(14))**.

xiv.  **Failing to assert that trial counsel**

were ineffective because they failed
to allege that by providing a
judicial officer with the ultimate
decision of life and death, the State
of Alabama deprived the petitioner
of due process and his right to a
jury trial.  (Petition at ¶¶ 182, 239-
43; Answer at F(15)).

xv.     Failing to assert that trial counsel were
ineffective because they failed to claim
that Alabama's judicially ordered
electrocution of the petitioner, at a
specific date and time, constitutes cruel
and unusual punishment, and a denial of
equal protection and due process of law
under the Constitutions and laws of the
United States and the State of Alabama.
(Petition at ¶¶ 182, 244-48; Answer at
F(28)).

The petitioner did not raise these claims in his Rule 32 petition, which means they are

procedurally defaulted under state law.  *Payne*, 791 So. 2d at 398-99.  To the extent that he

attempted to raise these claims in the amended Rule 32 petition, that action was precluded under

the circumstances.  *Id*., 791 So. 2d at 394.  Additionally, the petitioner has not demonstrated the

requisite prejudice or fundamental miscarriage of justice on these claims or the underlying

substantive claims to allow for further review.  Accordingly, these claims are procedurally barred

in this action.

xvi.    Failing to allege that trial counsel
were ineffective because they failed
to present available and critical
mitigating evidence.  (Petition at
¶¶ 107-23, 182; Answer at F(16)).

The petitioner raised this claim during post-conviction proceedings and the state courts

71

made findings of fact with respect thereto.  The Alabama Court of Criminal Appeals stated as

follows:

Next Payne contends that his appellate counsel was ineffective for failing
to raise a claim that his trial counsel was ineffective in presenting mitigation
evidence during the sentencing phase of his trial.

"In reviewing this claim, we are guided by the following
principles.  In *Daniels v. State*, 650 So. 2d 544, 568-70 (Ala. Cr.
App. 1994), *cert. denied*, 514 U.S. 1024, 115 S. Ct. 1375, 131 L.
Ed. 2d 230 (1995), we stated the following regarding a claim that
trial counsel had been ineffective during the penalty phase of a
capital murder trial:

"'In determining whether Haas was ineffective at
original sentencing, . . . we recognize that the

"""two-pronged *Strickland* analysis
applies whether the ineffectiveness
complained of occurred in the
defendant's trial or in a subsequent
adversarial sentencing proceeding.
However, in a challenge to the
imposition of a death sentence, the
prejudice prong of the *Strickland*
inquiry focuses on whether 'the
sentencer . . . would have concluded
that the balance of aggravating and
mitigating circumstances did not
warrant death.'"

"'*Stevens v. Zant*, 968 F.2d 1076, 1081 (11th Cir.
1992) (citation omitted), *cert. denied*, 507 U.S. 929,
113 S. Ct. 1306, 122 L. Ed. 2d 695 (1993).  We also
recognize that

"""[w]hile '[i]t should be beyond
cavil that an attorney who fails
altogether to make any preparations
for the penalty phase of a capital
murder trial deprives his client of

72

> reasonably effective assistance of counsel by any objective standard of reasonableness,' *see Blake v. Kemp*, 758 F.2d 523, 533 (11th Cir. 1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. *Strickland* only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel."

"'*White v. Singletary*, 972 F.2d 1218, 1224 (11th Cir. 1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:

> ""'An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. *Funchess v. Wainwright*, 772 F.2d 683, 689-90 (11th Cir. 1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted."

"'*Middleton v. Dugger*, 849 F.2d 491, 493 (11th Cir. 1988).

. . . .

"Furthermore, counsel is not necessarily ineffective simply because he does not present all possible mitigating evidence. 'Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, "counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation." *Stanley v. Zant*, 697 F.2d 955, 965 (11th Cir. 1983), *cert. denied*, 467 U.S. 1219, 104 S. Ct. 2667, 81 L. Ed. 2d 372 (1984).' *Lundy v. State*, 568 So. 2d 399, 403 (Ala. Cr. App. 1990).

. . . .

With the foregoing principles in mind, we conclude that the circuit court adequately assessed and rejected the evidence presented to support Payne's contention that his trial court's failure to investigate and to present adequate mitigation evidence during the sentencing phase of his trial and we adopt the following portion of the order:

"3.     More than a year before the trial, the attorneys for petitioner requested extra-ordinary expenses for an investigator to assist them in the preparation of the case.  The request was made by motion filed by trial counsel which states:

"'Counsel is required to obtain information relative to Mr. Payne's medical history, educational history, employment, training history, family and social history, religious and cultural influences.  Counsel must direct an investigator to obtain records from all doctors, hospitals, schools, employers, interview people with knowledge of the aspects of Mr. Payne's background.'

"This motion was granted by Judge Riley.  Johnny NeSmith, a retired agent of the Alabama Bureau of Investigation was hired to assist petitioner in his trial.  NeSmith contacted witnesses from as far away as Mobile and actually testified at petitioner's trial.  Mr. NeSmith spent in excess of 50 hours investigating witnesses and leads in the case.

". . . .

74

"6.     Trial counsel adequately gathered information from petitioner's family prior to trial.  This is readily apparent from the amount of background material on the petitioner's life which was presented to the jury.  Petitioner's sister and mother actually testified on behalf of the petitioner at trial.  A claim of petitioner is that trial counsel failed to establish a 'rapport' with the petitioner's family members, and that this failure led to the family failing to give full assistance to the defense and further resulted in mother and sister testifying in an ineffective manner.  The argument appears to assume that the attorneys had some sort of duty to rehearse or 'coach' the witnesses before trial.  It can only be speculated that had such rehearsing and coaching occurred and the outcome of the trial remained the same, then the petitioner would allege such inducement by the attorneys as ineffectiveness because (it would be alleged) everyone knows that spontaneous and unrehearsed testimony is far more emotional and effective than rehearsed or coached testimony.  As to the lack of 'rapport' affecting the trial defense, petitioner's attorney handling the Rule 32 petition questioned trial counsel about a remark made by the District Attorney in closing arguments referring to the zealous defense of Payne by his family.  The District Attorney's characterization of this defense as a 'conspiracy' among the family to protect Payne certainly belies the allegation that there was no cooperation between the family and petitioner's defense.

        "It is apparent to this Court that arguments of Rule 32 counsel concerning the relationship between trial counsel and the petitioner's [family] is hindsight based upon the results of the trial.  This may be fueled by the family's natural desire to come to the aid of the petitioner.  From the testimony at trial and from the Court's own observation of the petitioner's family and trial counsel during trial, the Court finds there was no deficiency on the part of trial counsel.

        ". . . .

        "8.     This Rule 32 hearing was far more remarkable for what evidence was not brought out than what evidence was produced.  The appellate counsel, whose performance is alleged to have been ineffective, was not called as a witness.  The other trial counsel, Robert Sapp, was not called as a witness even though Mr. Nicholas stated it was Sapp who handled the mental/psychological part of

the pretrial motions while Nicholas handled the change of venue motion.  Nicholas was called by the petitioner to testify as to what actions were taken by trial counsel, even though Nicholas testified that he has since lost his trial file due to changes of residences and law offices since the trial.  No attempt was made to ascertain or demonstrate any deficiencies in counsel performance by Sapp.  Payne himself, although present in Court did not testify as to his relationship and preparations with his trial counsel, nor as to any deficiencies in his counsel's performance.

"9.      Much of the focus of petitioner's Rule 32 counsel was criticism of trial counsel performance in eliciting mitigating evidence at trial.  Rule 32 counsel's complaint deals not so much with the fact that certain evidence was not brought out, but that it was not presented in precisely the same manner, or in the same detail as Rule 32 counsel would have liked.  This criticism by Rule 32 counsel extends even to the fact that trial counsel did not ask exactly the same questions which Rule 32 counsel now says should have been asked (R. 168.)  Rule 32 counsel further criticizes trial counsel for not asking the same witnesses the same questions in the penalty phases as was asked in the guilt phase.  This, Rule 32 counsel asserts 'failed to highlight' (R. 187.) certain information already heard and considered by the jury.  Rule 32 counsel at one point in the evidentiary hearing claims ineffective assistance of appellate counsel for failing to reinterview every defense witness at trial in order to determine whether their trial testimony was insufficiently 'vivid' or 'compelling' as a result [of] the defense counsel's failure to establish the proper degree of 'rapport' which Rule 32 counsel feels necessary.

          "The decisions as to whether or not to present evidence of mental impairment, alcohol abuse by the defendant, prior history of family disfunction, evidence of the offense being committed by another, and non-family testimony as mitigation, were all trial strategy decisions based upon the investigations of the attorneys and the investigator, discussions and conferences with the family members and the evidence which counsel knew that the prosecution possessed."

(C.R. on remand 191-96.)

The evidence presented by Payne at the evidentiary hearing was merely an

attempt to establish an ineffective-assistance-of-trial-counsel claim by calling the same defense witnesses presented at trial and arguing that Payne's counsel should have elicited more elaborate testimony from these witnesses. The evidence at the hearing indicated that Payne's trial counsel established a good relationship with Payne's family members. Merely because trial counsel did not present the evidence as Payne now believes he should have presented does not establish that trial counsel was ineffective. To so conclude would require us to engage in hindsight and speculation, which we will not do.

Additionally, Payne argues that trial counsel should have presented evidence of his conformity to confinement while he awaited trial. We note, however, that the jail records produced at the hearing do not support such a finding. While incarcerated awaiting his trial, Payne violated jail policies and rules. Because the evidence did not support a finding that Payne's behavior while he was incarcerated provided mitigation evidence and trial counsel decided not to present the evidence for that very reason, Payne has failed to establish that his trial counsel was ineffective.

Furthermore, we reject Payne's argument that trial counsel presented insufficient mitigation evidence of his history of alcohol abuse and drug abuse and his alleged intoxication at the time of the offense, of physical and sexual abuse within his family, and of his mental and emotional disabilities. Numerous witnesses testified during the guilt phase about Payne's consumption of alcohol on the day of the offense and about the various forms of physical abuse that Payne suffered and witnessed. Additionally, evidence was presented from Payne's physicians concerning his mental and emotional faculties and the effects of drug and alcohol consumption of his faculties. That evidence was also placed before the jury during the penalty phase. In light of the evidence presented during the guilt phase and the penalty phase of the trial, we conclude that Payne's trial counsel was not ineffective for not presenting additional evidence. Thus, appellate counsel was not ineffective for not raising such a claim.

*Payne*, 791 So. 2d at 402-08 (Ala. Crim. App. 1999).

The findings of fact contained above are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Because this claim was adjudicated on the merits by the Court of Criminal Appeals, to obtain habeas relief on this basis, the petitioner must show that the adjudication of the claim by the Court of Criminal Appeals "resulted in a decision that was

77

contrary to, or involved an unreasonable application of, clearly established Federal law as

determined by the Supreme Court of the United States" or "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d)(1) and (2).

The petitioner argues that the investigator hired by trial counsel focused his efforts almost

exclusively on gathering evidence for the guilt phase of trial, so that there was ultimately very

little mitigating evidence defense counsel could use during the sentencing phase of trial.[52]  (Reply

at pp. 29-30).  The petitioner also argues that his trial counsel had little contact with his family

members before they testified at the penalty phase, and even then, primarily focused on factual

events relating to the guilt phase of trial.  (Reply at pp. 30-31).

The petitioner argues that an adequate investigation would have revealed the following

evidence, which should have been presented at the penalty phase of his trial:

> (1)     the petitioner's lack of significant disciplinary violations as a prisoner
>            awaiting trial;[53]

---

[52]The court notes, however, that the investigator actually did gather mitigating evidence, although his focus was on finding information for the guilt phase of trial.  (Transcript of Rule 32 Hearing at pp. 39-40).

[53]As is set forth herein, the state court found that the omission of such evidence did not constitute deficient performance by trial counsel because there was actually evidence that the petitioner did have disciplinary violations in jail.  Warden Bryan Bueglar, the jail administrator for the Cullman County Sheriff's Office, testified that the petitioner violated jail policies and rules while he was incarcerated by the county:  he engaged in an improper conjugal visit, was found in possession of food contraband and was classified as "high risk" because of his violations of jail rules and regulations.  (Transcript of Rule 32 Hearing at pp. 114-15; 117-18).  This finding of no deficient performance by the state court did not "[result] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," nor did it "[result] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

78

(2)    the effects of the petitioner's history of alcohol and drug abuse and the effects and extent of the petitioner's history of being physically abused, watching the violent and frequent abuse of his mother by her husband, Pervis Mims, and witnessing the repeated sexual abuse of his sister by Mims, including the following evidence:

    (a)    testimony by the petitioner's sister, Faye Easterly, regarding an instance in which the petitioner observed his mother, who had recently been beaten by Mims, arrive home from the hospital in order to prevent Mims from beating Easterly;

    (b)    testimony by Easterly that Mims, started giving the petitioner alcohol to put him to sleep when he was about seven years old, and that the petitioner claimed that this was so that Mims could sexually abuse the petitioner's sister, Evelyn, while they were in the same room as the petitioner;

    (c)    testimony by Easterly that Mims took the petitioner and Evelyn on out-of-town trips, that the petitioner said he had seen Mims molesting Evelyn and that he returned from one trip "black and blue," explaining that Mims had beaten him when he tried to call 911 to prevent Evelyn from being molested;

    (d)    testimony by Easterly about incidents in which the petitioner witnessed Mims abusing his mother, the fact that they received no counseling about it, and that their mother denied the abuse had happened;

    (e)    testimony by Easterly that the petitioner's mother abused her children and beat the petitioner with a belt, although the petitioner showed little reaction when she did so;

    (f)    testimony by the petitioner's mother describing a long family history of alcohol abuse and physical abuse, the petitioner's physical abuse as a child, his failure to attend preschool or daycare, the taunting and beatings by peers

---

court proceeding."  28 U.S.C. § 2254(d)(1) and (2).

that he suffered at school, his ultimate lack of interest in
school, his failure to complete eighth grade, his lack of
counseling or treatment, and the existence of records
confirming elements of the petitioner's personal and family
history;[54]

(3)     the petitioner's limited mental abilities, history of head injuries,
intoxication at the time of the crime and his mental and emotional
derangement at the time of the crime, including testimony by Easterly that
the petitioner was displaying the "Pervis attitude" (i.e., inebriated and
mean, with reference to Pervis Mims) and was acting especially "hyper"
on the night of the murder, leading Easterly to suspect he was mixing
drugs and alcohol;

(4)     other factors of mitigation, including evidence about the petitioner's
attributes as a father to his son and as a father-figure to his nieces and
nephews.[55]

(Petition at ¶¶ 111, 114, 116, 122).

The court notes that trial counsel did present testimony about many of these issues at the

penalty phase of trial, although in less detail than was presented at the Rule 32 evidentiary

hearing.[56]  As is set forth above, the state court found that trial counsel did not render ineffective

---

[54]This testimony is included in the form of an affidavit from the petitioner's mother.
(Supp. R. at pp. 182-87).

[55]The petitioner did not present evidence about his attributes as a father during the Rule
32 proceedings.  The evidence he presented about his attributes as an uncle were cumulative of
the testimony he presented at the penalty phase of trial.  As the petitioner has not demonstrated
what new evidence trial counsel should have presented and how it was significant, this claim
must fail.

[56]At the penalty phase of trial, the petitioner's mother and two of his sisters testified.
That testimony revealed that the petitioner's biological father neglected him, even stating that "he
didn't care if the little S.O.B. died" when the petitioner was suffering from an illness as a baby.
(Tr. T. at pp. 866-67).  The father had no contact with the petitioner from the time the petitioner
was about a year old until he was about twelve.  (Tr. T. at pp. 877-78).

The testimony revealed that the petitioner's alcoholic stepfather beat him with his fists

80

assistance with respect to the penalty phase of trial.

The petitioner's main complaint appears to be that counsel should have spent more time with the family members so that they would have been ready and willing to testify in more detail with respect to the mitigation issues that were raised at the penalty phase.  Although the petitioner argues that trial counsel had "virtually no contact" with his family members before the penalty phase, (Reply at p. 30), the evidence shows that family members did meet with counsel before trial.  (Supp. R. at pp. 155-62).  In view of the questions asked by counsel and the testimony elicited from family members during the penalty phase, it is apparent that the

---

once or twice a month until the petitioner left home at twelve or thirteen, partly to escape the bullying he suffered at school, and partly to escape his stepfather's beatings.  (Tr. T.  at pp. 868-81).  The testimony revealed that the petitioner was drinking alcohol by the fifth grade (Tr. T.  at pp. 874, 882), and that, by the time the petitioner was eight or nine years old, he had observed Mims sexually molest Evelyn several times.  (Tr. T.  at pp. 882-83).

The testimony showed that the petitioner had intestinal problems as a child and could not play games, which led other boys to ridicule and beat him.  (Tr. T.  at p. 869).  After the petitioner left home at twelve or thirteen, he was passed from relative to relative, and was a "confused child."  (Tr. T.  at pp. 873, 881).  The petitioner never got any professional help to recover from the abuse he had suffered.  (Tr. T.  at pp. 876).

The testimony revealed that, at the time of the murder, the petitioner was distraught and drinking heavily because the mother of his child had claimed he was not the father, after all, and refused to take his telephone calls.  (Tr. T.  at pp. 883-84).  The petitioner's sister testified that he was "acting crazy" and that "[h]e didn't act like he knew what he was doing" on the day of the murder.  (Tr. T.  at p. 888).   Dr. Jack Coleman testified that he treated the petitioner for anxiety and tension over family problems in December of 1991, and prescribed him sedatives, the effects of which would be exacerbated if taken with alcohol.  (Tr. T.  at pp. 891-99).  Dr. David Lairmore testified that he treated the petitioner for a shoulder sprain on March 18, 1992, and prescribed him a narcotic painkiller including codeine, which can cause drowsiness, a decrease in inhibitions, slower reaction time, and occasional hostility or anger, which effects are multiplied by alcohol.  (Tr. T. at pp. 650-63).

The testimony revealed that the petitioner has a close, fatherly relationship with his sisters' children, and provided details about those relationships.  (Tr. T. at pp. 885, 887-88).

petitioner's counsel did discuss mitigating evidence with the family members sufficiently to present evidence to the jury regarding relevant mitigating issues, including most of the issues the petitioner now claims should have been discussed.

By whatever means, trial counsel knew of the available mitigating issues.  They asked the witnesses about these issues at the penalty phase, and the witnesses were prepared to answer the questions trial counsel asked, although not in great detail, as the petitioner now claims should have been done.

None of the case law presented by the petitioner regarding a counsel's duty to investigate mitigating evidence (Reply at pp. 29-33) demonstrates that the adjudication of the claim by the Court of Criminal Appeals "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).  As such, this claim cannot provide a basis for habeas relief in this action.

Since trial counsel did not render ineffective assistance under *Strickland* with respect to the presentation of available mitigating evidence, appellate counsel did not render ineffective assistance by failing to assert such a claim.

> **xvii. Failing to assert that trial counsel were ineffective because they failed to request a mitigating factor resulting from the fact that Beavers admitted killing Braxton Brown and that the petitioner's role was minor.  (Petition at ¶¶ 124-39, 182; Answer at first F(17)).**

> xviii.   **Failing to assert that trial counsel were ineffective because they failed to research and argue critical case law regarding whether youthful offender violations constitute "significant" criminal history. (Petition at ¶¶ 140-42, 182; Answer at the first F(18))**.

The petitioner did not raise these claims in his Rule 32 petition, which means they are procedurally defaulted under state law.  *Payne*, 791 So. 2d at 398-99.  To the extent that he attempted to raise these claims in the amended Rule 32 petition, that action was precluded under the circumstances.  *Id.*, 791 So. 2d at 394.  Absent the requisite showing of cause and prejudice or a fundamental miscarriage of justice, they are also procedurally barred in this action.

> xix.   **Failing to allege that the petitioner's trial counsel were ineffective because they failed to obtain expert mental health assistance in both the guilt and penalty phases of the trial. (Petition at ¶¶ 143-52, 182; Answer at second F(17))**.

This claim was raised in the petitioner's Rule 32 petition and on collateral appeal to the Alabama Court of Criminal Appeals and was denied on the merits.  The Alabama Court of Criminal Appeals found as follows:

> With regard to Payne's claim that his appellate counsel failed to argue on appeal that trial counsel was ineffective for failing to "obtain and utilize competent psychiatric and psychological assistance" during his trial, the circuit court made the following findings of fact:

> "4.   Prior to trial, based upon motion of trial counsel, a psychiatric exam was ordered by the Court to determine the defendant's competency to stand trial and his mental state at the

time of the offense.  An extensive evaluation was performed by Dr.
Maier, an independent expert hired by the Court.  The report
indicated that petitioner was drinking heavily at the time of the
offense, noted the mental anxiety of the defendant prior to trial,
considered the medications that the defendant was taking to deal
with depression, and further considered the defendant's history of
alcohol abuse.  The expert evaluation offered no evidence of
mental disease or defect or diminished capacity of the defendant.

"5.     Pretrial investigation was made of a Dr. Larimore
concerning a claim by petitioner that he had suffered head trauma
in an automobile accident.  Dr. Larimore's deposition was taken.
In addition, investigation was made of a Dr. Coleman at Woodland
Community Hospital.  All of this information was made available
to the jury in this cause.  Depositions of Dr. Larimore and Dr.
Coleman were played to the jury."

(C.R. on remand 192.)  The circuit court's findings of fact are supported by the
record.  Additionally, we note that Payne's trial counsel, Gregory A. Nichols,
testified that at the time he requested a mental evaluation for Payne he believed
that Payne was competent to stand trial.  Recognizing, however, that Payne had
had an unusual childhood and that there were perhaps underlying mental
problems, he made the request to determine their influence on his adult behavior.
Payne was evaluated by a licensed mental health expert.  None of the expert's
opinions included a finding that Payne, as he argued in his Rule 32 hearing,
suffered extreme mental and emotional duress at the time of the offense or that he
was incapable of appreciating the criminality of his conduct.  Thus, Payne has not
shown that his trial counsel's failure to present expert testimony on his mental
health was outside "the wide range of reasonable professional assistance."
*Strickland v. Washington*, 466 U.S. 668, 669, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984).  Additionally, Payne had not shown that additional testimony about his
mental health would have changed the outcome of his trial.

As we noted in *Samra v. State*, 771 So. 2d 1108, 1120 (Ala. Cr. App.
1999):

"'A distinction must be made between a *failure* to investigate the
mental history of an accused and the rejection of insanity as a
defense after proper investigation.  "An attorney with considerable
experience in criminal matters and, therefore, in dealing with a
wide range of people . . . may be presumed to have some ability to
evaluate the mental capacity of his client."  *United States ex rel.*

> *Rivera v. Franzen*, 594 F. Supp. 198, 202 (N.D. Ill. 1984).  "As a
> practical matter, when deciding whether to present an insanity
> defense, the criminal defendant's lawyer is truly the final
> psychiatrist.  It is not the role of a court to doubt his judgment....
> Trial counsel may not reject the insanity defense "'without
> pursuing the basic inquiries necessary to evaluate its merits
> intelligently.'"  *Rivera*, 594 F. Supp. at 203.  *See also Martin v.*
> *Maggio*, 711 F.2d 1273, 1280 (5th Cir. 1983), *rehearing denied*,
> 739 F.2d 184 (5th Cir.), *cert. denied*, 469 U.S. 1028, 105 S. Ct. 447,
> 83 L. Ed. 2d 373 (1984); *Pickens v. Lockhart*, 714 F.2d 1455, 1467
> (8th Cir. 1983) ("It is only after a full investigation of all the
> mitigating circumstances that counsel can make an informed,
> tactical decision about which information would be the most
> helpful to the client's case").'
>
> "*Dill v. State*, 484 So. 2d 491, 498 (Ala. Cr. App. 1985) (emphasis in original).
> *See also Roy v. State*, 680 So. 2d 936 (Ala. Cr. App. 1996)."
>
>     Because Payne has failed to establish that his ineffective-assistance-of-
> trial-counsel claim is meritorious, he has failed to prove by a preponderance of the
> evidence that his appellate counsel was ineffective for failing to present this
> claim.

*Payne*, 791 So. 2d at 400-01.

     The petitioner also argues that the trial record reflects that, under *Ake v. Oklahoma*, 470

U.S. 68, 83, 105 S. Ct. 1087, 1096, 84 L. Ed. 2d 53, 66 (1985), he was entitled to the assistance

of an expert to evaluate mental health issues with respect to both phases of trial.  (Petition at ¶¶

144-45).  He argues that trial counsel's failure to obtain such assistance or to renew a claim for

such assistance before the penalty phase was deficient performance under *Strickland*.  (Petition at

¶ 146).  The petitioner claims he needed such assistance because trial counsel used the defense of

voluntary intoxication, and because, in the face of evidence that another person may have been

with the petitioner and committed the murder, the court gave an instruction on accomplice

liability, thereby calling into question the petitioner's mental state--whether he was capable of

forming an intent to kill or to aid and abet someone who had the intent to kill and/or whether the

murder was related to a robbery or kidnaping in which the petitioner participated. (Petition at ¶

150). The petitioner also points to evidence he presented at the Rule 32 hearing that he was

behaving oddly at the time of the murder, including Faye Easterly's testimony that he appeared to

be hearing voices and acted as if he were under the influence of drugs. (Petition at ¶ 151). The

petitioner claims that expert mental health assistance would have helped him prove his lack of

intent and would have established mitigating factors that would have prevented him from

receiving the death penalty. (Petition at ¶ 152).

The petitioner's trial counsel moved for a court-ordered examination of the petitioner for

the purpose of evaluating his competency to stand trial and his mental condition at the time of the

offense. (C.R. 24-25). Following a hearing, the trial court ordered that the petitioner be

examined by Dr. Lawrence R. Maier, a licensed clinical psychologist and certified forensic

examiner. (M.E.H. 32-84[57]: C.R. 64-65, Supp. R. at 13). Maier conducted an evaluation of the

petitioner with respect to his competency to stand trial and his mental state at the time of the

offense and issued a report of the evaluation, in which he stated that

> It is my opinion that [the petitioner] can understand the charges against him and
> legal court procedures and can cooperate sufficiently with his attorneys and testify
> relevantly if so required. Likewise, there is no evidence to support the presence of
> major mental illness at the time of the alleged crimes. Thus, there is not sufficient
> evidence to support an insanity defense in this case.

(Supp. R. at pp. 16-17).

At trial, counsel presented evidence to the jury of (1) the petitioner's alcohol use, (2) his

---

[57]References to "M.E.H" are to the transcript of the September 3, 1992, mental evaluation
hearing, which is a part of the record. (Tab #R-3).

drug prescriptions, (3) the effects of the drugs alone and when taken with alcohol, (4) his

emotional state around the time of Braxton Brown's murder, (5) his car accident that occurred a

few days before the murder, (6) testimony by the doctor who saw him after the car accident and

(7) other items of his personal and medical history of potential relevance to his mental state.  (Tr.

T.  208, 364, 374-77, 556, 559-60, 564, 605-07, 631-33, 647-66, 865-901).  The jury also heard

Maier's findings with respect to the petitioner's competence to stand trial and his sanity at the

time of the offense.  Trial counsel thus offered significant mental health evidence.  The petitioner

has not demonstrated that the jury needed psychiatric expert testimony in order to understand and

weigh such evidence.

With respect to *Ake*, the Eleventh Circuit has stated as follows:

> We have held that *Ake* is implicated "when the defendant exhibits
> compelling evidence of incompetency or insanity," but that *Ake* "does not require
> that counsel faced with significantly less compelling evidence of mental
> instability" should progress from a preliminary inquiry to examination by a mental
> health expert.  *Bertolotti* [*v. Dugger*], 883 F.2d [1503, 1511 (11th Cir. 1989)]; *see*
> *Messer v. Kemp*, 831 F.2d 946, 964-65 (11th Cir. 1987) (en banc) (trial judge's
> denial of indigent defendant's motions for independent psychiatric examination
> did not deprive defendant of due process or a fundamentally fair trial at either the
> guilt or sentencing stages of the murder prosecution), *cert. denied*, 485 U.S. 1029,
> 108 S. Ct. 1586, 99 L. Ed. 2d 902 (1988).  "As the state would not be required by
> the federal constitution to fund an examination under such circumstances, counsel
> cannot be per se deficient for not requesting an examination."  *Bertolotti*, 883 F.2d
> at 1511 (citation omitted).  We assess the facts "as of the time of counsel's
> conduct," realizing that "counsel is strongly presumed to have rendered adequate
> assistance and made all significant decisions in the exercise of reasonable
> professional judgment."  *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

> In *Bertolotti*, the petitioner argued that his counsel was ineffective for
> failing to have him psychiatrically examined because a tape of his confession
> showed extreme emotional distress, he stated that he did not know what was
> happening, he gave an inherently unbelievable explanation for the murder, his
> girlfriend stated that he needed psychiatric help, and the murder was particularly

brutal. We concluded that each of these circumstances plausibly could be explained other than by mental illness, and, thus, counsel was not ineffective in failing to request a mental examination. *Bertolotti*, 883 F.2d at 1512-15. At the sentencing phase of Bertolotti's trial, his counsel attempted to have him interviewed by a psychiatrist, but Bertolotti refused. We determined that counsel did not behave "unreasonably by not taking further steps to encourage Bertolotti to undergo an examination." *Id*. at 1516.

Additionally, "a defendant must demonstrate something more than a mere possibility of assistance from a requested expert." *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir.) (en banc), *cert. denied*, 481 U.S. 1054, 107 S. Ct. 2192, 95 L. Ed. 2d 847 (1987). He must show "a reasonable probability" that the expert would be of assistance and that denial of such assistance would result in fundamental unfairness. *Id*. We specifically have held that a defendant must demonstrate a substantial basis in order to justify asking the court to appoint an expert for psychiatric evaluation. *Messer*, 831 F.2d at 960.

*Weeks v. Jones*, 26 F.3d 1030, 1041-42 (11th Cir. 1994), *cert. denied*, 513 U.S. 1193, 115 S. Ct. 1258, 131 L. Ed. 2d 137 (1995).

Given the facts and the applicable authorities regarding the right to and need for psychiatric expert assistance, the court is unwilling to hold that the adjudication of this claim by the Court of Criminal Appeals "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). The petitioner has established neither that he was entitled to psychiatric expert assistance under *Ake*, nor that expert assistance was required to assist the jury in understanding the evidence trial counsel presented with respect to his mental state. There is thus no indication whatsoever that trial counsel rendered deficient performance in failing to obtain the expert assistance the petitioner now complains he did not receive.

The state court found that the petitioner failed to demonstrate that he was prejudiced by the absence of additional mental health testimony.[58]   The petitioner complains that, to the extent that he is unable to prove prejudice in this regard, it is only because he has not been provided with the expert assistance necessary to make such a demonstration.  (Reply at p. 37).  In Alabama, however, indigent defendants are not entitled to funds to hire experts to assist in postconviction litigation.  *See Ford v. State*, 630 So. 2d 111 (Ala. Crim. App. 1991), *aff'd*, 630 So. 2d 113 (Ala. 1993), *cert. denied*, 511 U.S. 1078, 114 S. Ct. 1664, 128 L. Ed. 2d 380 (1994); *Holladay v. State*, 629 So. 2d 673 (Ala. Crim. App. 1992), *cert. denied*, 510 U.S. 1171, 114 S. Ct. 1208, 127 L. Ed. 2d 555 (1994); *Hubbard v. State*, 584 So. 2d 895, 900-01 (Ala. Crim. App. 1991), *cert. denied*, 502 U.S. 1041, 112 S. Ct. 896, 116 L. Ed. 2d 798 (1992).  The state post-conviction courts did not err in considering only that evidence offered by the petitioner, without funding a mental health expert to provide additional evidence.

For the reasons stated above, the court is unable to hold that the state court findings on this ineffective assistance of appellate counsel claim are contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or that the decision is based on an unreasonable determination of the facts that were presented during the

---

[58]The court has reviewed the two affidavits of psychologist Frank S. Gersh, offered by the petitioner in connection with his motion for funds for a mental health expert.  (Doc. 24 at Exs. 1-2).  Gersh opines as to the factors that could have affected the petitioner's mental state and culpability at the time of the offense, and states that "it is [his] professional opinion that there is a substantial basis to justify an expert psychological/neuropsychological evaluation of [the petitioner]."  (Doc. 24, Ex. 1 at 3).  He also opines that Dr. Maier's evaluation of the petitioner was insufficient for him to form a reliable opinion with respect to the petitioner's insanity, "given [the petitioner's] possibly extensive history of head injury."  (Doc. 24 at Ex. 2).  The court notes, however, that Gersh has never seen or evaluated the petitioner personally.  The affidavits appear to be speculative and of limited use in the court's analysis.

state court proceedings.  28 U.S.C. § 2254(d)(1) and (2).  Therefore, this claim provides no basis

for affording the petitioner habeas relief.

> **xx.    Failing to assert that trial counsel
> were ineffective because they failed
> to properly and timely object on
> double jeopardy grounds after the
> jury returned its verdict.  (Petition
> at ¶¶ 153-57, 182; Answer at
> second F(18))**.

The petitioner did not raise this claim in his Rule 32 petition, which constitutes a

procedural default under state law.  *Payne*, 791 So. 2d at 398-99.  To the extent that he attempted

to raise this claim in the amended Rule 32 petition, that action was precluded under the

circumstances.  *Id.*, 791 So. 2d at 394.  Additionally, he has not demonstrated the requisite

prejudice or fundamental miscarriage of justice on this claim or the underlying substantive claim

to warrant further review.  Accordingly, this claim is procedurally barred in this action.

> **xxi.    Failing to assert that trial counsel
> were ineffective because they failed
> to put forth a viable theory of
> defense.  (Petition at ¶¶ 158-60,
> 182; Answer at F(19))**.

The petitioner raised this claim in his Rule 32 petition, but the Court of Criminal Appeals

found that the claim was abandoned because no evidence was presented to support it at the Rule

32 hearing.  *Payne*, 791 So. 2d at 399.  Premised on this default and the absence of cause and

prejudice to excuse the same, this claim is barred from further review.

Although the court finds that this claim is procedurally defaulted, it notes that the

respondent treats the claim in two different ways: it argues that the claim is procedurally

defaulted (Brief at p. 26), but then addresses the claim as if it were not procedurally defaulted. (*Id*. at p. 68).  For that reason, the court will, in an abundance of caution, address the merits of the claim.

The petitioner complains that trial counsel's theory of defense was that the petitioner was merely an accomplice to a crime committed by James Beavers, which theory was based on the mistaken assumption that the petitioner could not be convicted of capital murder if the state could not prove that the petitioner pulled the trigger on the gun that killed Braxton Brown. (Petition at ¶ 158).  The petitioner claims that the proof offered in this regard actually ensured his conviction of capital murder under the accomplice instruction requested by the state, rather than facilitating his acquittal or conviction of a lesser-included crime.  (Petition at ¶ 159).

Even assuming that trial counsel's performance in this regard was deficient, which the petitioner has not shown to the court's satisfaction, he presents no evidence or argument regarding how he was prejudiced by the performance: that but for trial counsel's deficient performance, the result of the proceeding would have been different.  Such an ineffective assistance of trial counsel claim would therefore fail.

Since the petitioner has not demonstrated how he could prevail on such an ineffective assistance of trial counsel claim, he cannot satisfy the requirements of *Strickland* by showing how he was prejudiced by appellate counsel's failure to assert such a claim.  An ineffective assistance of appellate counsel claim in this regard would therefore fail.

>        **xxii.    Failing to assert that trial counsel
>                were ineffective because they failed
>                to take proper action to correct the
>                effects of the jury's exposure to**

extrajudicial comments that tainted the jury pool.  (Petition at ¶¶ 161-62, 182; Answer at F(20)).

xxiii.   Failing to assert that trial counsel were ineffective because they failed to submit proper jury instructions to the trial court.  (Petition at ¶¶ 164, 182; Answer at F(21)).

xxiv.   Failing to assert that trial counsel were ineffective because they failed to object to or submit written instructions on reasonable doubt to the trial court.  (Petition at ¶¶ 165, 182; Answer at F(22)).

xxv.   Failing to assert that trial counsel were ineffective because they failed to object to or submit written instructions on accomplice liability to the trial court.  (Petition at ¶¶ 166, 182; Answer at F(23)).

xxvi.   Failing to assert that trial counsel were ineffective because they failed to submit requested jury charges on the intent required for capital murder and other forms of homicide.  (Petition at ¶¶ 167, 182; Answer at F(24)).

xxvii.   Failing to assert that trial counsel were ineffective because they failed to submit jury instructions on aggravating factors.  (Petition at ¶¶ 168, 182; Answer at F(25)).

xxviii.  Failing to assert that trial counsel were ineffective because they failed to argue the proper standard for the jury to use in determining the

>proper sentence to be imposed.
>(Petition at ¶¶ 169, 182; Answer at
>F(26)).
>
>xxix.    Failing to assert that trial counsel
>were ineffective because they failed
>to object to the trial court's failure
>to instruct the jury that a
>mitigating factor could be found
>absent a unanimous finding for
>that factor.  (Petition at ¶¶ 170,
>182; Answer at F(27)).
>
>xxx.    Failing to assert that trial counsel
>were ineffective because they failed
>to argue that death by
>electrocution is cruel and unusual
>punishment.  (Petition at ¶¶ 171,
>182; Answer at F(28)).

The petitioner did not raise these claims in his Rule 32 petition, which means they are

procedurally defaulted under state law.  *Payne*, 791 So. 2d at 398-99.  To the extent that he

attempted to raise these claims in the amended Rule 32 petition, that action was precluded under

the circumstances.  *Id*., 791 So. 2d at 394.  Additionally, the petitioner has not demonstrated the

requisite prejudice or fundamental miscarriage of justice on these claims or the underlying

substantive claims to permit further review.  Accordingly, these claims are procedurally barred in

this action.

>xxxi.    Failing to assert that trial counsel
>were ineffective because they failed
>to object to improper statements
>made by the prosecutor during
>arguments in the guilt phase and
>penalty phase of his trial.  (Petition
>at ¶¶ 172, 182; Answer at F(29)).

The petitioner raised this claim in his Rule 32 petition, but the Court of Criminal Appeals found that the claim was abandoned because no evidence was presented to support it at the Rule 32 hearing and it therefore did not review it. *Payne*, 791 So. 2d at 399. Absent a showing of cause and prejudice, it is barred from further review.

Although the court finds that this claim is procedurally defaulted, it notes that the respondent also argues that the claim is due to be denied on the merits. (Brief at pp. 26 & 68). For that reason, the court will, in an abundance of caution, address the merits of the claim. The petitioner complains that trial counsel rendered ineffective assistance by failing to object to improper comments or argument by the prosecution, which complaints are set forth in section D of the amended and substituted petition for writ of habeas corpus. (Petition at ¶¶ 67-104, 172). The petitioner complains that appellate counsel rendered ineffective assistance by failing to raise on direct appeal an ineffective assistance of trial counsel claim based upon trial counsel's failure to object to the improper statements made by the prosecutor during the guilt and penalty phases of the trial. (Petition at ¶ 182).

The petitioner acknowledges that appellate counsel did raise on direct appeal issues related to the prosecutor's improper statements with respect to the petitioner's right not to testify, but complains that counsel should have listed additional improper prosecutorial statements in this challenge.

As the court has previously found that the claims challenging the statements made by the prosecutor are without merit, trial counsel's failure to assert them cannot serve as the basis of an ineffective assistance of trial or appellate counsel claim.

**7.      The trial court's denial of the petitioner's request for expert mental health assistance with respect to the intent required to commit capital murder as well as factors of mitigation denied the petitioner his due process rights.  (Ground G) (Petition at ¶¶ 185-94)**.

The petitioner next asserts that the trial court's denial of expert mental health assistance concerning diminished capacity issues and mitigating factors violated due process.  The respondent argues that this claim is procedurally defaulted because it was not raised on direct appeal and because the Rule 32 court found that it was barred from review.  (Answer at ¶ 85). The petitioner counters that the respondent "utterly misrepresents both the substance and merits of the Petitioner's argument."  (Reply at p. 34).  He also asserts that the two-hour examination by Dr. Maier did not address the areas of diminished capacity and mitigation.  (*Id*. at pp. 34-35). The petitioner further argues that this situation was "especially egregious, and was decidedly not the result of trial strategy."  (*Id*. at p. 35).  Lastly, he asserts that he has been prejudiced, and, even if the court were not to find the requisite prejudice, it is a result of the petitioner being denied funds for the necessary mental evaluation.  (*Id*. at pp. 36-37).

The Court of Criminal Appeals correctly found that this claim was procedurally barred in that it was not raised on appeal.  *Payne*, 791 So. 2d at 390.  This court has addressed the merits of the claim in the last section dealing with the allegations concerning the purported ineffectiveness of counsel and prejudice.  No additional discussion is necessary under the circumstances.

**8.      The trial court's failure to instruct the jury that a mitigating factor could be found absent a**

> **unanimous finding violated the petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (Ground H)  (Petition at ¶¶ 195-202).**

.

The petitioner next argues that the trial court failed to instruct the jury that a mitigating factor can be found on less than a unanimous determination.  Specifically, he asserts that following his conviction on the three charges of capital murder, "the court ordered the jury to automatically accept the crime itself as a factor of aggravation because it had unanimously found him guilty of that crime during the guilt phase."  (*Id*. at ¶ 196).  It did not, however, "inform the jury that it could consider a mitigating factor without unanimously finding that mitigating factor."  (*Id*. at ¶ 197).  The respondent asserts that this claim is barred from review because it was not raised at trial or on appeal and the Rule 32 court found that the claim was barred from review.  (Answer at ¶ 86).

The Court of Criminal Appeals correctly concluded that this claim was procedurally barred under Rule 32.  *Payne*, 792 So. 2d at 393.  Additionally, this court finds that even if the petitioner had demonstrated cause for the default, which he has not, he has not demonstrated the requisite prejudice to warrant relief.  The trial court instructed the jury as follows:

> The process of weighing the aggravating and mitigating circumstances against each other in order to determine the proper punishment is not a mechanical kind of process.  Your weighing of the circumstances against each other should not consist of merely adding up the number of aggravating circumstances and then comparing to the total number of mitigating circumstances.  The Law of this State recognizes that it is possible, at least in some situations, that one or a few aggravating circumstances might outweigh a larger number of mitigating circumstances.  The Law also recognizes the possibility in at least some situations, that a large number of aggravating

circumstances might be outweighed by one or a few mitigating circumstances.  In other words, the Law contemplates that different circumstances may be given different weights or values by you ladies and gentlemen of the jury in determining your sentence in this case.

You, the Jury, are to decide what weight or value is to be given to what particular circumstance in determining the sentence, and in light of all the other circumstances and evidence in this case.  You must do that in the process of weighing aggravating circumstances against mitigating circumstances.

After you weigh the aggravating circumstances and there is only one aggravating circumstance in this case--then your duty is to weigh that against the mitigating circumstances in this case.  Afer weighing those, it will be your duty to return a verdict in this case.

In order to bring back a verdict recommending punishment by death, at least ten of your number must vote for that sentence.  In other words, a verdict of death must be either unanimous; or eleven jurors for death and one for life without parole; or ten jurors for death and two for life without parole.  Any number less than ten cannot recommend the death penalty.

In order to bring back a verdict recommending a sentence of life without parole, there must be a concurrence of at least seven of your number for a sentence of life without parole.  I have told you I'm not good at numbers, but since there are twelve of you, a majority vote for life without parole would return that verdict--seven out of twelve.  In other words, in order to recommend life without parole, it could be a unanimous verdict for life without parole; it could be eleven jurors for life without parole and one juror for death; it could be ten jurors for life without parole and two jurors for death; it could be nine jurors for life without parole and three jurors for death; it could be eight jurors for life without parole and four for death; or seven jurors for life without parole and five for death. Any one of those combinations would justify and require a verdict be returned for the sentence of life without parole.  Obviously, any number less than seven cannot return a verdict recommending life without parole.

The fact that determination of whether ten or more of you can agree to recommend a sentence of death or seven or more agree to recommend a sentence of life without parole, that decision can be reached by you on a single ballot.  That fact should not influence you to act in haste or without due regard to the gravity of these proceedings.  You should hear and consider all the views of your fellow jurors.  Before you vote, you should carefully weigh, sift and consider all the

evidence; and of course, realizing that a human life is at stake.  You should bring
to bear your best judgment on the sole issue which is before you ladies and
gentlemen of the jury.  The issue is whether the defendant should be sentenced to
life imprisonment without parole or death.

(Tr. T.  at pp. 930-33).  These instructions are adequate to apprise the jury of the proper

considerations in evaluating the mitigating factors.  They specifically and adequately instructed

the jury on the use of the mitigating factors, including that they did not require a unanimous

decision.

> **9.      The trial court's instruction on the theory of accomplice
> liability was fundamentally flawed and violated the petitioner's
> rights under the Fifth, Sixth, Eighth, and Fourteenth
> Amendments to the United States Constitution.  (*Id*. at ¶¶  203-
> 12).**

.
The petitioner asserts that the trial court's instruction on accomplice liability was flawed.

Specifically, he states, in pertinent part:

> In giving this accomplice liability instruction, the trial court committed
> plain error because it failed to provide the jury with the essential elements of the
> accomplice liability instruction on each of the three capital offenses charged.  For
> example, in its oral instructions to the jury, the trial court never presented
> instructions that detailed the specific findings necessary to find James Beavers
> guilty of the three capital offenses, as it did the findings pertaining to Mr. Payne.
> (T.T. 819-820).  Despite such an egregious error, trial counsel failed to object to
> this procedure.

> The essential elements of the entire capital offense that pertain to Mr.
> Beavers had to be presented to the jury in order that all elements of the criminal
> offenses could be assessed in light of the trial record.  Instructing the jury only on
> the general accomplice instruction was inadequate to allow the jury to assess the
> criminal liability for capital murder upon Mr. Beavers, who was never mentioned
> by name in any jury findings.  (T.T. 829-831).  It was also inadequate to allow the
> jury to assess the criminal liability of Payne in relation to any underlying felony or
> the homicide.

(Petition at ¶¶ 205-06).  The respondent counters that this claim is procedurally barred from review.

This claim is procedurally barred from review because it was not raised on appeal and, therefore, was precluded from Rule 32 review.  *Payne*, 791 So. 2d at 392.  To the extent that the petitioner asserts cause and prejudice for the default, he has not shown cause.  Additionally, after reviewing the claim, the court finds that he cannot show prejudice.  The trial court instructed the jury as follows concerning accomplice liability:

> In addition, ladies and gentlemen of the jury, there has been some evidence offered that there was involved in the incidents that have been testified to, someone else.  There is law in Alabama concerning accomplice liability or complicity.  An accomplice is one that is a partner in crime--one who procures, assists, or counsels another to commit a crime is just as guilty as a principal.  That is as guilty as the person who actually did the offense, even if he is absent when the events occur.  Although mere presence at a crime, without more, does not create criminal liability.  In order to hold an individual liable for a criminal offense as an accomplice, the State must prove beyond a reasonable doubt that he aided and abetted in the crime.  The term aided and abetted comprehends all assistance rendered by acts or words of encouragement or by support, actual or constructive, and in presence to render assistance should it become necessary.  That presence may be actual or constructive.  If such is proven beyond a reasonable doubt, then the accomplice, one who acts as an accomplice, is as liable as the principal who may have actually performed the act.

> However, remember that in order to find someone guilty of capital murder, that person must have a specific intent to kill.  If the defendant were an accomplice, then the State must prove that as an accomplice, that he still possessed a specific intent to kill.  While an accomplice may be guilty of what we call murder or regular murder, through his aiding and abetting, even if he does not have a specific intent to kill himself, a defendant may not be guilty of capital murder, even though he aided and abetted if he, himself, did not have an intent to kill the victim.

> In the event your verdict in this case or your decision in this case regarding the defendant's criminal liability, in the event it is based on the fact that he aided

or abetted someone else in doing the actual acts of capital murder, you may find him guilty of capital murder, you may not find him guilty of capital murder unless you are convinced beyond a reasonable doubt that the defendant himself possessed an intent to kill the victim in this case.

If you are not convinced beyond a reasonable doubt that Max Payne had an intent to kill or intended to kill, then you may not find him guilty of the offense of capital murder.

(Tr. T.  at pp. 829-31).  In reviewing the overall instruction, this court finds that the trial court did adequately instruct the jury regarding the necessary elements of the capital offenses and accomplice liability.  The fact that the court did not specifically instruct the jury regarding the theory that James Beavers acted as the principal is not error.  Reading the instruction in its entirety, the jury was properly informed of the applicable law.

> **10.    The trial court's instructions regarding "intent" were substantially prejudicial and erroneous, thereby violating the petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth amendments to the United States Constitution. (Ground J) (*Id*. at ¶¶ 213-22).**[59]

In this claim, the petitioner alleges that (1) trial court failed to distinguish between the intent required for capital murder, non-capital murder, and reckless manslaughter, (2) the trial court's instruction created a mandatory or burden-shifting presumption that any intentional act that causes death is committed with the intent to kill, and (3) the trial court's instruction on felony murder denied the petitioner due process of law.  (*Id*. at ¶¶ 213-22).  The respondent

---

[59]This claim includes sub-claims that (1) the trial court failed to distinguish between the intent required for capital murder, non-capital murder, and reckless manslaughter; (2) the trial court's instruction created a mandatory or burden-shifting presumption that any intentional act that causes death is committed with the intent to kill; and,  (3) the trial court's instruction on felony murder denied the petitioner due process of law.  (*Id*. at ¶¶ 213-22).

argues that these claims are barred from further review because they were not raised at trial or on

direct appeal and the Rule 32 court and the Court of Criminal Appeals found that they were

procedurally defaulted under state law.  (Answer at ¶¶ 89-91 (citing *Payne*, 791 So. 2d at 392)).

These claims are clearly barred from further review.  To the extent that the petitioner

argues cause for the default, the court has previously addressed this aspect.  To the extent that the

petitioner asserts prejudice, this court finds otherwise.  The relevant instructions provide as

follows:

> There is a part of the offense of capital murder charged in the indictment,
> or there is what we call lesser included offenses.  These are offenses which, while
> the offenses charged in the indictment, may not have been proven beyond a
> reasonable doubt, there are offenses that the State may, by the same evidence,
> have convinced you beyond a reasonable doubt that these lesser included offenses
> were committed.  In the event you do not find that the defendant in this case is
> guilty of any offense charged in the indictment, it would be your duty to consider
> whether or not the evidence that has been produced is sufficient to convince you
> whether the defendant is guilty beyond a reasonable doubt of any lesser included
> offense.
>
> The lesser included offenses of the offenses charged in the indictment are
> (1) the offense of intentional murder.  The offense of intentional murder is defined
> as follows: With the intent to cause the death of another person, the defendant
> caused the death of that person.
>
> If you are convinced beyond a reasonable doubt that the defendant, Max
> Landon Payne, intentionally caused the death of Braxton Overton Brown, but you
> are not convinced beyond a reasonable doubt that the State has proven the other
> components of capital murder which would be the kidnapping, first degree
> component, the robbery, first degree component--if you are convinced they have
> proven the intentional murder, but are not convinced beyond a reasonable doubt
> that they have proven either a kidnapping or robbery in the first degree, and that
> the murder was committed during the kidnapping and during the robbery in the
> first degree, then you may find the defendant guilty of non-capital, simple murder.
> That will be an option you will have if you are not convinced beyond a reasonable
> doubt that he committed the offense of capital murder, then you may find the

defendant committed the offense of intentional murder.

If you are not convinced beyond a reasonable doubt that the defendant has committed the offense of capital murder as charged in Counts I, II and III, and you further are not convinced beyond a reasonable doubt that the defendant has committed the offense of intentional murder, then there is included another lesser included offense of what we call felony murder. A person commits the offense of felony murder if he commits or attempts to commit kidnapping in the first degree or robbery in any degree, and in the course and in furtherance of the crime he is committing or attempting to commit, or in immediate flight therefrom, he or another participant, if there be one, causes the death of any person.

In other words, if during a robbery in any degree or kidnapping in any degree, a person or any participant therein causes the death of another person, then they are guilty of murder.

I know that sounds very familiar and close to what I charged you as part of the offense of capital murder. It is not, however. Notice that for this type murder, that it is merely that the person causes the death of another person during a kidnapping, first degree or robbery in any degree.

Merely causing the death of another person is not the same as intentionally causing the death of another person with an intent to kill. So in the event you found the defendant in this case was in the commission of kidnapping first degree, or robbery, first degree, as alleged; but you do not find that the death was intentionally caused by the defendant, then under this section, you would find the defendant guilty of simple murder. Remember the three counts of capital murder require the kidnapping, first degree, robbery, first degree, during which an intentional murder occurs. This form--I hate to say regular murder--but it is non-capital murder, is merely causing the death of another person during it, and not acting with that particularized intent to kill. That would be a lesser included offense of the offense charged.

In addition, a lesser included offense of the offense charged in the indictment would be the offense of manslaughter. The Code defines manslaughter as follows: A person commits the crime of manslaughter if he recklessly causes the death of another person.

If you find the defendant lacked the specific intent to kill, either because the State has not proven beyond a reasonable doubt that he had an intent to kill, or you find that because of voluntary intoxication, he lacked the requisite mental

state to form an intent to kill; but yet you find he recklessly caused the death of another person, then you could find the defendant guilty of the lesser included offense of manslaughter.

Also the lesser included offenses of the capital murder charged in the indictment are the components that went with the intentional murder--that is robbery in the first degree and the kidnapping in the first degree.  I have already defined what those offenses are when I defined them to you in the capital offense along with intentional murder.  If you are not convinced beyond a reasonable doubt that the defendant committed an intentional murder, but you are convinced beyond a reasonable doubt that the defendant committed the offense of robbery in the first degree or kidnapping in the first degree and/or both, then you could find the defendant guilty of the lesser included offenses of robbery in the first degree and kidnapping in the first degree.

Ladies and gentlemen of the jury, if after considering all the evidence in this case, you are not convinced beyond a reasonable doubt that the defendant committed capital murder--committed each and every offense of capital murder as charged in Count I, II and III of the indictment, and if you further are not convinced beyond a reasonable doubt that the defendant committed the elements of the lesser included offenses that I have charged you, then it would be your duty to return a verdict of not guilty.  That is the defendant would not be guilty of any offense.  You will have a verdict form for that.

(Tr. T.  at pp. 832-37).

Contrary to the petitioner's arguments, the instruction did sufficiently specify the requisite intent requirements for each offense.  The argument that the "'simple murder' jury instruction attempted to be given in Payne's trial created a presumption that any intentional act of shooting which causes death is committed with the intent to kill" in that "the instructions failed to inform the jury that the cause of death from shooting may be based on an intentional act, such as the intent to threaten or to do physical harm, rather than the intent to kill" is simply wrong. (Petition at ¶ 215).  The instruction made it clear on a number of occasions that capital murder required that the defendant act with the intent to kill.  The language used by the trial court did not

create a "burden-shifting or mandatory presumption" as alleged by the petitioner.  (*Id*. at ¶ 218).

Instead, it required that the jury find that the petitioner acted with the requisite intent to kill.

Finally, the court finds no fundamental defect in the felony-murder instruction given by the trial court.

> **11.    The trial court erroneously and prejudicially duplicated the finding of conviction as the sole factor of aggravation.  (Ground K)  (Petition at ¶¶ 223-25).**

The petitioner argues that the trial court improperly allowed the State to use the finding of conviction as the sole factor of aggregation in violation of *Zant v. Stephens*, 462 U.S. 862, 877, 103 S. Ct. 2733, 2742, 77 L. Ed. 2d 235, 249-50 (1983).  (Petition at ¶ 223).  The respondent argues that this claim is precluded from review as it was procedurally defaulted in the state courts.

The court finds that the petitioner has not demonstrated cause for his failure to properly present this claim in the State courts.  Additionally, he has not demonstrated the necessary prejudice to warrant relief.

There is no dispute that the prosecution intended to use the petitioner's participation in a robbery and kidnaping as aggravating circumstances, as provided in § 13A-5-49(4) of the CODE OF ALABAMA.  Additionally, it is undisputed that the court allowed the petitioner's convictions concerning the robbery and kidnaping to be used as the aggravating circumstances.  The court specifically told the jurors that the "aggravating circumstance relied upon by the State shall be

found and shall be considered by you in determination of your sentence in this case."[60]  (Tr. T.  at p. 925).

This court finds that the petitioner's reliance on *Zant* is misplaced.  In *Zant*, the Supreme Court held that to avoid a constitutional flaw "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."  *Zant*, 462 U.S. at 877 (footnote omitted).  Contrary to the petitioner's argument, the robbery and kidnaping found by the jury beyond a reasonable doubt do serve to narrow the class of persons eligible for the death penalty.  This is evident premised on the fact that those circumstances are specifically enumerated by Alabama law, thus limiting the eligibility for the death penalty.  Accordingly, there is no constitutional infirmity as alleged by the petitioner.

> **12.**      **The petitioner was denied his right to a fair, impartial, and representative jury in violation of his rights under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution. (Ground L).  (*Id.* at ¶¶ 226-28).**

The petitioner next argues that his rights were violated in that jurors were dismissed from the jury pool premised on excuses granted by the trial judge's secretary even though the secretary was not authorized to excuse the jurors and the procedure violated Alabama law.  (Petition at ¶ 226).  The respondent argues that this claim is barred from review in that the petitioner did not raise it on direct appeal and the Court of Criminal Appeals found that it was procedurally barred

---

[60]In so instructing the jury, the court explained the reasoning and basis for this conclusion. (Tr. T.  at pp. 933-34).

from review under Rule 32. *Payne*, 791 So. 2d at 391.

The record demonstrates that this claim was not properly raised in the State courts. Additionally, the petitioner has not demonstrated cause and prejudice to warrant further review at this juncture.

> **13.    The petitioner was denied his right to trial by an impartial jury when two jurors overheard extrajudicial comments made by the victim's family in a courthouse bathroom.  (Ground M). (*Id*. at ¶¶ 229-34).**

The petitioner argues that during the trial, two jurors purportedly overheard members of Brown's family comment in the bathroom that the petitioner had changed his hair color. (Petition at ¶ 229).  Specifically, the comment was, "I can't believe they colored his hair before trial."  (Tr. T.  at p. 279).  The court brought the two jurors into the courtroom for a bench conference wherein the court asked the jurors if they could disregard the comment they overheard in the bathroom and "rely on what is introduced into evidence" and whether they could put the incident out of their mind.  (*Id*. at p. 283).  Both jurors indicated that they could.  (*Id*.).  The petitioner's motion for a mistrial was denied and the trial continued.  (*Id*. at pp. 284-85).  The respondent asserts that this claim is barred from further review by this court because it was not raised on direct appeal and the Court of Criminal Appeals found that it was procedurally barred from review under Rule 32.  (Answer at ¶ 94).

The court concludes that this claim is procedurally barred from further review at this juncture.  Additionally, the petitioner has not demonstrated the requisite cause and prejudice to excuse the default.  There is no reason, much less evidence, to support a conclusion that the

jurors did not do exactly as they said they would do–put the incident out of their mind and base

their decision on the evidence.  Still further, the court does not find the offhand comment to be

sufficiently prejudicial to justify relief.

> **14.    Allowing the petitioner's conviction to stand
> would result in a gross miscarriage of justice
> because he is actually innocent of the capital
> offense for which he was convicted.  (Ground N).
> (*Id*. at ¶¶ 235-38)**.

The petitioner asserts that he is actually innocent of the capital offenses for which he was

convicted.  In support of this claim, he asserts that he has not been given access to the file of the

Cullman County District Attorney's trail counsel's file was not available to Rule 32 counsel, and

the State courts "have consistently denied Payne any discovery connected to his Rule 32

Petition."  (*Id*. at ¶ 235).  The respondent argues that this claim is barred from review by this

court because it was procedurally defaulted in the State courts.  (Answer at ¶ 95).

This matter was specifically addressed by the Court of Criminal Appeals.  It stated:

> Because of the complicated history of the proceedings and rulings
> regarding this Rule 32 petition, we feel compelled to address the numerous
> complaints by Payne at the evidentiary hearing on remand regarding his inability
> to conduct discovery.
>
> Payne filed his petition on February 24, 1998. On May 13, 1998, Payne
> filed a motion for discovery of "institutional records" and files, and a motion for
> discovery of prosecution files and records.  Although these motions essentially list
> the information sought and do not offer any good cause as to why the discovery
> was necessary or exactly what Payne believed the information he sought to
> discover would reveal, the circuit court granted Payne's motions on May 22,
> 1998.  When the circuit court denied Payne's petition on August 10, 1998, it
> vacated these discovery orders.  There is no indication in the record, and Payne
> has made no representation, that from the time the circuit court ordered discovery
> (May 22) until the time that it vacated the orders (August 10) Payne made any

effort to obtain the information he had requested.  We do not believe that the time to begin discovery is after the date set for the hearing to which the discovery items are directed; therefore, we question Payne's diligence in conducting discovery.

Payne appealed the circuit court's denial of postconviction relief and this Court remanded the cause for an evidentiary hearing on July 9, 1999.  This Court ordered that due return of the cause be filed within 56 days of issuance of its opinion.  *See Payne v. State*, 791 So. 2d at 393.  On July 21, 1999, the circuit court set the hearing for August 20, 1999, but the hearing was continued until August 27, 1999.  Although Payne filed an application for rehearing with this Court on July 23, 1999, filed an application on August 2, 1999, requesting more time for the evidentiary hearing to be held, and filed a supplemental motion for more time on August 10, 1999, Payne did not file a motion for discovery with the circuit court.  We note that although in his application for rehearing and his motions to this Court, Payne represented that as of the dates on the filings, he had been "unable to conduct basic discovery, take depositions, review defense counsel's trial and appellate file, or review of any portion of the State's trial file," Payne made no efforts to obtain the discovery other than the original request he made on May 13, 1998.

On August 16, 1999 - four days before the original evidentiary date scheduled for the hearing and after representations about discovery had been made to this Court - Payne filed a motion for discovery, while this case was on remand in the circuit court.  In light of Payne's lack of diligence in conducting discovery, we seriously question the timeliness of Payne's discovery request and his efforts to conduct discovery while his case was on remand.  If Payne had moved the circuit court for discovery when this Court remanded the case, he could have been conducting discovery from July 9.

It does appear from the record that Payne's counsel made efforts to obtain the prosecutor's file a week before the hearing.  However, there was some confusion, and the file was not released until just before the hearing.  The record further indicates that when the state realized the problem it tried to make arrangements for Payne's counsel to review the file, but Payne's counsel, who was from Iowa, had already left town.  Additionally, we note that while hearing argument from Payne's counsel about his not having received a report from Dr. Lawrence Maier,[61] the circuit court elicited an admission from Payne's counsel

---

[61]The footnote provides, "Dr. Maier, a licensed clinical psychologist and certified forensic examiner, examined Payne before trial to determine whether he was competent to stand trial." *Id*. at n.3

that he had not requested that a subpoena be issued to Taylor Hardin Medical Unit for Payne's medical records, which would have included a copy of Dr. Maier's report.  Thus, while it appears from the record that Payne had time, which we acknowledge may have been limited, during which he could have conducted discovery, Payne did not make a good faith effort to do so.

Furthermore, as did the circuit court, we reject the following argument by Payne:

"We have made diligent efforts to try to obtain discovery in this matter.  I would also note that any delay in terms of filing a discovery motion after remand, was based on our understanding that the Alabama Supreme Court was preparing on the case of *Ex parte Land*.  It would be thought that case would be determined to determine whether or not Payne had a right to discovery and provide guidance to this Court as to whether or not Mr. Payne was entitled to discovery.  As soon as that decision came down, we proceeded to file a motion for discovery."

(R. 24-25.)  While we believe that it was serendipitous that the Supreme Court released *Ex parte Land*, [Ms. 1971816, August 6, 1999],[62] in August, Payne's efforts to conduct discovery were at most minimal. Unlike the circumstances in Land, where the circuit court had denied discovery, the circuit court here granted Payne broad discovery from an extremely general motion. The court's orders granting discovery were effective for over two months before they were vacated. Payne, however, did not take advantage of the circuit court's order and made little, if any, effort to pursue discovery during the two months before the circuit court's denied his petition and vacated the discovery orders or while the case was pending

---

[62]The footnote provides:

Note from the reporter of decisions: On June 2, 2000, on application for rehearing, the Supreme Court withdrew its August 6, 1999, opinion in Ex parte Land and substituted another one. The August 6, 1999, opinion carried the judgment line "PETITION GRANTED; WRIT ISSUED." The June 2, 2000, opinion carried the judgment line "OPINION OF AUGUST 6, 1999, WITHDRAWN; OPINION SUBSTITUTED; [REHEARING] APPLICATION GRANTED; PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED." *See* 775 So. 2d 847.

*Payne*, 791 So. 2d at 396 at n.*.

on remand in the circuit court.  Furthermore, because Payne did have access to the
prosecutor's file, and his jail records, as well as some of his institutional records
even though his time for review was limited, we conclude that Payne was not
denied discovery.

Nothing in the record demonstrates that this claim warrants further substantive review.

The petitioner has not demonstrated cause and prejudice to excuse the fact that it was not

properly raised in the State courts.  His conclusory claim "that clear and convincing evidence,

both contained in the existing trial record and evidence that would have been developed at [an]

evidentiary hearing in this matter had counsel obtained discovery from the State in time to

follow-up on that discovery and investigate the leads it uncovered, would have established that

Max Landon Payne is actually innocent of the capital offense for which he was convicted" is

insufficient to allow further review.  (Petition at ¶ 236).

> **15.    By providing a judicial officer with the ultimate
> decision of life and death, the State deprived the
> petitioner of due process and his right to trial by
> jury. (Ground N)(*Id*. at ¶¶ 239-43).**

The petitioner argues that the capital sentencing procedure in his case violated his

Fourteenth Amendment right to due process and his Sixth Amendment right to trial by jury

because the trial judge made the ultimate sentencing decision.  (Petition at ¶ 239).  He also

complains that Alabama law violates due process in that it fails to provide a procedure to

examine the impartiality and qualifications of the sentencing judge.  (*Id*. at ¶ 240).  The

respondent asserts that this claim is barred from review because it was not raised on direct appeal

and the Court of Criminal Appeals concluded that it was procedurally barred from review under

Rule 32.2(a)(3) & (a)(5).  (Answer at ¶ 96(b) & (c)).  The respondent also asserts that this claim

is barred from review because it presents only a question of state law.  (*Id*. at ¶ 96(d)).

This claim is clearly barred from further substantive review by this court because it was procedurally defaulted in the State courts.  The petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of justice to excuse that default.

> **16.    Alabama's judicially ordered electrocution of the petitioner, at given specific date and time, constitutes cruel and unusual punishment, and a denial of equal protection and due process of law under the Constitutions and laws of the State of Alabama and the United States.  (Ground P). (*Id*. at ¶¶ 244-48)**.

Lastly, the petitioner asserts that termination of his life at a specified date and time by electrocution violates the equal protection and due process provisions of the State and Federal Constitution and constitutes cruel and unusual punishment.  (Petition at ¶¶ 244-48).  The respondent counters that the claim is barred from further review because it was not raised at trial or on direct appeal and the Court of Criminal Appeals found that this claim was barred from review pursuant to Rule 32.2(a)(3) & (a)(5).  (Answer at ¶ 97).

As with the last claim, this claim is clearly barred from further substantive review by this court because it was procedurally defaulted in the State courts.  The petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of justice to excuse that default.

## IV. CONCLUSION

Premised on the foregoing, the court finds that the petitioner is not entitled to relief with respect to any of the claims, individually and collectively, that he has asserted in the amended habeas corpus petition before this court.  An order consistent with the court's findings set forth

above will be issued contemporaneously herewith.

Done this 16th day of September 2005.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE