# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

MAX LANDON PAYNE,     )
     )
     Petitioner,     )
     )
v.     )     5:01-cv-00090-LSC
     )
MICHAEL W. HALEY, COMMISSIONER,     )
ALABAMA DEPARTMENT OF     )
CORRECTIONS     )
     )
     Respondent.     )

## MEMORANDUM OF OPINION

This matter is before the Court on the petitioner's motion to alter or amend the judgment filed pursuant to FEDERAL RULE OF CIVIL PROCEDURE 59(e).  (Doc. 43 (hereinafter "Motion")).  Upon consideration, the Court finds that the motion is due to be denied.

The Court previously denied the petitioner's application for habeas corpus relief pursuant to 28 U.S.C. § 2254.  In the Memorandum Opinion denying the petitioner the requested relief, the Court found, *inter alia*, that the petitioner's claims that appellate counsel was ineffective for failing to raise trial counsel's failure to present mitigation testimony and failure to use an expert to investigate and present mitigation testimony at the sentencing hearing were insufficient to warrant the requested relief.  (Mem. Op. at 71-82 & 83-89).[1]

The petitioner asserts that the Court's findings are erroneous for a number of reasons.  Specifically, he asserts that the petitioner's appellate counsel was ineffective when he failed to raise on direct appeal an issue related to trial counsel's "fail[ure] to 'conduct a thorough investigation' of Payne's background" and present lay testimony concerning the same (Motion at 3-5) and their failure

---

[1]The Memorandum Opinion is located at document 40 in the file.

to "obtain or utilize expert assistance to prepare testimony for or present testimony at the penalty phase." (*Id*. at 5-12).  The petitioner further asserts that he suffered actual prejudice as a result of counsel's errors at trial and on appeal.  (*Id*. at 12-14).  The respondents counter that the actions of counsel were not ineffective and the petitioner has not demonstrated the requisite prejudice to warrant any relief.  (Response at 1-9).[2]

## FAILURE TO INVESTIGATE AND PRESENT MITIGATION EVIDENCE CLAIM

The petitioner's counsel initially asserts that, although trial counsel recognized the obligation to thoroughly investigate the petitioner's background, "he simply failed to do so."  (Motion at 3). The petitioner's counsel goes on to state that

> [t]he State of Alabama has presented no evidence that Payne's trial counsel failed to investigate Payne's background or failed to present mitigation evidence as part of a 'strategic choice.'  Neither has the State of Alabama demonstrated that any additional mitigation evidence may have harmed Payne, such that a finder of fact could infer that the failure to present the evidence was a strategic choice.

 (*Id*. at 4 (footnote omitted)).  He further states that the "failure to investigate was established by the testimony and affidavit at the Rule 32 hearing, and set forth in paragraphs 108-110 and 117-120 of the Amended Petition for Habeas Corpus."  (*Id*.).  He attempts to support his argument by stating that

> [t]he investigator hired by Payne's trial counsel focused on the guilt phase of the trial. Payne's trial counsel did not meet and prepare family members to testify during the penalty phase.  Counsel failed to obtain educational, medical, or employment records for Payne.  Counsel seemed uninterested in Payne's personal history and either didn't speak to family members about Payne's history of physical abuse, exposure to sexual abuse, head injuries, alcohol abuse, or other matters, or waited to discuss these issues until they were actually called to testify during the penalty phase.

---

[2]The response is located at document 45.

(Motion at 4-5).  In conclusion, he states that the Alabama Court of Criminal Appeals failed to properly address this issue, and its decision is "an unreasonable interpretation of the clearly established principle of federal law that a trial strategy to not present certain evidence can only be made after a reasonable investigation and after that evidence is known to counsel."  *Id*. at 5.

This issue was closely scrutinized by the Court in its original Memorandum Opinion.  (Mem. Op. at 71-82).  Reviewing the present assertions, the Court again finds that the allegations are insufficient to warrant the requested relief.  To the extent that counsel argues that the Rule 32 court and the Alabama Court of Criminal Appeals "found that any 'decisions as to whether or not to present evidence of mental impairment, or alcohol abuse by the defendant, prior history of family dysfunction . . . . and non-family testimony, were all trial strategy decisions . . .' . . . . [t]his 'finding of fact' ignores the fact that trial counsel never testified the failure to present any mitigation evidence was a 'trial strategy decision,'" this Court disagrees.  (Motion at 5).

The record before the Court shows that trial counsel investigated and presented mitigating evidence.[3]  With regard to what was presented to the jury, the Court previously found the following:

> At the penalty phase of trial, the petitioner's mother and two of his sisters testified.  That testimony revealed that the petitioner's biological father neglected him, even stating that "he didn't care if the little S.O.B. died" when the petitioner was suffering from an illness as a baby.  (Tr. T. at pp. 866-67).  The father had no contact with the petitioner from the time the petitioner was about a year old until he was about twelve.  (Tr. T. at pp. 877-78).
>
> The testimony revealed that the petitioner's alcoholic stepfather beat him with his fists once or twice a month until the petitioner left home at twelve or thirteen, partly to escape the bullying he suffered at school, and partly to escape his stepfather's beatings.  (Tr. T. at pp. 868-81).  The testimony revealed that the

---

[3]As noted by the Court in its Memorandum Opinion, "By whatever means, trial counsel knew of the available mitigating issues.  They asked the witnesses about these issues at the penalty phase, and the witnesses were prepared to answer the questions trial counsel asked, although not in great detail, as the petitioner now claims should have been done."  (Mem. Op. at 82.)

petitioner was drinking alcohol by the fifth grade (Tr. T. at pp. 874, 882), and that, by the time the petitioner was eight or nine years old, he had observed Mims sexually molest Evelyn several times. (Tr. T. at pp. 882-83).

The testimony showed that the petitioner had intestinal problems as a child and could not play games, which led other boys to ridicule and beat him. (Tr. T. at p. 869). After the petitioner left home at twelve or thirteen, he was passed from relative to relative, and was a "confused child." (Tr. T. at pp. 873, 881). The petitioner never got any professional help to recover from the abuse he had suffered. (Tr. T. at pp. [sic] 876).

The testimony revealed that, at the time of the murder, the petitioner was distraught and drinking heavily because the mother of his child had claimed he was not the father, after all, and refused to take his telephone calls. (Tr. T. at pp. 883-84). The petitioner's sister testified that he was "acting crazy" and that "[h]e didn't act like he knew what he was doing" on the day of the murder. (Tr. T. at p. 888). Dr. Jack Coleman testified that he treated the petitioner for anxiety and tension over family problems in December of 1991, and prescribed him sedatives, the effects of which would be exacerbated if taken with alcohol. (Tr. T. at pp. 891-99). Dr. David Lairmore testified that he treated the petitioner for a shoulder sprain on March 18, 1992, and prescribed him a narcotic painkiller including codeine, which can cause drowsiness, a decrease in inhibitions, slower reaction time, and occasional hostility or anger, which effects are multiplied by alcohol. (Tr. T. at pp. 650-63).

The testimony revealed that the petitioner has a close, fatherly relationship with his sisters' children, and provided details about those relationships. (Tr. T. at pp. 885, 887-88).

(Mem. Op. at 80 n.56).

To the extent that counsel argues that the State failed to prove that trial counsel's decision regarding what evidence to present was a strategic decision, the Court finds his argument is flawed for two reasons. First, the burden is not on the State to prove that counsel's decision was a strategic one. It is up to the petitioner to rebut the presumption that counsel was competent. *See Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)). Second, the record supports the determination of the Court of Criminal Appeals that the decision of what mitigation evidence to present was a

strategic one.

## FAILURE TO OBTAIN EXPERT ASSISTANCE
## IN PRESENTING MITIGATING EVIDENCE

The petitioner next asserts that his appellate counsel was ineffective because he failed to assert that trial counsel were ineffective because they "made no effort to obtain or utilize expert assistance to prepare testimony for or present testimony at the penalty phase" of his trial.  (Motion at 5).  Specifically, he states that the Court of Criminal Appeals and this Court "have analyzed this issue almost solely with respect to whether Payne required expert assistance during the guilt phase of the trial."  *Id*. at 5-6.  In support of this argument, he further states that too much reliance was placed on the fact that Dr. Lawrence R. Maier was appointed to conduct a competency examination of the petitioner and to examine his state of mind at the time of the offense.  *Id*. at 6.

Dr. Maier, a licensed clinical psychologist and certified forensic examiner, was appointed to conduct an outpatient forensic evaluation of the petitioner to determine his competence to stand trial and to determine his mental state at the time of the offense.  He determined that the petitioner was not suffering from any mental illness or cognitive impairment.  Accordingly, it was reasonable for trial counsel not to further pursue additional expert mental health testimony.  This is particularly true in this instance where trial counsel

> presented evidence to the jury of (1) the petitioner's alcohol use, (2) his drug prescriptions, (3) the effects of the drugs alone and when taken with alcohol, (4) his emotional state around the time of Braxton Brown's murder, (5) his car accident that occurred a few days before the murder, (6) testimony by the doctor who saw him after the car accident and (7) other items of his personal and medical history of potential relevance to his mental state.  (Tr. T. 208, 364, 374-77, 556, 559-60, 564, 605-07, 631-33, 647-66, 865-901).

(Mem. Op. at 86-87).  As noted previously by this court,

> The jury also heard Maier's findings with respect to the petitioner's competence to stand trial and his sanity at the time of the offense. Trial counsel thus offered significant mental health evidence. The petitioner has not demonstrated that the jury needed psychiatric expert testimony in order to understand and weigh such evidence.

*Id.* at 87. Thus, the Court again finds that the State court findings did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "result[ ] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

As a part of his motion, the petitioner again alleges that counsel's failure to seek expert assistance for the penalty phase of the trial shows ineffectiveness under *Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S. Ct. 1087, 1096, 84 L. Ed. 2d 53, 66 (1985). The Court previously quoted the Eleventh Circuit regarding the application of *Ake* to the present situation. It stated as follows:

> We have held that *Ake* is implicated "when the defendant exhibits compelling evidence of incompetency or insanity," but that *Ake* "does not require that counsel faced with significantly less compelling evidence of mental instability" should progress from a preliminary inquiry to examination by a mental health expert. *Bertolotti* [*v. Dugger*], 883 F.2d [1503, 1511 (11th Cir. 1989)]; *see Messer v. Kemp*, 831 F.2d 946, 964-65 (11th Cir. 1987) (en banc) (trial judge's denial of indigent defendant's motions for independent psychiatric examination did not deprive defendant of due process or a fundamentally fair trial at either the guilt or sentencing stages of the murder prosecution), *cert. denied*, 485 U.S. 1029, 108 S. Ct. 1586, 99 L. Ed. 2d 902 (1988). "As the state would not be required by the federal constitution to fund an examination under such circumstances, counsel cannot be per se deficient for not requesting an examination." *Bertolotti*, 883 F.2d at 1511 (citation omitted). We assess the facts "as of the time of counsel's conduct," realizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.
>
> In *Bertolotti*, the petitioner argued that his counsel was ineffective for failing to have him psychiatrically examined because a tape of his confession showed

extreme emotional distress, he stated that he did not know what was happening, he gave an inherently unbelievable explanation for the murder, his girlfriend stated that he needed psychiatric help, and the murder was particularly brutal. We concluded that each of these circumstances plausibly could be explained other than by mental illness, and, thus, counsel was not ineffective in failing to request a mental examination. *Bertolotti*, 883 F.2d at 1512-15. At the sentencing phase of Bertolotti's trial, his counsel attempted to have him interviewed by a psychiatrist, but Bertolotti refused. We determined that counsel did not behave "unreasonably by not taking further steps to encourage Bertolotti to undergo an examination." *Id*. at 1516.

Additionally, "a defendant must demonstrate something more than a mere possibility of assistance from a requested expert." *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir.) (en banc), *cert. denied*, 481 U.S. 1054, 107 S. Ct. 2192, 95 L. Ed. 2d 847 (1987). He must show "a reasonable probability" that the expert would be of assistance and that denial of such assistance would result in fundamental unfairness. *Id*. We specifically have held that a defendant must demonstrate a substantial basis in order to justify asking the court to appoint an expert for psychiatric evaluation. *Messer*, 831 F.2d at 960.

*Weeks v. Jones*, 26 F.3d 1030, 1041-42 (11th Cir. 1994), *cert. denied*, 513 U.S. 1193, 115 S. Ct. 1258, 131 L. Ed. 2d 137 (1995). Although the petitioner seeks to factually distinguish *Weeks* from the present case, the Court notes that *Weeks* was cited for the legal principles articulated therein and not for its factual similarity. Applying those principles, the Court again finds that the petitioner has not established that he was entitled to expert psychiatric assistance under *Ake* or that expert assistance was required to assist the jury during the penalty phase in understanding the evidence trial counsel presented with respect to his mental state. Thus, the Court again finds that the petitioner is entitled to no relief.

## THE PETITIONER WAS PREJUDICED AS A RESULT OF THE ERRORS OF HIS TRIAL AND APPELLATE COUNSEL

The petitioner also asserts that he has shown prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), so as to entitle him to relief. (Motion at 12).

The petitioner further states that the Alabama courts "unreasonably applied <u>Strickland</u> when it [sic] conclusorily asserted 'that Payne had not shown that additional testimony about his mental health would have changed the outcome of his trial'." *Id*. at 13.  The error, he asserts, was premised on the fact that the "conclusion focuses on the presentation of additional mental health testimony in isolation.  It does not consider the totality of the mitigation evidence – that presented at trial, at the Rule 32 hearing, and what could have been presented with a mental health expert." *Id*.  Therefore, he concludes that this Court need not defer to the findings of the State courts. *Id*.  In support of this contention, the petitioner again cites to the general outline of mitigating evidence and the affidavits of Dr. Gersh stating that a "'reasonably competent attorney would have obtained an expert evaluation' to include issues of intent to kill, whether Payne acted under a severe mental or emotional disturbance, or was unable to appreciate the criminality of his actions."[4] *Id*. at 6-7, 13.

The respondents argue that the State courts did "consider the totality of the mitigating evidence," warranting deference by this Court.  (Response at 8).  They also assert that the affidavits of Gersh should be discounted because he never met with or examined the petitioner. *Id*. at 9.  Lastly, they state that "any reasonable juror would be able to conclude that Payne was affected by his difficult childhood and earlier use of alcohol.  It is also important to note that Payne was removed

---

[4]In the earlier Memorandum Opinion, the Court stated the following regarding the two affidavits submitted by Gersh:

Gersh opines as to the factors that could have affected the petitioner's mental state and culpability at the time of the offense, and states that "it is [his] professional opinion that there is a substantial basis to justify an expert psychological/neuropsychological evaluation of [the petitioner]."  (Doc. 24, Ex. 1 at 3).  He also opines that Dr. Maier's evaluation of the petitioner was insufficient for him to form a reliable opinion with respect to the petitioner's insanity, "given [the petitioner's] possibly extensive history of head injury."  (Doc. 24 at Ex. 2).  The court notes, however, that Gersh has never seen or evaluated the petitioner personally.  The affidavits appear to be speculative and of limited use in the court's analysis.

(Mem. Op. at 89).

8

from this abusive environment around the age of 12-years-old." *Id*. (citation omitted).

The Court remains convinced that the State courts considered the totality of the evidence; the mitigation evidence was sufficiently presented to the jury; and, the jury did not need additional psychiatric expert testimony in order to understand and weigh the relevant evidence during the penalty phase of the trial.

## CONCLUSION

Premised on the foregoing, the Court finds that the petitioner's motion to alter or amend the judgment (Doc. 43) is due to be denied.  An order consistent with the Court's findings set forth above will be issued contemporaneously herewith.

Done this 20th day of September 2006.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153

9